**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 1:08-CV-00333-JTC |
| | ) | |
| v. | ) | |
| | ) | UNITED STATES'S STATEMENT OF |
| ROBERT P. CORP, | ) | UNDISPUTED FACTS |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**STATEMENT OF UNDISPUTED FACTS**

Pursuant to L.R. 56.1(a), the United States hereby submits this statement of undisputed

facts:

| | |
|---|---|
| 1.  Refinance loans insured under sections 232/223(f) of the National Housing Act, as amended 12 U.S.C. §§ 1715w, 1715n, are eligible for origination under the Department of Housing and Urban Development's (HUD) Multifamily Accelerated Processing (MAP) guidelines, in which the lender processes and underwrites the loan, and submits to HUD an application for firm commitment that includes a full underwriting package (the 223(f) program shall hereinafter be known as "the HUD Program"). | *See generally*, Exhibit SJ1 (MAP Guide, 1st version, dated May 17, 2000);<br><br>Willard Aff. ¶ 4. |

| | |
|---|---|
| 2.  Paragraph 8.9(E) of the MAP Guide excludes from the definition of "existing indebtedness" in a refinance loan transaction any indebtedness "recently placed against the project to increase the mortgage or circumvent program intent." Paragraph 6-2(d) of HUD Handbook 4565.1 CHG governs the determination of the maximum insurable mortgage in a refinancing transaction.  Paragraph 6-2(d)(3) states that "[a]ny recent indebtedness placed against the property. . . must be closely investigated.  If it appears that any such indebtedness was placed against the project in an effort to increase the mortgage or to circumvent outstanding instructions, then it shall not be considered existing indebtedness for the purpose of determining the maximum insurable mortgage."  Paragraph 3.11 of the MAP Guide further prohibits borrowers from receiving any cash proceeds from the refinance of a mortgage under the program. | Exhibit SJ1 (MAP Guide) at HUD005-007, 0012-0013;<br><br>Exhibit SJ2 (HUD Handbook) at HUD005271-005272;<br><br>Willard Aff. ¶ 6. |
| 3.  Following HUD's review and approval of an application for mortgage insurance under the HUD Program, HUD issues the lender a firm commitment to insure the loan.  The maximum mortgage amount that HUD is permitted to insure is based upon the lowest of: (i) 85 percent of the appraised value of the property; (ii) 85 percent of the project's net income available for making mortgage payments; or (iii) the cost to refinance the borrower's existing debt. | *See* 24 C.F.R. 232.903;<br><br>Exhibit SJ1 (MAP Guide) at ¶¶ 3.11(G)(2) (at HUD006); 8.9(B)(2) (at HUD0011-0012);<br><br>Willard Aff. ¶ 7. |
| 4.  The firm commitment that HUD issues to the lender under the HUD Program provides a provisional amount of the mortgage loan that HUD will insure; HUD's firm commitment is based on the information submitted to HUD at the time of the initial application for insurance. | Willard Aff. ¶ 7. |

| | |
|---|---|
| 5.  After HUD issues a firm commitment, the borrower must submit to HUD a certification detailing the total, actual costs incurred in the refinancing; these certifications are typically submitted at or around the time of the loan's closing. | Willard Aff. ¶ 7. |
| 6.  On the basis of the final, certified costs, HUD determines whether any change in the insured mortgage amount (as set forth in the firm commitment) is necessary and, thereafter, makes a final endorsement of the loan for insurance. | Exhibit SJ1 (Map Guide) at ¶¶ 12.4 (HUD0016-0018), 14.2, 14.4, 14.11, 14.20, 14.21 (HUD0019-0030);<br><br>Willard Aff. ¶ 7. |
| 7.  In 1999, Brylin Hospitals, Inc./Linreal Corporation ("Brylin") entered into a financial relationship with a firm named Heller Healthcare Finance, Inc., ("Heller") a lender based in Bethesda, MD.  Under this arrangement, Heller would advance funds to Brylin.  Heller's advances were secured by accounts receivable that Brylin sold to Heller at a discount. | Exhibit SJ3 (Manny depo) at 16-17;<br><br>Exhibit SJ4 (Gardullo depo) at 11. |
| 8.  After Brylin defaulted on its debt to Heller in or about August of 2000, Brylin and Heller entered into a Forbearance Agreement dated August 25, 2000 under which Heller agreed to continue making advances to Brylin so long as Brylin provided what Heller deemed to be adequate security.  The Forebearance Agreement imposed a "purchase cap," which decreased to $1,262,500 by March 2001. | Exhibit SJ4 (Gardullo depo) at 12-14, 16-17;<br><br>Exhibit SJ5 (Letter Agreement re: Forbearance Agreement). |
| 9.  Although Brylin and Heller's Forbearance Agreement capped the maximum loan amount, Heller did not have an obligation to make loans to Brylin.  Rather, whether to extend credit to Brylin was solely within Heller's discretion.  In fact, Heller had refused Brylin's requests for additional advances. | Exhibit SJ4 (Gardullo depo) at 16-17. |
| 10.  Brylin and Heller extended the Forbearance Agreement through July of 2001. | Exhibit SJ4 (Gardullo depo) at 18. |

| | |
|---|---|
| 11.  From about December of 2000 until about August of 2004, Robert Corp was a principal in Continental Securities, LLC ("Continental), a mortgage banking firm in Syracuse, New York.  In 2001, Robert Corp was a HUD-approved MAP underwriter, meaning that he was authorized by HUD to underwrite loans to be insured by HUD. | Exhibit SJ6 (deposition of Robert Corp) 6-8. |
| 12.  In February of 2001, Robert Corp submitted to HUD an application with supporting documents to insure a proposed mortgage loan of $7,012,500 under the HUD Program to be used for refinancing the existing indebtedness of Brylin. | Exhibit SJ6 (Corp depo) at 30;<br><br>Exhibit SJ7 (Application for Mortgage Insurance at HUD0031-34);<br><br>Exhibit SJ8 (Brylin Hospitals Mortgage Credit Analysis at HUD0035-0038);<br><br>Willard Aff. ¶ 8. |
| 13.  Along with the Application for Mortgage Insurance, Robert Corp submitted to HUD a Supplement to Project Analysis (Form HUD 92264-A), which was signed by Robert Corp and dated February 15, 2001.  This document calculates the maximum insurable mortgage based on the existing indebtedness of Brylin Hospitals.  Robert Corp represented Brylin Hospitals's total existing indebtedness to be $5,746,546, which is itemized to include a debt to Heller Financial in the amount of $1,350,000. | Exhibit SJ9 (Supplement to Project Analysis at HUD0039-0042);<br><br>Exhibit SJ6 (Corp depo) at 31-32;<br><br>Willard Aff. ¶ 9. |
| 14.  In support of the Application for Mortgage Insurance, Robert Corp submitted to HUD a letter dated January 31, 2001 and signed by Eric Pleskow, the owner of Brylin Hospitals.  The letter represents that Brylin Hospitals had an "existing debt" to "Heller Financial" in the amount of $1,350,000. | Exhibit SJ10 (Eric Pleskow Letter of January 31, 2001 at HUD0043);<br><br>Exhibit SJ6 (Corp depo) at 34-35;<br><br>Willard Aff. ¶ 9. |

| | |
|---|---|
| 15.  On or about April 23, 2001, Robert Corp submitted to HUD a revised Supplement to Project Analysis (HUD Form 92264-A) which again represented that Brylin had an existing indebtedness to Heller in the amount of $1,350,000. | Exhibit SJ11 (revised Supplement to Project Analysis at HUD0045-0048);<br><br>ExhibitSJ6 (Corp depo) at 36-37;<br><br>Willard Aff. ¶ 10. |
| 16.  On February 23, 2001, Brylin's debt to Heller was approximately $300,000 less than $1,350,000.  Brylin's debt to Heller was decreasing from January of 2001 through June of 2001. | Exhibit SJ23 (Karen Manny's Memorandum of February 23, 2001);<br><br>Exhibit SJ12 (Memorandum of February 23, 2001 at HUD00171-00172);<br><br>Exhibit SJ13 (Rule 30(b)(6) deposition of Heller Healthcare Finance, Inc.) ("Heller depo"), at 12-14. |
| 17.  By March 14, 2001, Brylin's debt to Heller had decreased to $860,436.05. | Exhibit SJ13 (Heller depo) at 18. |
| 18.  After submitting to HUD the initial Supplement to Project Analysis, Robert Corp did not seek any additional information about Brylin's indebtedness to Heller before he submitted to HUD the revised Supplement to Project Analysis, dated April 23, 2001.  Mr. Corp testified during his deposition that he "had no idea what the balance of the Heller debt did between [February 15, 2001 and April 23rd 2001]." | Exhibit SJ6 (Corp depo) at 37-39. |
| 19.  Mr. Corp did not take any steps to ascertain whether the Heller debt changed between January 31, 2001 and June of 2001. | Exhibit SJ6 (Corp depo) at 99-100. |
| 20.  On May 1, 2001, HUD gave Continental a Firm Commitment to insure a loan not exceeding $7,012,500. | Exhibit SJ14 (Firm Commitment at HUD0049);<br><br>Willard Aff. ¶ 10. |

| | |
|---|---|
| 21.  In a memorandum dated May 7, 2001 and addressed to Basil Elmer, with whom Mr. Corp worked on the Brylin loan, Mr. Corp stated "Let's assume that we'll be able to meet a May 29, 2001 closing date. . . The firm commitment was processed with a Heller balance of $1,350,000.  I need to know what the payoff amount of that debt will be on May 29." | Exhibit SJ6 (Corp depo) at 87-88;<br><br>Exhibit SJ53 (May 7, 2001 memorandum at HUD00246). |
| 22.  Brylin was not permitted to submit documents directly to HUD.  Rather, any documentation provided by Brylin was submitted to HUD through Continental Securities. | Exhibit SJ3 (Manny depo) at 50, 61;<br><br>*See also* Exhibit SJ6 (Corp depo) at 21-23;<br><br>Exhibit SJ16 (Robert Corp Letter of May 21 at HUD0053-0055). |
| 23.  In late April or early May of 2001, Robert Corp advised Karen Manny that she needed to obtain from Heller a letter documenting Brylin's indebtedness to Heller, which Continental could submit to HUD.  Specifically, Mr. Corp asked Ms. Manny to obtain from Heller a "payoff letter" documenting Brylin's outstanding balance and provided Ms. Manny with a form "payoff letter," stating "HELLER LETTERHEAD" at the top of the form, to use. | Exhibit SJ6 (Corp depo) at 42-51;<br><br>Exhibit SJ15 (Form Heller Letterhead Payoff Letter at D03923 or HUD176);<br><br>Exhibit SJ3 (Manny depo) at 40-44. |
| 24.  On May 15, 2001, Karen Manny sent to Heller the form payoff letter that Robert Corp had provided to her and requested that Heller provide a payoff letter documenting the Brylin debt. | Exhibit SJ3 (Manny depo) at 45;<br><br>Exhibit SJ15 (Form Heller Letterhead Payoff Letter at D03923 or HUD00176). |

| | |
|---|---|
| 25.  In a letter dated May 21, 2001, Robert Corp wrote to HUD to provide a preliminary schedule of the existing indebtedness for the purpose of cost certification; the amount of the Heller debt was left blank.  Robert Corp stated that he was providing all documentation except for the Heller existing indebtedness, for which he expected to have a letter of documentation to give HUD in the next day or two.  He further stated that when he obtains such letter of documentation, "I will have the Cost Certification completed and sent to you along with that letter." | Exhibit SJ16 (Robert Corp Letter of May 21 at HUD0053-0055);<br><br>Exhibit SJ6 (Corp depo) at 40-42;<br><br>Willard Aff. ¶ 11. |
| 26.  On May 22, 2001, Heller faxed to Karen Manny and Robert Corp a "draft payoff letter" which stated that Brylin's debt to Heller was "$ approximately 643,247.51" as of May 23, 2001.  The fax transmittal sheet stated to please call with any comments. Robert Corp received this document. | Exhibit SJ17 (Draft Payoff Letter of May 22, 2001 at HUD00178-00181);<br><br>Exhibit SJ3 (Manny depo) at 45-47;<br><br>Exhibit SJ6 (Corp depo) at 72. |
| 27.  The draft payoff letter that Heller sent to Karen Manny and Robert Corp accurately reflects that Brylin's debt to Heller was $643,247.51 as of May 23, 2001. | Exhibit SJ13 (Heller depo) at 19-20. |
| 28.  Robert Corp advised Karen Manny that Heller's draft payoff letter (Exhibit SJ17), which represented the Brylin debt as $643,247.51, "would not suffice" for the purposes of the HUD-insured loan. Specifically, Robert Corp told Karen Manny that she needed to obtain from Heller a "payoff letter" representing Brylin's debt to Heller as $1,350,000 or else the size of the loan that HUD would agree to insure would be reduced.   Robert Corp asked Karen Manny to obtain from Heller another "payoff letter." | Exhibit SJ3 (Manny depo) at 48-51, 161-63;<br><br>Exhibit SJ6 (Corp depo) at 72-75. |

| | |
|---|---|
| 29.  Robert Corp did not advise HUD that he had received from Heller information informing him that Brylin's debt to Heller was approximately $643,274.51 as of May 23, 2001. | Exhibit SJ6 (Corp depo) at 75. |
| 30.  On May 30, 2001, Heller faxed to Eric Pleskow a "payoff letter" confirming that Brylin's indebtedness to Heller was $604,378.51 as of May 30, 2001.  The letter also stated Brylin desired to increase the debt amount to $1,350,000, so that the amount of the HUD-insured loan for which Brylin had applied would also increase. | Exhibit SJ18 (Draft Payoff Letter of May 30, 2001 at HUD00185-00188 or GE0002-0005).<br><br>Exhibit SJ3 (Manny depo at 62-63). |
| 31.  Heller's draft payoff letter of May 30, 2001 (Exhibit SJ18) accurately stated that Brylin's indebtedness to Heller was $604,378.51 as of May 30, 2001. | Exhibit SJ13 (Heller depo) at 20-22. |
| 32.  Neither of the payoff letters (Exhibits SJ17 and SJ18), which represented that Brylin's debt to Heller was less than $1,350,000, were ever submitted to HUD. | Exhibit SJ6 (Corp depo) at 47. |
| 33.  Approximately one week before the June 5, 2001 closing of the Brylin loan, John Brennan advised Robert Corp that, for the purposes of closing, Robert Corp would need to obtain from Heller a payoff letter on Heller letterhead that represented Brylin's debt to Heller as $1,350,000. | Exhibit SJ19 (Deposition of John Brennan) at 45-46. |
| 34.  Within one week of the closing, John Brennan told Mr. Corp that Brylin's debt to Heller was less than $1,350,000 and that Brylin was in the process of trying to increase its indebtedness to Heller to $1,350,000 so that the HUD-insured loan would not be reduced. | Exhibit SJ19 (Brennan depo) at 22, 27-29, 34-36. |

| | |
|---|---|
| 35.  Within a week of the closing, Robert Corp, John Brennan, and Karen Manny had a conversation in which Ms. Manny stated that Brylin was having difficulty obtaining a payoff letter from Heller and she expressed that Brylin was attempting to increase the Heller debt to support the assertion that Brylin's debt to Heller was $1,350,000. | Exhibit SJ19 (Brennan depo) at 36. |
| 36.  At some point between May 22, 2001 and June 5, 2001, John Brennan told Robert Corp that Brylin's debt to Heller was less than $1,350,000 and that, unless the parties were able to document to HUD that the debt was $1,350,000, HUD would require that the loan be reduced.  In response, Mr. Corp expressed that he was aware that HUD would reduce the loan if the parties could not provide documentation that Brylin's debt to Heller stood at $1,350,000. | Exhibit SJ19 (Brennan depo) at 35; Exhibit SJ6 (Corp depo) at 74-5, 82, 111. |
| 37.  Robert Corp gave instructions to Karen Manny in which he asked for Brylin to prepare a letter reflecting Brylin's indebtedness to Heller as $1,350,000. | Exhibit SJ3 (Manny depo) at page 64. |
| 38.  Karen Manny drafted a "payoff letter" on Brylin letterhead dated May 29, 2001 and addressed to Robert Corp.  The letter that Karen Manny drafted states "I am advised that the indebtedness to Heller Healthcare Finance, Inc., as of June 1, 2001, will be $1,350,000." | Exhibit SJ20 (Payoff Letter of May 29, 2001) at HUD0058; Exhibit SJ3 (Manny depo) at 63-67. |
| 39.  Eric Pleskow signed the letter dated May 29, 2001 and Karen Manny transmitted the letter to Continental Securities. | Exhibit SJ20 (Payoff Letter of May 29, 2001) at HUD0058; Exhibit SJ3 (Manny depo) at 63-67. |

| | |
|---|---|
| 40.  On May 29, 2001, Continental transmitted to HUD the payoff letter of May 29, 2001 along with a table dated May 29, 2001 that represents Brylin's existing indebtedness to Heller as "$1,350,000." | Exhibit SJ20 (Payoff Letter of May 29, 2001) at HUD0056-0059;<br><br>Exhibit SJ21 (Deposition of Patricia Maroney) at 53;<br><br>Exhibit SJ6 (Corp depo) at 49-50;<br><br>Willard Aff. ¶ 20. |
| 41.  Mr. Corp was aware that Brylin had created for submission to HUD a "payoff letter" on Brylin letterhead, rather than a payoff letter from Heller, as he had initially suggested. | Exhibit SJ6 (Corp depo) at 47-51. |
| 42.  On May 30, 2001, Continental Securities faxed to HUD a revised Mortgagor's Certificate of Actual Cost (Form HUD 2205-A), signed on behalf of Brylin by Eric Pleskow.  The total existing indebtedness shown in the cost certification- including $1,350,000 for the Heller debt- is $5,859,383. | Exhibit SJ22 (HUD Form 2205-A- with accompanying tables at HUD0060-0063);<br><br>Exhibit SJ21 (Maroney depo) at 28-29;<br><br>Willard Aff. ¶¶ 12, 14. |
| 43.  On February 23, 2001, Eric Pleskow and Karen Manny traveled to Bethesda, MD to ask Heller to advance additional funds to Brylin, which Brylin required because of severe cash needs, including closing costs required to be paid in cash associated with the HUD-insured loan. | Exhibit SJ23 (Karen Manny's Memorandum of February 23, 2001);<br><br>Exhibit SJ12 (Memorandum of February 23, 2001 at HUD00171-00172);<br><br>SJ3 (Manny depo) at 23-25. |
| 44.  The February 23, 2001 meeting was attended by Karen Manny, Eric Pleskow, and numerous Heller employees, including Michael Gardullo, a Heller Vice President. During the meeting, Karen Manning and Eric Pleskow asked Heller to extend Brylin's then existing loan balance from approximately $1,000,000 (the debt as it existed on February 23, 2001) to $1,350,000 at some point shortly before the closing of the HUD-insured loan. | Exhibit SJ12 (Memorandum of February 23, 2001 at HUD00171-00172);<br><br>Exhibit SJ4 (Gardullo depo) at 27-28;<br><br>Exhibit SJ23 (Karen Manny's Memorandum of February 23, 2001). |

| | |
|---|---|
| 45.  Heller declined to make an outright advance, but raised the possibility of putting funds in escrow, such that Brylin would only be able to use the funds upon the closing of the HUD-insured loan. | Exhibit SJ4 (Gardullo depo) at pages 27-28;<br><br>Exhibit SJ12 (Memorandum of February 23, 2001 at HUD00171-00172);<br><br>Exhibit SJ23 (Karen Manny's Memorandum of February 23, 2001). |
| 46.  Karen Manny's Memorandum of February 23, 2001 (Exhibit SJ23) states that she "will work out the mechanics of this [escrow] arrangement with Basil Elmer and Bob Corp." | Exhibit SJ23 (Karen Manny's Memorandum of February 23, 2001). |
| 47.  The parties negotiated an agreement with Heller, finalized the day prior to the closing of the HUD-insured loan, under which; (i) Heller wired $787,136.67 into escrow purportedly as an additional loan advance to increase Brylin's debt (together with a 1% discount charge of $7,871.37) from $554,991.96 (the sum Brylin actually owed) to $1,350,000 (the existing indebtedness represented to HUD); (ii) upon closing of the HUD-insured loan, Brylin caused a wire transfer to be made to Heller in the amount of $1,350,000; and (iii) the $787,136.67 "advance" held in escrow was distributed to Brylin only after Heller received Brylin's $1,350,000 wire transfer. | Exhibit SJ19 (Brennan depo) at 50-56;<br><br>Exhibit SJ24 (Brennan Letter to Leanne Glaster of June 4, 2001 at HUD00198-00202);<br><br>Exhibit SJ25 (Escrow Instructions dated June 4, 2001 at HUD00203-00205);<br><br>Exhibit SJ54 (financial documentation). |
| 48.  Under the terms of the parties' escrow agreement, the $787,136.67 that Heller put into escrow would have reverted back to Heller if the Brylin's HUD-insured mortgage loan did not close. | Exhibit SJ24 (Brennan depo) at 52. |
| 49.  Shortly before the June 5, 2001 closing of the loan, John Brennan told Robert Corp that Heller was putting funds into escrow to ultimately be released to pay Brylin. | Exhibit SJ24 (Brennan depo) at 53-56. |

| | |
|---|---|
| 50.  In February of 2001, Robert Corp was aware that paragraph 8.9E of the MAP Guide prohibited the refinance of indebtedness recently placed against the project to increase the mortgage or circumvent program intent. *See* Exhibit SJ1 (MAP Guide). | Exhibit SJ6 (Corp depo) at 101. |
| 51.  Robert Corp's Mortgage Credit Analysis of February 15, 2001 specifically references paragraph 8.9E of the MAP Guide, in the context of the "mortgagor certification of actual costs" and "existing debt," and Robert Corp stated that "items that may be disallowed during this review that do not meet the requirements of the MAP Guide Chapter 8, paragraph 8.9E may result in a mortgage reduction." | Exhibit SJ8 (Mortgage Credit Analysis) at HUD0038. |
| 52.  On January 4, 2001, Karen Manny, general counsel of Brylin Hospitals, sent Mr. Corp a fax advising him that Heller was "anxious and concerned" about its financial relationship with Brylin. | Exhibit SJ6 (Corp depo) at 65-68. |
| 53.  Karen Manny advised Robert Corp that Heller was unwilling to advance additional funds to Brylin. | Exhibit SJ3 (Manny depo) at 101. |
| 54.  Within one week of the closing, Karen Manny advised Mr. Corp that Brylin did not have the cash needed to meet its closing costs. | Exhibit SJ3 (Manny depo) at 22-23. |

| | |
|---|---|
| 55.  Robert Corp participated in at least two conference calls with Karen Manny and Michael Gardullo wherein Michael Gardullo expressed that Heller was "reluctant" to extend to Brylin additional credit. | Exhibit SJ4 (Gardullo depo) at 30-36;<br><br>Exhibit SJ26 (Karen Manny Memorandum to Robert Corp dated January 8, 2001) at D02747-D02749;<br><br>Exhibit SJ3 (Many depo) at 104-105 (establishing that Robert Corp had spoken with Michael Gardullo);<br><br>Exhibit SJ27 (Answer to Interrogatory # No. 4) (establishing that Robert Corp participated in conference calls with Michael Gardullo and Karen Manny which concerned Brylin's debt to Heller). |
| 56.   Brylin's debt to Heller had declined to $554,991.96 (including payoff fees) as of June 4, 2001. | Exhibit SJ13 (Heller depo) at 24;<br><br>Exhibit SJ54 (financial documentation). |
| 57.  The Brylin loan closed on June 5, 2001. On that day, HUD endorsed for insurance a mortgage in the amount of $7,012,500. | Exhibit SJ28 (HUD Multifamily Closing Memorandum at HUD0067);<br><br>Exhibit SJ22 (HUD Form 2205-A- with accompanying tables at HUD0060-0063);<br><br>Willard Aff. ¶ 13. |
| 58.  At the time of closing, Mr. Corp knew that HUD had endorsed for insurance a loan in the amount of $7,012,500. | Exhibit SJ14 (Firm Commitment);<br><br>Exhibit SJ55 (Assignment of the Firm Commitment at D0014-0035);<br><br>Exhibit SJ22 (HUD Form 2205-A- with accompanying tables at HUD0060-0063);<br><br>Exhibit SJ6 (Corp depo) at 97. |
| 59.  At the time of closing, Mr. Corp was aware that Brylin's debt to Heller was being represented to HUD as $1,350,000. | Exhibit SJ 6 (Corp depo) at 58;<br><br>Exhibit SJ55 (Assignment of the Firm Commitment at D0035). |

| | |
|---|---|
| 60.  While at the closing, Robert Corp executed the Assignment of the Firm Commitment, without which the Brylin loan would not have closed.  This document effectively assigned HUD's firm commitment from Continental to GMAC Commercial Mortgage Corporation, which funded the loan and closed the loan under its own name. | Exhibit SJ6 (Corp depo) at 97;<br><br>Exhibit SJ55 (Assignment of the Firm Commitment at D0014-0035). |
| 61.  Continental Securities received $296,270.34 in fees for services rendered in connection with the Brylin transaction. | Exhibit SJ56 (response to interrogatory 16). |
| 62.  Pursuant to the operating agreement of Continental Securities, Robert Corp was entitled to receive 25% of Continental's profits. | Exhibit SJ56 (operating agreement at D003952-003954 and response to interrogatory 18). |
| 63. Mr. Corp received a commission of $21,854 for services rendered on the Brylin transaction. | Exhibit SJ56 (response to interrogatory 14). |
| 64.  As set forth in HUD's closing memorandum, Brylin's first payment of principal was due on August 1, 2001. | Exhibit SJ28 (HUD Multifamily Closing Memorandum at HUD0067);<br><br>Exhibit SJ22 (HUD Form 2205-A- with accompanying tables at HUD0060-0063);<br><br>Willard Aff. ¶ 13. |
| 65.  On September 1, 2001, Brylin defaulted on the loan. | Belin Aff. ¶ 4;<br><br>Exhibit SJ45. |
| 66.  On April 8, 2002, HUD received the lender's "Application for Insurance Benefits (Form HUD-2747) and its "Mortgagee's Application for Partial Settlement" (Form HUD-2537). | Exhibits SJ35 and 36;<br><br>Belin Aff. ¶ 3. |
| 67.  HUD settled the lender's mortgage insurance claim on the Brylin loan for $6,176,731.67. | Belin Aff. ¶ 4;<br><br>Exhibit SJ43 (Mortgage Insurance Claim Settlement Statement at HUD0093). |

| | |
|---|---|
| 68.  Had the Heller debt been disclosed to HUD as $554,991.96 instead of $1,350,000, the maximum insurable mortgage computation under the program would have been $6,350,300 instead of the actual $7,012,500. | Belin Aff. ¶ 5;<br><br>Willard Aff. ¶¶ 15-17. |
| 69.  Had the principal amount of Brylin's insured loan been $6,350,300, the claim that HUD paid upon default would have been $5,498,332.29 instead of $6,176,731.67- a savings to HUD of $678,399.38. | Belin Aff. ¶ 5. |

Respectfully submitted,

TONY WEST
Assistant Attorney General

TERRANCE P. FLYNN
United States Attorney

ROBERT G. TRUSIAK
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5847
Robert.trusiak@usdoj.gov

By:     /s *Brian R. Young*____
        JOYCE R. BRANDA
        RENÉE BROOKER
        BRIAN R. YOUNG
        U.S. Department of Justice, Civil Division
        Commercial Litigation Branch
        Post Office Box 261
        Ben Franklin Station
        Washington, D.C.  20044
        Telephone: (202) 353-2265
        Fax: (202) 305-4117

Of Counsel:
Kenneth Massman
Office of General Counsel
United States Department of Housing and Urban Development

## CERTIFICATE OF SERVICE

This is to certify that on August 31, 2009, a copy of the foregoing UNITED STATES'S

STATEMENT OF UNDISPUTED FACTS was served via ECF service upon the following

individual:

Gabriel M. Nugent
One Park Place
300 South State Street (13202)
Syracuse, New York 132221-4878
(315) 425-2836 (tel)
(315) 703-7361 (fax)

Attorney for Robert C. Corp.

/s *Brian R. Young*
U.S. Department of Justice