

# MULTIFAMILY ACCELERATED PROCESSING (MAP)

# Guide

## May 17, 2000
### Office of the Assistant Secretary for Housing-
### FHA Commissioner

The information collection requirements contained in this Multifamily Accelerated Processing Guide were approved by the Office of Management and Budget (OMB) in accordance with the Paperwork Reduction Act of 1995 (44 U.S.C. 3501-3520). Approval of the Lender requirements in Chapter 2 are covered by OMB control number 2502-0541. The FHA and HUD Forms referenced in the Guide and set forth in the Forms Book which accompanies the Guide are approved as indicated on the Forms, particularly by approval control numbers 2502-0010, 2502-0057, 2502-0118, 2502-0331, and 2502-1112. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection displays a valid control number.



**EXHIBIT**

**SJ 1**

HUD 004

E.  Cost certification. The mortgagor is required to submit a cost certification prepared by an independent public accountant upon completion of construction or substantial rehabilitation. The amount of mortgage that is finally endorsed for insurance by HUD after completion of construction can be reduced based upon HUD review of the cost certified amounts. HUD approved cost certified amounts may qualify for a mortgage increase under specific conditions. The general contractor is required to submit a cost certification where a cost plus form of construction contract is used. Subcontractors with an identity of interest with the mortgagor or general contractor are also required to cost certify. (See Chapter 14 for complete details.)

F.  Federal Labor standards. The general contractor and all subcontractors are required to comply with federal wage and reporting requirements, including the payment of Davis Bacon prevailing wages and the submission of weekly certified payroll reports. (Prevailing wage schedules may be obtained from HUD.)

G.  Assurance of Completion. The mortgagor shall provide for assurance of completion of the project in forms approved by HUD.

1.  For non-elevator or three story or less elevator buildings where the cost of construction or rehabilitation is more than $500,000, the assurance shall be in the form of corporate surety bonds for payment and performance, each in the amount of 100% of HUD's estimate of construction or rehabilitation cost. As an option, HUD would accept a completion assurance agreement secured by a cash deposit or Letter of Credit in the amount of 15% of the HUD estimate of construction or rehabilitation cost.

2.  For elevator buildings of 4 stories or more, the assurance shall be in the form of corporate surety bonds for payment and performance, each in the amount of 100% of HUD's estimate of construction or rehabilitation cost. As an option, HUD would accept a completion assurance agreement secured by a cash deposit or Letter of Credit in the amount of 25% of HUD's estimate of construction or rehabilitation cost. The mortgagee may provide more stringent requirements.

H.  Medicaid/Medicare Rule. Medicaid rates, regardless of the composition of the project's actual or proposed occupancy, will be used to establish the income estimate for 67% of nursing home/intermediate care beds. Medicare rates will be used for 3% of the beds. This restriction does not currently apply to board and care or assisted living facilities.

## 3.11        Section 232/223(f) - Acquisition/Refinancing

The major requirements for Section 232/223(f) Projects for acquisition or refinancing are as follows: (Any property acquired before the date of the mortgage insurance application shall be treated as a refinance transaction. Any property acquired after the date of the mortgage insurance application shall be treated as a purchase. In a purchase transaction, any identity of interest, however slight, between seller and purchaser requires the application to be processed as a refinance.)

HUD 005

A. Property eligibility. The facility must have been completed or substantially rehabilitated for at least three years prior to the date of the Firm Commitment application. Projects with additions completed less than 3 years previous are eligible as long as the addition was not larger than the original project in size and number of beds.

B. Ineligible facilities. Facilities requiring a level of repairs which constitutes substantial rehabilitation as defined in section 3.10 above are not eligible for mortgage insurance under this section.

C. Insurance upon completion. HUD will only insure the permanent loan under this program if all critical repairs are completed before HUD endorsement of the mortgage.

D. Delayed completion of repairs. HUD permits completion of **non-critical** repairs after endorsement for insurance with appropriate financial guarantees. (See Chapter 8 for complete details).

E. Davis Bacon Labor standards. To be eligible under this section, the level of required repairs cannot meet the standard for substantial rehabilitation. Therefore, the prevailing wage requirements of the Department of Labor do not apply to this program.

F. Mortgage insurance premium. The HUD mortgage insurance premium is 1% of the mortgage amount for the first year, payable at endorsement of the mortgage, and .5% of the average outstanding principal balance thereafter. (See 24 CFR 207.252.)

G. Maximum mortgage limitations. The maximum insurable mortgage is:

1. For Purchase Transactions, the lesser of:

   a. 85 % of HUD appraised value (90% for nonprofit mortgagors).

   b. A mortgage amount supported by 1.1765 debt coverage (85% of net income); 1.11 for nonprofit mortgagors (90% of net income).

   c. 85% of acquisition cost (90% for nonprofit mortgagors).

2. For Refinance Transactions, the lesser of:

   a. 85% of HUD appraised value (90% for nonprofit mortgagors).

   b. A mortgage amount supported by 1.1765 debt coverage (85% of net income); 1.11 for nonprofit mortgagors (90% of net income).

   c. The cost to refinance the existing debt.

   (See Chapter 8 for complete details.)

H. Cost certification. The mortgagor must certify the actual costs incurred in the acquisition or refinancing of the property.

HUD 006

I. Mortgage Term. The term of the mortgage cannot exceed 35 years or ¾ of the remaining economic life of the physical improvements.

J. No Equity Take-Out. Borrowers may not receive any cash proceeds from the refinance of the mortgage under Section 232/223(f). The sole purpose for the program is for owners to refinance at lower interest rates, reduce debt service requirements, and make needed repairs.

K. Medicaid/Medicare Rates. The income estimate should be based on the percentage of Medicaid/Medicare beds shown on the last 3 years of financial statements.

L. Firm Commitment Processing Only. There is no preapplication submission for Section 223(f) applications. Preliminary inquires with the HUD staff are encouraged if there are concerns about marketability, environment or competing proposals.

HUD 007

B. Financial Requirements to Close:

1. Minor nonrealty equipment escrow and the Initial Deposit to the Reserve for Major movable Equipment (for rehabilitation projects only) must be funded at or before initial endorsement.

   <u>NOTE</u>: 1) The minimum amount needed to fund the minor nonrealty equipment escrow is based on $415 per bed (in 1999 dollars). HUD will periodically adjust this figure to account for inflation. 2) Funds may be released as equipment is purchased. 3) Any remaining balance in the escrow account may be released after all equipment has been purchased and the project is operational.

2. Independent living units in a board and care home may not exceed 25 percent of the total projected number of residents and require a 12-month prorated debt service reserve in addition to any operating deficit escrow required for project approval. Any combination of independent living with a nursing home/intermediate care facility or a board and care facility requires a prorated debt service reserve (e.g., 25 percent independent living units would require 25 percent of the 12-month debt service reserve for the portion of the project used as a board and care home).

3. An assisted living facility may contain apartment-like units. Therefore, the Lender will calculate a prorated 12-month debt service reserve based upon the number of proposed independent living units.

C. Insurance of Advances:

1. See Chapter 13 for processing instructions.

2. Changes to the major movable equipment list:

   a. The Lender and HUD must approve the changes.

   b. The owner must set up with the mortgagee a cash escrow to cover the increased cost, if any, within 5 days of HUD's approval of the new equipment list.

   c. The increased cost of major movable equipment may be recognized for cost certification purposes but this is not a basis for a mortgage increase.



**8.9**  **Section 223(f) Firm Commitment Processing - Determining Mortgage Amounts, Cash Requirements, and Related Items**

A. Firm Commitment Processing for Section 207 pursuant to 223(f):

1. Amount of loan in a purchase transaction.

   In a purchase transaction involving an arm's length sale, the mortgage may not exceed the lowest of:

   a. Application amount; or

b. An amount not to exceed the 85 percent (90 percent for nonprofit mortgagors) of the result of the Lender's estimate of value as repaired less the amount of grant/loan funds attributable to replacement cost items.

c. The maximum per unit limitation for new construction under Section 207.

NOTE: The per family unit limits may be increased. See paragraph 8.7 A.1.d.(3).

d. Debt service that does not exceed the 85 percent (90 percent for nonprofit mortgagors) of project's estimated net income. The mortgage may exceed this limit by capitalizing the savings from any tax abatement. In such cases the net earnings estimate will not reflect that temporary tax abatement.

(1) Form FHA 1708, Agreement for Payment of Real Property Taxes by Sponsor, is required when a project is the recipient of tax abatement.

NOTE: The execution of this form is not required if tax exemption is granted based on State legislation granting tax exemption to particular types of housing, such as housing located in urban renewal areas or housing for low and moderate income groups or for other social needs.

The execution of this form is required for all insured projects if tax exemption is granted based on general charitable statues.

(2) That portion of the maximum mortgage supported by the tax abatement must be amortized over the life of the abatement.

e. Eighty-five percent (90 percent for nonprofit mortgagors) of the cost of acquisition which is defined as the sum of the items:

(1) Purchase price shown in the purchase agreement and determined allowable by the Lender.

(2) The Lender's estimate of repair cost, if any, provided such costs are paid by the mortgagor and are not included in the purchase price.

(3) The sum of reasonable financing charges, legal, organizational, and title and recording expenses paid by the mortgagor.

(4) Eligible discounts paid by the mortgagor.

NOTE: Any fees, discounts or other amounts paid by the seller for or on behalf of the purchaser must be reflected as a reduction to the acquisition cost.

(5) The initial deposit to the Reserve Fund for Replacements, provided such deposit will be funded by the purchaser.

(6) Eligible architect's fees, mechanical engineering fees, municipal inspection fees, HUD inspection fees, if applicable, and other fees as may be determined eligible by the Lender including the cost of Lender third party reports.

(7) Less the amount of any:

**HUD 009**

    (a) Reserve escrow for replacement that will be purchased as an asset of the project.

    (b) Grant/loan funds attributable to mortgageable items.

2. Amount of Loan in a Refinancing Transaction:

The subject loan will be the lesser of:

  a. Amounts in paragraph 8.9 A.1. except c.

  b. An amount which equals the greater of the following

    (1) 80 percent of the Lender's estimate of the value of the project, or

    (2) The cost to refinance the project which is defined as the sum of:

      (a) The amount needed to pay off the existing indebtedness as determined eligible by the Lender.

      (b) The initial deposit to the Reserve Fund for Replacements.

      (c) The sum of reasonable financing charges, legal and organizational, and title and recording expenses pair by the mortgagor.

      (d) The Lender's estimate of repair cost, if any.

      (e) Eligible discounts paid by the mortgagor.

      (f) Eligible architect's fees, mechanical engineering fees, municipal inspection fees, HUD inspection fees, if applicable, and other fees as may be determined eligible by the Lender including the cost of Lender third party reports.

      (g) Less the amount of any:

        (i) Reserve escrow for replacement and/or major movable equipment that will be purchased as an asset of the project.

        (ii) Grant/loan funds attributable to mortgageable items.

B. Firm Commitment Processing for Section 232 Pursuant to Section 223(f)

  1. Amount of loan in a purchase transaction.

In a purchase transaction involving an arm's length sale, the mortgage may not exceed the lowest of:

  a. Application amount; or

  b. For Proprietary mortgagors, 85 percent of the Lender's estimate of value as repaired including major movable equipment; or

  c. For Nonprofit mortgagors; or

    (1) Ninety percent of Lender's estimate of value as repaired including major movable equipment.



**HUD 0010**

(2) Sum of Lender's estimate of value including major movable equipment less grant/loan and gifts.

d.  Debt service supportable by 85 percent (90 percent for nonprofit mortgagors) of net earnings attributable to realty and nonrealty (excluding proprietary earnings). The mortgage may exceed this limit by capitalizing the savings from any tax abatement. In such cases the net earnings estimate will not reflect that temporary tax abatement.

   (1) Form FHA 1708, Agreement for Payment of Real Property Taxes by Sponsor, is required when a project is the recipient of tax abatement.

   NOTE: The execution of this form is not required if tax exemption is granted based on State legislation granting tax exemption to particular types of housing, such as housing located in urban renewal areas or housing for low and moderate income groups or for other social needs.

   The execution of this form is required for all insured projects if tax exemption is granted based on general charitable statues.

   (2) That portion of the maximum mortgage supported by the tax abatement must be amortized over the life of the abatement.

e.  Eighty-five percent (90 percent for nonprofit mortgagors) of the cost of acquisition which is defined as the sum of items:

   (1) Purchase price shown in the purchase agreement and determined allowable by Lender.

   (2) Lender's estimate of repair cost, if any, provided such costs are paid by the mortgagor and not included in the purchase price.

   (3) Sum of reasonable financing, legal, organizational, title and recording expenses paid by mortgagor.

   (4) Eligible discounts paid by the mortgagor.

   (5) Initial deposit to the Reserve Fund for Replacements (realty) and the Reserve Fund for Major Movable Equipment (Nonrealty) funded by the purchaser.

   (6) Eligible architect's fees, mechanical engineering fees, municipal inspection fees, HUD inspection fees, if applicable, other fees as may be determined eligible by the Lender including the cost of Lender third party reports.

   (7) Less the amount of any:

      (a) Reserve escrow for replacement and/or major movable equipment that will be purchased as an asset of the project.

      (b) Grant/loan funds attributable to mortgageable items.

2.  In a refinancing transaction, the owner is restructuring the mortgage debt against the property. The loan is the lowest of:

a.  Amounts in paragraph 8.9.B.

HUD 0011

b. Cost to refinance the project which is defined as the sum of:

(1) Amount needed to pay off the existing indebtedness determined eligible by the Lender.

(2) Initial deposit to the Reserve Fund for:

(a) Replacements (realty).

(b) Major Movable Equipment (Nonrealty).

(3) Lender's estimate of repair cost, if any.

(4) Sum of reasonable financing, legal, and title and recording expenses paid by mortgagor.

(5) Eligible discounts paid by mortgagor.

(6) Eligible architect's fees, mechanical engineering fees, municipal inspection fees, HUD inspection fees, if applicable, other fees as may be determined eligible by the Lender including the cost of Lender third party reports.

(7) Less the amount of any:

(a) Reserve escrow for replacement and/or major movable equipment currently on deposit.

(b) Grant/loan funds attributable to mortgageable items.

C. Treat any property acquired:

1. Before the date of the original application as a refinance transaction; and

2. After the date of the original application as a purchase transaction.

D. Identity of Interest Purchase Transaction.

If an identity of interest exists between seller and purchaser, regardless of how slight, process application as a refinance transaction.

1. An identity of interest need not exist in the subject transaction for an identity to exist for this computation. For example: The buyer and seller are:

a. Partners in an unrelated venture.

b. Related by blood or marriage.

2. In completing the refinance criterion, use existing indebtedness on the property before the proposed change in ownership.

E. Determining Existing Indebtedness in a Refinancing Transaction.

Existing indebtedness in a refinancing transaction is defined as:

HUD 0012

1. Outstanding mortgage(s) incurred in connection with the construction of the project or with capital improvements made to the property as confirmed by the current mortgagee using the pay-off letter which appears in Appendix 8C of this Guide.

2. Other recorded indebtedness such as mechanic's liens and tax liens provided they did not result from personal obligations of the mortgagor.

3. Unrecorded debt directly connected with the project supported by documentation from the mortgagor. If the indebtedness is not recorded, the mortgagor must provide the Lender with documentation which unquestionably identifies the indebtedness with the project. Examples are:

   a. Delinquent interest

   b. Prepayment penalties on the mortgage

   c. Indebtedness incurred in making significant betterments to the property

   NOTE: Program penalties arising from the defeasance of tax-exempt and taxable bonds cannot be recognized.

4. Do not recognize indebtedness:

   a. Recently placed against the project to increase the mortgage or circumvent program intent.

   b. Created by wrap mortgages

      (1) Unless the mortgagor and Lender give a detailed explanation of the purpose of the wrap and a documented accounting of disbursement of the loan proceeds.

      (2) You may recognize loan proceeds used for capital improvements or project operations.

F. Reserve for Replacements.

The initial deposit to the Reserve Fund for Replacements is eligible for inclusion in the maximum insurable mortgage.

1. Purchase Transaction.

   a. The purchase agreement must specify:

      (1) Whether or not the transfer includes as an asset of the project, Reserve Fund for Replacements [or Reserve Fund for Replacements (Realty)and Reserve Fund of Major Movable Equipment (Nonrealty) in a Section 232 pursuant to 223(f) transaction] or other escrows.

      (2) Dollar amounts of escrow and/or items which the seller will pay on behalf of mortgagor, e.g., the operating deficit, discounts, initial deposit to the Reserve fund for Replacements [or Reserve Fund for Replacements (Realty)and Reserve Fund of Major Movable Equipment (Nonrealty) in a Section 232 pursuant to 223(f) transaction] etc.

    b.  Apply existing Reserve Funds transferred as an asset of the project as a reduction of acquisition cost when computing Criterion 7 on Form HUD 92264-A.

2.  **Refinancing Transaction.** The mortgagor must submit a list of escrows currently on deposit for the project:

    a.  The escrows must remain with the project.

    b.  Apply funds currently on deposit in a Reserve Fund for Replacements as a reduction of:

        (1)  The cost of refinancing under criterion 10 on Form HUD 92264-A.

        (2)  The initial deposit to the Reserve Funds for Replacement [or Reserve Fund for Replacements (Realty)and Reserve Fund of Major Movable Equipment (Nonrealty) in a Section 232 pursuant to 223(f) transaction] at endorsement. Use the excess to cut the costs of discounts, miscellaneous fees and charges, etc., included in the determination of the maximum insurable mortgage.

G.  Discounts and/or Costs of Issuance associated with bond financing may be eligible for inclusion in the computation of Criteria 7 and 10.

1.  Review documentation regarding permanent financing. Documentation must state the amount of the discounts, financing fees, and/or costs of issuance to be charged and with whom they will be paid.

2.  **Permanent Placement Fee.** This fee must include all permanent placement expenses except discounts. Where GNMA Mortgage-Backed Securities (MBS) are involved and the mortgagee charges:

    a.  The maximum permanent placement fee, it may not assess an additional charge for either the MBS application fee and/or the securities custodial fee.

    b.  Less than the maximum permanent placement fee, it may assess an additional charge for either the MBS application fee and/or the securities custodial fee provided the total fees and charges do not exceed the dollar value of the maximum permanent placement fee.

3.  Determine if the discounts, financing fees and costs of issuance are reasonable and in line with prevailing market conditions and mortgage credit data.

Recognize financing fees and discounts charged by the permanent Lender, for inclusion in the mortgage:

    a.  Bond fees included in the mortgage transaction:

        (1)  Where a project is to be financed through the sale of either taxable or tax-exempt bonds, the maximum financing fees allowable in the mortgage computation and recognizable for cost certification purposes is 5.5 percent of the mortgage amount. Any cost beyond the 5.5 percent must be paid from sources outside the mortgage.

**HUD 0014**

(2) The maximum financing fee the mortgagee may retain for its own account is 3.5 percent. This 3.5 percent covers the costs of origination, processing, underwriting, closing and delivery (including the mortgagee's legal fees), escrow monitoring, permanent placement, etc. The remaining 2 percent (or such greater percentage as may result from the Lender reducing its maximum retainable 3.5 percent fee) may be used to offset the cost of bond fees.

b. Discounts. In a refinancing or purchase transaction, discounts will be recognized only for those actual costs charged by the placement Lender which are determined to be eligible. Discounts included in the computation of Criteria 7 and 10 must be reasonable based on current market conditions.

4. Do not recognize:

a. Financing fees and discounts beyond the 3.5 percent included in the mortgage where an identity of interest exists between:

(1) The sponsor/mortgagor and the new permanent Lender.

(2) The present permanent Lender or the interim Lender and the new permanent Lender, in a refinancing transaction.

b. GNMA application fee and securities custodial fee, where the GNMA Mortgage-Backed Securities Program will be used for permanent financing, since they are paid from the permanent placement fee.

c. Charges for warehousing a mortgage for future delivery.

## 8.10   Secondary Financing - Section 223(f)

The terms and conditions of secondary financing are:

A. The secondary financing is represented by a promissory note, Form FHA-2223. [For Section 232 pursuant to 223(f) transactions involving nonprofit mortgagors use a Residual Receipts Note (Nonprofit Mortgagors), Form FHA 1710.] This note shall not be altered in any manner.

B. The amount of the secondary financing is based on the source of funding.

1. When the loan is made by:

a. A Federal, State or local government agency or instrumentality the amount of the loan cannot exceed the difference between the HUD insured mortgage and the HUD Fair Market Value of the project. However, no other form of secondary financing may be used.

b. For other entities or natural persons [either alone or in combination with organizations listed in 1a], the aggregate amount of the insured first loan and the second loan cannot exceed 92.5 percent of HUD's Fair Market Value of the project.

HUD 0015

# 12.4  Section 223(f) Closings

Acquisition of an existing project or refinance of existing indebtedness may be achieved through HUD's Section 223(f) program and may involve limited repairs and improvements to the project.

### 12.4.1      Closing Requirements

The requirements of paragraphs 12.1.1 to 12.1.13and 12.1.15 apply to section 223(f) closings except for such requirements as may apply exclusively to the insurance of construction advances.

### 12.4.2      Closing By Mail or Escrow

The mortgagee may submit the final, executed, closing documents (including the title policy) by mail or other delivery to the HUD closing attorney, to achieve closing without the need to be present in the HUD office if the HUD closing attorney determines such closing is appropriate under the circumstances of the particular case. The HUD attorney will review them to determine whether they are complete and in compliance with HUD requirements. If so, the HUD attorney will so notify the mortgagee and will obtain the endorsement of the promissory note by the appropriate HUD official. The mortgagee must make appropriate arrangements for handling of the original promissory note, both before and after endorsement.

### 12.4.3      Handling Of Administrative Requirements

HUD, and its closing attorney will take cognizance of any document(s) in proper form and content which are submitted during any stage of processing the HUD firm commitment and preparation for closing; such documents need not be resubmitted at closing.

### 12.4.4      Attendance At Closing

For the convenience of all parties, authorized agent(s) and signatories of HUD (housing officials) will be present or at all necessary times during the closing.

### 12.4.5      Closing Forms

There is no so-called "initial" closing/FHA endorsement because HUD does not insure advances from a construction loan. Instead, there is one closing at which FHA endorses only the "total sum" portion of the panel on the mortgage note. Many of the basic closing requirements for insurance of advances are the same or similar to those for insurance upon completion. Those that differ are discussed below.

HUD 0016

A. Mortgage note. The prepayment provisions for the section 223(f) program (excluding loans insured under Section 232 pursuant to Section 223(f)) differ slightly from those in the section 221(d)(4) program. Section 223(f)(3) of the national housing act, 12 U.S.C.A. § 1715$nf3$ provides for a five-year prepayment prohibition, except under certain, specified circumstances. Consequently, the following provision must be included in the note in addition to any other prepayment restriction permitted under Paragraph 12.1.4.H.2:

The indebtedness evidenced by this Note may not be prepaid in whole or in part, for a period of five years from the date of endorsement here of, except where the express written approval by HUD is obtained and written approval is expressly based upon the existence of one of the following:

1. The mortgagor has entered into an agreement with the commissioner to maintain the property as rental housing for the remainder of the specified five-year period;

2. The commissioner has determined that the conversion of the property to cooperative or condominium ownership is sponsored by a bona fide tenants' organization representing a majority of the households in the project;

3. The commissioner has determined that continuation of the property as rental housing is unnecessary to assure adequate rental housing opportunities for low- and moderate-income people in the community; or

4. The commissioner has determined that continuation of the property as rental housing would have an undesirable and deleterious effect on the surrounding Neighborhood.

B. Evidence of zoning compliance. (If a zoning endorsement to the title insurance policy is obtained, HUD may choose not to require additional evidence that the project complies with local zoning requirements.)

C. Assurance of funds to meet operating deficits (if prescribed by the HUD firm commitment). For all facilities for which delayed completion of repairs will postpone or interrupt occupancy or income for any period, an additional deposit must be made to the operating deficit account.

D. Occupancy Certificate. Not required as long as there has not been any new construction

## 12.4.6   Additional Closing Documents

In addition to the items listed in Paragraph 12.4, the following documents are required for section 223(f) projects:

A. Additional documentation of authority/amendment of organizational documents. The mortgagor's organizational documents must be amended, if necessary, to include the HUD required provisions. If the mortgagor's organizational documents require prior consent of or notice to the principals in the mortgagor entity for any proposed refinance, evidence of compliance therewith should be submitted.

B. Request for final endorsement of credit instrument, Form FHA 2455. This form includes a certificate of mortgagee, certificate of mortgage and certificate of general contractor. It is used for insurance upon completion cases only. It should be completed so as to account for all of the funds required by the Firm Commitment.

C. Short form cost certification (Form FHA-2205a). A modified form of cost certification for loans insured under Section 223(f) must be submitted 15 days prior to endorsement of the note. See Chapter 14, Cost certification, at paragraph 14.4.C.

D. Certified closing statement. The mortgagee must provide a certified loan closing statement signed by the mortgagee and the mortgagor detailing the amount of any promissory notes made by mortgagor and any cash contribution made by the mortgagor and itemizing the disbursement of the mortgage proceeds and of the mortgagor's cash contribution, if any. The statement must list the amounts to be paid to satisfy the mortgagor's obligations for existing or other indebtedness, acquisition, repairs, discounts, financing fees, legal expenses, organizational expenses, title and recording costs, and like items, and any mortgagee-required escrows for taxes, insurance or other items.

E. Escrow agreement for unpaid construction costs (Form HUD-92476.1). Generally, all work must be acceptable before the loan closing. Only noncritical repairs may be deferred until after endorsement. Noncritical repairs are those that will not endanger the safety and well-being of tenants, visitors and passersby, adversely affect ingress or egress, or prevent the project from reaching sustaining occupancy. The mortgagor must establish an escrow with the mortgagee for the estimated cost of repairs not completed at time of closing, plus an additional percentage, all as set forth in the firm commitment.

F. Latent defect guarantee. Latent defects assurances are not required where the repairs relate only to deferred maintenance items and minor cosmetic repairs such as painting. When repairs and replacements are more significant, assurance against latent defects for 1 year from completion of repairs must be provided by one of the following:

1. An escrow in cash, or letter of credit at the option of the mortgagee, equal to 2-1/2 percent (or greater percentage if required by the firm commitment) of the repair cost maintained for 15 months from completion of repairs to cover situations where the defect is discovered in the twelfth month and additional time is necessary to correct it; or

2. A surety bond covered by Form FHA-3259 from a surety on the accredited list of the U. S. Treasury for at least 10 percent of the repair cost. (The bond runs for a period of two years from the date of completion of repairs.)

G. Secondary financing. See Chapter 8.

HUD 0018

# Chapter 14

# Cost Certification

## 14.1     Projects that Must Certify

Cost certification is required by the National Housing Act and Regulations for all insured multifamily projects processed by MAP Lenders except for rental projects insured under: Section 207/223(f) refinances where the mortgage is 80 percent or less of value.

## 14.2     Purpose for Certification

The purpose for certification is to establish the mortgagor's actual costs, including contractor's cost, to establish the "maximum insurable mortgage" for final endorsement of the insured mortgage.

## 14.3     Certifiable Costs

Certifiable costs are those costs that have been paid in cash or will be paid in cash within 45 days of final closing, except

    A.  Land Value which will be calculated by HUD,

    B.  General Overhead which is certifiable whether or not paid in cash, and

    C.  BSPRA which is cost certifiable whether or not paid in cash, where there is an identity of interest between the mortgagor and contractor.

    D.  Non-profit Developer's Fee which is cost certifiable whether or not paid in cash, less amounts certified to and allowed on other line items.

**HUD 0019**

## 14.4    Types of Cost Certification

A. Standard or "Long Form" Certification is required, except for projects permitted to use the "simplified" cost certification, and for certification of projects insured under Section 207 or Section 232 pursuant to Section 223(f).

B. Simplified Certification is restricted to projects involving 40 or less units of proposed construction or substantial rehabilitation.    Simplified Certification is used for Sections 207/223(f) and 232/223(f), regardless of size.

C. Section 223(f) Certification is required for all projects insured under Section 207 or Section 232 pursuant to Section 223(f), except that certification is not required for Section 207/223(f) transactions, where the mortgage is 80 percent or less of value.

D. Section 223(f) Supplemental Certification is required for projects identified in paragraph C above, where completion of repairs is permitted after closing

## 14.5    Entities That Must Cost Certify

A. Mortgagor must certify for all projects, except 207/223(f) refinances where the insured mortgage is 80 percent or less of value.

B. Contractor must cost certify where:

1. The Contractor has an identity of interest with the mortgagor, whether such identity of interest existed before the initial closing (for insured advances projects) or issuance of the Firm Commitment (for insurance upon completion projects), or the identity of interest developed after those dates; and/or

2. The contractor used the Construction Contract-Cost Plus, Form HUD-92442A, whether or not any identity of interest with the mortgagor existed or came into being.

C. Subcontractor at any tier, equipment lessor, material supplier, and manufacturer of industrialized housing must cost certify where:

1. The total of all subcontracts, purchases and leases is more than .5 percent of the mortgage, and

2. An identity of interest exists or comes into being between such subcontractor, equipment lessor, material supplier, or manufacturer of industrialized housing and either:

a.   The mortgagor, or

b.   The contractor, where the contractor must cost certify.

HUD 0020

## 14.9   Submission Date

Submission Date for cost certification should be within 30 to 45 days after the cut-off date and not less than 30 days before the desired final closing date.

## 14.10   Required Forms

A.   Form HUD-92330, Mortgagor's Certificate of Actual Cost, and line by line instructions are contained in the Forms Appendix.

B.   Form HUD-92330A, Contractor's Certificate of Actual Cost, and line by line instructions are contained in the Forms Appendix. Also used by subcontractor, material supplier, industrialized housing manufacturer, or equipment lessor required to certify cost.

Note: When a project includes rehabilitation and new construction, a separate form is required for each, with a master form summarizing total project costs, including fees.

C.   Form FHA-2205A, Mortgagor's Certificate of Actual Cost (Section 207 Pursuant to Section 223(f)), and line by line instructions are contained in the Forms Appendix.

## 14.11   Required Statements and Certifications

Follow either A or B, below, depending on qualifications in A.1.

A.   Simplified Form of Cost Certification.  Use Forms HUD-92330, HUD-92330A (if a cost plus construction contract was used or an identity of interest exists between the mortgagor and the general contractor).  An accountant's opinion is not needed.

1.   Simplified cost certification is permitted for new construction or substantial rehabilitation projects involving 40 units or less and for refinancing or purchase of existing properties under 207/223(f) and 232/223(f).

2.   If there is an identity of interest between a subcontractor, material supplier, equipment lessor, or manufacturer of industrialized housing and the mortgagor and/or general contractor who must cost certify, and the total of all identity of interest subcontracts, purchases and leases is more than 1/2 of 1 percent of the mortgage, the identified party uses Form HUD-92330A.   This requirement established by the Agreement and Certification, Form HUD-3305/3306, applies in all cases.

3.   An unaudited balance sheet of the mortgagor entity, as of the cut-off date is required in all cases.  Format and content of the balance sheet must follow paragraphs B.4.a through g below.

HUD 0021

4. An unaudited operating statement is required if occupancy occurred during construction. Format and content of the operating statement must follow paragraphs B.5.a through c below.

5. In those cases involving LIHTC's, the information must be audited even for those cases eligible to submit a simplified cost certification.

B. **Long Form Cost Certification.** For cases that do not qualify for simplified cost certification based upon paragraph A.1 above, submit the following:

1. Mortgagor's Certificate of Actual Cost, Form HUD 92330, supported by an accountant's opinion (refer to paragraph 14.11 B6).

2. Contractor's Certificate of Actual Cost, Form HUD-92330A, supported by an accountant's opinion (refer to paragraph 14.11.B.6), is required if there is an identity of interest with the mortgagor or if a cost plus construction contract was used.

3. Subcontractors, suppliers, and equipment lessors with an identity of interest with either the mortgagor or general contractor must submit Form HUD 92330A supported by an accountant's opinion.

   a. Material suppliers. Attach to Form HUD 92330A a sheet showing:

   (1) Quantities furnished.

   (2) Sources from which the materials were obtained.

   (3) Unit prices paid to the sources, brand names, model numbers, sizes, lumber grades, etc., as applicable.

   NOTE: No amount will be included for general requirements (job overhead).

   b. Equipment Lessor. Attach to Form HUD 92330A a sheet showing:

   (1) Dates the equipment was acquired,

   (2) Age of equipment at acquisition date,

   (3) Brand names and model numbers,

   (4) Sizes,

   (5) Dates and length of time used, and

   (6) Rates charged.

      (a) The Lessor(s) must certify that:

         (i) The rates charged were not more than the local going rate obtainable in the area, including any maintenance and repair.

         (ii) The time charged was not more than essential for the project.

HUD 0022

(iii) The charges did not exceed the purchase price of the equipment.

(b) Lump Sum Basis.  Instead of providing an attachment containing the above information, the lessor(s) may elect to certify to charges at 85 percent of the local going rates for identical equipment under arms' length (lump-sum) leases.  When using this alternative, the lessor agrees:

(i)  The Hub is the sole judge of the reasonableness of the time and rates charged, and

(ii)  Equipment maintenance and repair expense is the responsibility of the lessor(s) and is not included as an additional cost.

(c) Subcontractor's equipment.  Costs for subcontractor(s) equipment, whether owned or rented, are considered in the markup for overhead and profit.  These costs shall be reflected in the total subcontract and in the prior approval of identity of interest entities.  A separate certification of the equipment is not required.

(d) Manufacturer of Industrialized Housing.  Attach to Form HUD 92330A, a breakdown of Division 13, Special Construction, showing:

(i)  Manufacturing costs.

(a) Labor

(b) Materials

(c) Sales and any other taxes

(d) Factory overhead

(e) General overhead and profit

NOTE:  The manufacturer's accounting system must follow generally accepted accounting procedures which will allow certification of the actual cost of manufacturing by a Certified Public Accountant or Independent Public Accountant.  No amount will be included for transportation or work at the project site.

(ii) Transportation costs, factory to project site (if provided by manufacturer).

(a) Labor

(b) Equipment

(iii) On-site erection costs (if provided by manufacturer).

(a) Labor

(b) Equipment

(c) Materials

(d) General requirements (job overhead)

HUD 0023

(iv) The remainder of the manufacturer's Form HUD 92330A is completed per outstanding instructions.

NOTE:  There can be no duplication of manufacturing costs, i.e., repair of components damaged in shipment.

4. An audited balance sheet of the mortgagor entity, as of the cut-off date is required.

   a. The balance sheet must contain the following certification

   I HEREBY CERTIFY that the foregoing figures and statements contained herein submitted by me as agent of the mortgagor [owner] for the purpose of obtaining mortgage insurance under the National Housing Act are true and give a correct showing of _____ (Name of mortgagor or owner) financial position as of _____ (date of financial statement).

   Signed this ____day of _____, 20

   _____ (Signature of authorized agent with name printed or typed under signature)

   WARNING: HUD will prosecute false claims and statements.  Conviction may result in criminal and/or civil penalties.  (18U.S.C. 1001, 1010. 1012; 31 U.S.C. 3729, 3802)

   b. Furnish reconciling information if short term liabilities on the balance sheet do not agree with Column B of Form HUD 92330.

   c. Explain the purpose of all liabilities in the notes to the financial statements and include repayment requirements of the liabilities.

   d. If proceeds and obligations from project syndication are passed through the books and records of the mortgagor entity, reflect receivables as an asset of the mortgagor entity.

   e. The notes to the balance sheet must identify the original amount of and summarize the expenditures from the working capital deposit.

5. An audited operating statement is required if occupancy occurs before the cost certification cut-off date.

   a. The statement must contain the certification contained in Paragraph 14.11.B.4.

   b. Prepare the operating statement on an accrual basis.

   c. The statement covers the beginning of marketing and rent-up activities (or date of initial endorsement in rehabilitation projects where occupancy is continuous) to the cut-off date.

   d. Marketing and rent-up activities will start no earlier than 6 months before the issuance of the first Permission to Occupy-Project Mortgages, Form HUD-92485.

   e. The statement must show the actual dates covered rather than language such as "From the Date of Commencement of Marketing and Rent-up Activities, etc."

f.  The statement must show income from all sources. Do not consider security deposits as income.

g.  The operating statement should not contain any expense items that were paid or should have been paid from the working capital deposit or otherwise included in cost certification.

h.  Operating expenses may include:

   (1) Expenses directly relating to renting the project, such as:

      (a) Rental commissions customary for the type of project, if any, and

      (b) Marketing and advertising expenses.

   (2) Purchase of furnishings, equipment not paid from the working capital deposit, and supplies essential to project operation.

   (3) Reasonable fees for preparing any Federal, State, or local tax return information required of the project.

      (a) For example: If the mortgagor entity is a partnership, the cost of preparing both Form 1065, U.S. Partnership Return of Income, and related K Schedules may be considered.  Do not recognize the cost of preparing a partner's personal Form 1040 return.

      (b) If the project is owned by an individual, include the cost of preparing any tax return schedule related to project operations, but not other parts of the owner's return.

   (4) Electricity, gas, water, and operating salaries (maintenance, cleaners, gardeners, elevator operators, etc.) to the extent they are not included in construction cost of Form HUD 92330, Mortgagor's Certificate of Actual Cost, or HUD 92330A, Contractor's Certificate of Actual Cost.

   (5) Management fee stated in the contract.

   (6) Services not covered by the management fee under paragraphs 3b and c of Handbook 4381.5, Compensations for Management Services in Multifamily Housing Projects with Insured or HUD-Held Mortgages.

i.  Operating expenses may not include:

   (1) Depreciation

   (2) Interest, taxes, property insurance premiums, and mortgage insurance premiums, that are reflected in Form HUD 92330, Mortgagor's Certificate of Actual Cost.

   (3) Salaries paid to principals of the sponsor or mortgagor for managing the mortgagor entity.

j.  Treat net income as:

(1) A recovery of construction costs for profit motivated mortgagors.

(2) For a nonprofit mortgagor:

    (a) as a recovery of construction costs at cost certification, to the extent that it was used to reduce liquidated/actual damages,

    (b) as an offset for an a mortgage increase,

    (c) deposit the unused portion of net income into the reserve for replacement at final endorsement.

k.  If operating expenses exceed income:

    (1) No entry is made on Form HUD 92330, Mortgagor's Certification of Actual Cost.

    (2) Operating deficit may be carried over as a reduction to net income on the supplemental operating statement.

6.  A Certification by an independent Certified Public Accountant or an independent Public Accountant must accompany Form HUD 92330, Mortgagor's Certificate of Actual Cost, including the audited balance sheet and operating statement of the mortgagor, and Form HUD 92330A, Contractor's Certificate of Actual Cost.

    a.  The accountant must meet the auditor qualifications of the Government Auditing Standards (GAO Yellow Book), including the qualifications relating to independence and continuing professional education. The audit organization also must meet the quality control standards of the GAO Yellow Book.

    b.  Part 24 of Title 24 of the Code of Federal Regulations prohibits accountants from contracting for services when their name is shown on the HUD and General Services Administration Government-wide Consolidated List of Debarred, Suspended and Ineligible Contractors and Grantees.

    c.  The accountant must also comply with the requirements in Chapters 1,2,3 and 6 of HUD Handbook IG 2000.4, "Consolidated Audit Guide for Audits of HUD Programs." [Appendix ].

7.  The mortgagor must submit a supplemental operating income statement if more than 3 months exist between the cut-off date and the start of amortization. If a deferment of amortization has been granted, use the new date for the start of amortization in determining the need for a supplemental operating statement.

    a.  This requirement does not apply to nonprofit mortgagors, nor any project where the mortgage is $200,000 or less.

    b.  The statement covers the period from the cost certification cut-off date to the date which is 3 months before the start of amortization and should be submitted within 30 days after the expiration of this period.

    c.  The supplemental statement must be prepared and certified by a CPA or IPA if the original cost certification was required to be audited.

    d. The mortgagor may advance the date of amortization to avoid submitting a supplemental income statement.

    e. In preparing the statement, if the operating statement submitted at cost certification shows expenses in excess of income, such expenses may be carried forward as "unrecovered expense–prior period."

C. Section 223(f) Projects. The mortgagor certifies to the total costs incurred in the acquisition or refinancing of the property using Form FHA 2205-A, Mortgagor's Certificate of Actual Cost. The certification must be dated and signed by an authorized agent of the mortgagor. An accountant's opinion is not needed.

    1. The certification must be submitted after all critical repairs have been completed, but at least 15 days before the desired closing date.

    2. The general contractor will be required to cost certify using Form HUD 92330A if a cost plus construction contract is used.

    3. A balance sheet and income statement are not required.

    4. No cost certification is required for a 207/223(f) refinancing transaction where the mortgage is equal to or less than 80 percent of value.

    5. For cases involving deferred repairs, the mortgagor must submit a supplemental cost certification detailing the actual cost of the deferred repairs.

## 14.12      Deficiencies in Cost Certification Submission

When the cost certification package is received for processing:

A. The Cost and Mortgage Credit reviewers will:

    1. Determine deficiencies associated with the mortgagor's and contractor's cost certifications.

    2. Advise the Hub Director and estimate the time needed to resolve the problem(s).

    3. Attempt to resolve all problems by telephone before making a formal written request. This usually allows processing to continue while waiting for a formal reply.

    4. Send a letter within 5 workdays to the mortgagor with copies to the general contractor (if applicable), their accountants, and the mortgagee stating the deficiencies and requesting information.

B. Upon receipt of all necessary information, combined processing should not exceed 15 workdays.

HUD 0027

C. Treat net income resulting from review of the operating statement as a recovery of construction costs (on Form HUD-92331A, Cost Certification Review Worksheet) for a profit motivated mortgagor and for a nonprofit mortgagor as:

   1. At cost certification, as a recovery of construction costs to the extent it was used to reduce liquidated/actual damages.

   2. As an offset for any eligible mortgage increase.

   3. At final endorsement, deposit the unused portion of net income to the Reserve Fund for Replacements.

D. Nonprofit Developer's Fee may be used to recover the cost of Administrator's Salary during lease-up. Check to make sure this cost is not duplicated in the income and expense statement.

## 14.20  Modified Form of Cost Certification – Section 223(f)

A. A modified form of cost certification shall be completed and submitted for review 15 days prior to the initial/final endorsement of the loan for insurance for all projects processed pursuant to Section 223(f) except those 207/223(f) refinancing transactions where 80% of value is the controlling criterion. (In such cases, cost certification is not required.)

   1. The mortgagor must certify to the total actual costs incurred in the acquisition or refinancing of the property. The certification must be submitted on Form FHA-2205-A, and it must be dated and signed by an authorized agent of the mortgagor.

   2. The mortgagee must submit the certification to HUD for computation of the maximum insurable mortgage and completion of Section II of Form FHA-2205-A.

   3. If, in a purchase transaction, the amount of the acquisition cost determined allowable at cost certification exceeds the estimate of value which was determined during processing, the rent formula shall be recomputed. This re-computation may be accomplished using the allowable acquisition cost as determined by cost certification and the collar amount of secondary financing represented by the approved promissory notes (Form HUD-92223).

B. A supplemental cost certification must be submitted by the mortgagor where an escrow was established at endorsement for completion of non-critical repairs. In cases where actual costs are less than estimated, the maximum insurable mortgage must be recalculated. If the maximum insurable mortgage is reduced due to lower actual costs, the mortgagor must either:

   1. Provide the required prepayment to the mortgagee.

   2. Have the required prepayment deducted from the repair escrow.

HUD 0028

## 14.21   Mortgage Reduction after Cost Certification

A. The National Housing Act requires that the mortgage will not exceed the applicable percentage of actual costs. If certified actual costs are lower than original projected cost as reflected in Form HUD-92264, a reduction in mortgage may be applicable. The Agreement and Certification, Form HUD-3305/3306, also addresses this issue and provides that where the Commissioner accepts, for cost certification, estimates of cost for any item, the later substitution of certified actual costs may require a reduction of the mortgage.

B. Reductions of cost may arise from:

1. Refunds, rebates, or discounts.

2. Excess of escrows over the actual costs of incomplete construction items.

3. Refunds of deposits made by the mortgagor to prevent losses to the mortgagee from loss in connection with sale of the mortgage.

4. Settlement of claims against bonding companies or others after project completion.

C. At final endorsement, the mortgagor must set up a cash escrow to pay all "to be paid in cash items" identified on Form HUD-92330, Mortgagor's Certificate of Actual Cost, and debts to third parties who made the original disbursement for an item listed as paid on Form HUD-92330.

1. Reconcile the difference between:

   a. Obligations listed on Form HUD-92023, Request for Final Endorsement of Credit Instrument or FHA-2455 (For Insurance Upon Completion Projects only).

   b. The "to be paid" column on Form HUD-92330 plus debts to third parties.

2. Difference must be supported by paid receipts and a statement from the mortgagor identifying by name and cost, those items paid in cash. The receipts and statement are affixed to Form HUD-92023/FHA-2455.

3. Do not accept personal or business checks issued by the mortgagor at final endorsement as evidence of payment. Payment must be in certified or cashier checks.

4. Prepare a new Form HUD-92331A to disallow obligations listed as "paid" or "to be paid" on Form HUD-92330, which are represented at final endorsement as paid by HUD-approved notes. Prepare a new Form HUD-92580 from the total of HUD-approved cost of revised Form HUD-92331A.

5. Undisbursed mortgage proceeds may supplement or satisfy the cash escrow.

6. Use Form HUD-92476-1, Escrow Agreement for Unpaid Construction Costs:

   a. To set up the cash escrow.

   b. Attach a detailed listing of the unpaid costs.

7. Use Form HUD-92464, Request for Approval of Advances of Escrow Funs to disburse escrow.

8. Escrow should be disbursed within 45 days after final endorsement. If all of the funds are disbursed follow the procedures in C below.

9. At final endorsement, if all obligations have been paid in cash, nothing else is needed.

D. Sixty days after final endorsement:

1. Prepare a new Form HUD-92331A. Enter under the column heading:

   a. "2264" - the amount of each item of cost recognized from the earlier Form HUD-92331A "Allowed" column.

   b. "2330/2330A" - the amount listed in Column C of the Mortgagor's Certificate of Actual Cost, Form HUD-92330, for each item of cost.

   c. "Allowed" - the amounts paid in cash based on the reconciliation performed in Paragraph B above and disbursements from the cash escrow account.

   d. "Disallowed" - the lower of the amounts previously allowed or paid in cash.

2. Compute a new Maximum Insurable Mortgage, Form HUD-92580, based on the total of the "Disallowed Column" (Form HUD-92331A). If this computation produces an amount less than the mortgage finally endorsed:

   a. Notify the Directors of Housing Development and Management by memorandum that prepayment to the mortgage is required.

   b. Prepayment is mandatory and is applied:

      (1) In amounts equal to the scheduled monthly principal payments, to the extent possible.

      (2) Any remainder goes to the Reserve for Replacements Fund.

   c. If HUD is notified that payment has been delayed because of a dispute or litigation, retain funds to pay the amount pending resolution of the dispute.

   d. Notify the mortgagee or escrow agent by letter of the required prepayment.

   e. Control the remaining balance in a special account, as a reserve for unpaid construction costs from which disbursements may be made only after written consent of the Field Office.

3. The mortgagee will continue to use the existing amortization schedule for servicing the mortgage.

   a. The prepayment is in addition to the regular monthly payments to principal.

   b. There is no adjustment in the amount of the annual MIP due because of these mandatory prepayments.

4. The escrow requirement does not apply to funds the general contractor owes. However, the general contractor must submit a reconciliation of its "to be paid" items.

HUD 0030

(6-2)

     3  The sum of the amounts attributable to financing charges, legal and organizational, and title and recording expenses which the mortgagor is required to pay and which the Secretary determines are reasonable.

     4  The estimate of repair cost, if any, as determined by the Secretary.

     5  Discounts as determined eligible by the Secretary.

     6  Architect's fees, mechanical engineering fees, and municipal inspection fees, as may be determined eligible by the Secretary.

NOTE. Any fees, discounts or other amounts paid by the seller for or on behalf of the purchaser must be reflected as a reduction to the acquisition cost.   *

d.  **Determining the Maximum Insurable Mortgage in a Refinancing Transaction.**

   (1)  For the purpose of determining the maximum insurable mortgage in a refinancing transaction under Section 223(f) of the Act, existing indebtedness is defined to be:

     (a)  The outstanding mortgage(s) incurred in connection with the construction of the project or with capital improvements made to the property as confirmed by the mortgagee, using the pay-off letter which appears in Exhibit V of this Handbook, and other recorded indebtedness such as mechanics' and tax liens. The tax liens must be for a project indebtedness rather than for an indebtedness against the property arising from a personal obligation of the mortgagor.

     (b)  Some unrecorded indebtednesses, such as, delinquent interest, indebtedness incurred in making significant betterments to the property subsequent to the initial completion of the project, prepayment penalties, etc. If the indebtedness is not recorded, the mortgagor must provide the field office with documentation which unquestionably identifies the indebtedness with the project.

EXHIBIT
SJ 2

2/78

HUD 005271

4565.1 CHG

(6-2)          (c)   The outstanding indebtedness when an open line of
                     credit is used in the construction of a project.
                     In such cases, a cost certification prepared by a
                     certified public accountant and submitted on Form
                     FHA-2330 and Form FHA-2330A in the manner prescribed
                     in outstanding HUD instructions must accompany the
                     application for insurance.  The cost certification
                     shall not be reviewed in the same manner as those
                     submitted under HUD's other insured loans programs,
                     but shall be accepted as verification of the actual
                     construction costs which will be eligible for re-
                     financing.  The lending institution must verify the
                     amount of the outstanding indebtedness on the line
                     of credit and identify that portion which is attrib-
                     utable to the project.

        (2)   In some instances, it shall not be appropriate to
              recognize the total indebtedness in establishing
              the maximum mortgage amount.  For example, if a second
              trust has been created shortly before the application for
              mortgage insurance was filed and runs to an identity of
              interest party, there is a strong presumption that such
              debt was created merely for the purpose of securing a
              larger insured loan to enable the owner to recapture
              equity out of mortgage proceeds.  In any such case, the
              amount of the existing indebtedness shall not include the
              second trust unless it can be proven that such trust was
              essential to the project.

        (3)   Any recent indebtedness placed against the property
              whether or not an identity of interest party is involved
              must be closely investigated.  If it appears that any
              such indebtedness was placed against the project in an
              effort to increase the mortgage or to circumvent out-
              standing instructions, then it shall not be considered
              existing indebtedness for the purpose of determining the
              maximum insurable mortgage.

   e.   Amount of Loan in Older, Declining Neighborhoods.  The subject
        loan shall be as follows:

        (1)   In a purchase transaction the amount of the loan shall
              be determined in accordance with Paragraph 6-2b above.

HUD 005272