PLEASE NOTE THAT ALL INPUT AREAS ARE RED. INPUT IN OTHER AREAS COULD ELIMINATE FORMULAS

**Application for Project Mortgage Insurance:** Nursing Homes, Intermediate Care Facilities, and Board and Care Homes

U.S. Department of Housing and Urban Development
Office of Housing
Federal Housing Commissioner    OMB No. 2502-0029 (Exp. 7/31/94)

Public reporting burden for this collection of information is estimated to average 64 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data need, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Reports Management Officer, Office of Information Policies and Systems, U.S. Department of Housing and Urban Development, Washington, D.C. 20410-3600 and to the Office of Management and Budget, Paperwork Reduction Project (2502-0029), Washington, D.C. 20503. Do not send this completed form to either of these addresses.

| Project Name | Project Number |
|---|---|
| BRYLIN HOSPITALS | TBA |

To: CONTINENTAL SECURITIES, LLC    and the Secretary of Housing and Urban Development. The Undersigned hereby requests a loan in the principal amount of  $7,012,500  to be insured under the provisions of Section 232 of the National Housing Act, said loan to be secured by a first mortgage on the property hereinafter described. Insurance of advances during construction  [ ] is,  [ ] is not desired.

Type of Financing: [ ] Conv.  [X] GNMA  [ ] Tax-Exempt Bond  [ ] Other   Type of Mortgagor: [X] PM  [ ] NP

**A. Location and Description of Property**

| 1. Street Nos. | | 2. Municipality | 3. County | 4. State |
|---|---|---|---|---|
| 1263 DELAWARE & 11438 GENESEE | | BUFFALO & ALDEN | ERIE | NY |

| 5. Type of Project | 6. Gross Floor Area in S.F. | 7. No. Bldg. | Floors | 8. No. of Beds | 9. Avg. Basic Monthly Charges P.B. | 10. Avg. Other Monthly Charges P.B. |
|---|---|---|---|---|---|---|
| [X] Elevator [ ] 1 Story | 69078/26905 | 4 | 2 FLRS | B 88 CF 62  NH 0 ICF 0 | $23,267 | $2,997 |

| 11. | 12. Year Built | 13. Accessory Buildings |
|---|---|---|
| [X] Existing [ ] Rehab [ ] Proposed | 1968/1951 | MULTI BLDGS AT BOTH SITES |

**Site Information**

| 14. Dimensions: 1.87/35.40 acres or ft. or SQUARE FEET Sq. ft. | ft. by | 15. Zoning (if recently changed, submit evidence) DEL: R-4(apt) ALDEN:R/C&R/H |
|---|---|---|

**Building Information**

| 16. Structural system | 17. Exterior Finish | 18. Heating - A/C System |
|---|---|---|
| BOTH MASONRY | BRICK/DRYVIT | HOT WATER RADIANT |

**B. Information Concerning Land or Property**

| 19. Date Acquired | 20. Purchase Price | 21. Cost Paid Or Accrued | 22. If Leasehold Annual Ground R | 23. Total Cost | 24. Relationship-Business Personal or Other Between Seller & Buyer |
|---|---|---|---|---|---|
| | | | | #VALUE! | RELATIONSHIP |

| 25. Utilities- Public | Community | 26. Unusual Site Features - | | | | |
|---|---|---|---|---|---|---|
| Water [X] | [ ] | [ ] Cuts | [ ] Fills | [ ] Rock Formations | [ ] Erosion | |
| Sewers [X] | [ ] | [ ] Poor Drainage | | [ ] High Water Table | [ ] Retaining Walls | |
| | | [ ] Other (Specify) | | | [X] None | |

| 26a. Special Assessments; | (a) [ ] Prepayable  [ ] Non-Prepayable | | |
|---|---|---|---|
| | (b) Principal Balance | (c) Annual Payment | (d) Remaining Term in yrs. |

**C. Estimate of Income**

| 27. Type of Room or Unit | Number of Beds | | | Estimated Rate Monthly | | | Est Monthly Income at 100% Occup | Total |
|---|---|---|---|---|---|---|---|---|
| | Nursing | Intermed. | Board & Care | Nursing | Intermed. | Board & Care | | |
| See Attached | # | # | # | # | # | # | $0 | |
| | | | | | | | $0 | |
| | | | | | | | $0 | |
| | | | | | | | $0 | |
| | | | | | | | $0 | |
| | | | | | | | $0 | |
| | | | | | | | $0 | |
| | | | | Total Monthly Income | | | | $1,442,534 |

| 28. Other Income (List) | ANCILLARY INCOME | | # | |
|---|---|---|---|---|
| See Attached | | | | |
| | | Total Other Income | | $185,833 |
| 29. | | Total Monthly Income-All Sources | | $1,628,367 |
| 30. | Total Estimated Annual Gross Project Income at 100% Occupancy (Line 29 x 12 Months) | | | $19,540,404 |

**31. Non-Revenue Producing Space**

| Type of Employee | No. Rms. | Composition of Unit | Location of Unit in Project |
|---|---|---|---|
| | | | |
| | | | |

EXHIBIT SJ 7

HUD 0031

**BRYLIN HOSPITALS**

### D. Payroll (Salaries)

| Position | No. | Monthly Rate | Total Annual | Position | No. | Monthly Rate | Total Annual |
|---|---|---|---|---|---|---|---|
| 32. Administrative- | | | | 35. Housekeeping | | | |
| *General* | 33.4 | $3,743 | 1,500,000 | | 0 | $0 | 0 |
| *Nursing* | 12.6 | $2,976 | 450,000 | | | | 0 |
| | | | 0 | | | | 0 |
| **Total Administrative** | | | 1,950,000 | **Total Housekeeping** | | | 0 |
| 33. Bldg. & Grounds | | | | 36. Nursing Service | | | |
| *OP/Maint* | 8.6 | $3,391 | 350,000 | *Daily Patient* | 88.6 | $2,996 | 3,185,000 |
| *Maint/Sec* | 2 | $1,667 | 40,000 | *Outpatient* | 19.3 | $2,807 | 650,000 |
| *Misc* | 6.5 | $2,179 | 170,000 | *Other* | 7 | $2,500 | 210,000 |
| | | | 0 | | | | 0 |
| **Total Buildings and Grounds** | | | 560,000 | **Total Nursing Services** | | | 4,045,000 |
| 34. Dietary - | | | | 37. Other Salaries | | | |
| *Delaware* | 10.5 | $2,143 | 270,000 | *Pharmacy* | 1.5 | $6,667 | 120,000 |
| *Alden* | 4.1 | $1,524 | 75,000 | *Med. Records* | 6 | $2,500 | 180,000 |
| | | | 0 | | | | 0 |
| **Total Dietary** | | | 345,000 | **Total other Salaries** | | | 300,000 |
| **38. Estimated annual Salaries** | | | | | | | **7,200,000** |

### F. Estimated Annual Operating Expenses

| Administrative | | | Other Expenses | | |
|---|---|---|---|---|---|
| | | | 33. Director Fee | $325,000 | |
| 1. Telephone & Telegraph | $135,000 | | 34. Purch. Services | $545,000 | |
| 2. Advertising | $50,000 | | 35. Rent - Clinics | $225,000 | |
| 3. Insurance and Liability | $120,000 | | 36. Total Other Expenses | | 1,095,000 |
| 4. License or Permit | $25,000 | | 37. Total Salaries (line D-38) | | 7,200,000 |
| 5. Legal and Audit | $100,000 | | 38. Repl. Reserve (Realty)(.006 x Line G-8) | | 37,500 |
| 6. Miscellaneous | $257,000 | | 39. Expenses (Less Taxes) | | 11,311,500 |
| 7. Office Expense | $82,000 | | | | |
| **8. Total Administrative** | | 769,000 | **Taxes** | | |
| | | | 40. Real Estate Est. Assessed Val. | | |
| **Building and Grounds** | | | $_____ @ $_____ Per $1000 | $135,000 | |
| 9. Decorating-Interior and Exterior | | | 41. Personal Prop. Est. Assessed Val. | | |
| 10. Heating | | | $_____ @ $_____ Per $1000 | | |
| 11. Electricity | $280,000 | | 42. Employee Payroll Tax | $500,000 | |
| 12. Water | | | 43. Employee Social Security | | |
| 13. Gas | | | 44. Other | $671,500 | |
| 14. Garbage Removal | | | **45. Total Taxes** | | 1,306,500 |
| 15. Insurance | | | 46. Repl. Res (Non-R) .10 x 100% replacement cost | | 37,500 |
| 16. Supplies | | | 47. Total Est. Ann. Operat. Expenses | | |
| 17. Maintenance and Repairs (Bldg. and Realty Items) | $60,000 | | (lines 39 + 45 + 46) | | 12,655,500 |
| 18. Ground Expenses | | | **F. Estimate of Net Returns** | | |
| 19. Miscellaneous | | | 1. Annual Gross Earnings Expectancy (From C-30) | | 17,310,417 |
| 20. Exterminating | | | 2. Predicted Occupancy Ratio | 66.68% | |
| **21. Total Building and Grounds** | | 340,000 | 3. Effective Annual Gross Income (Line F-1 x F-2) | | 11,542,586 |
| | | | Add: Other Income Net | | 2,230,000 |
| **Dietary** | | | 4. Est. Total Annual Operating Expense (From E-47) | | 12,655,500 |
| 22. Supplies | $110,000 | | 5. Net Return Available for Proprietary Earnings, | | |
| 23. Food Cost | $330,000 | | Realty and Non-Realty (Line F-3 minus Line F-4) | | 1,117,086 |
| **24. Total Dietary** | | 440,000 | 6. Estimated net Earnings Attributable to | | |
| | | | Realty and Non-Realty | 85% | 949,523 |
| **Housekeeping** | | | 7. Estimated Residual Proprietary Earnings | | |
| 25. Supplies | $10,000 | | (Line F-5 minus Line F-6) | % | 167,563 |
| 26. Laundry | | | **G. Estimated Replacement Cost** | | |
| 27. Other | | | 1. Unusual Land Improvements | # | |
| **28. Total Housekeeping** | | 10,000 | 2. Other Land Improvements | 450,000 | |
| | | | 3. Total Land Improvements | | 450,000 |
| **Nursing Service** | | | 4. Structures-Gross Flr Area Sq. Ft. | | |
| 29. Supplies | $50,000 | | 5. Main Building-Del | 7,279,823 | |
| 30. Drugs | $230,000 | | 6. Main Bldg - Alden | 3,445,185 | |
| 31. Professional Fees | $1,140,000 | | 7. Basement | 823,979 | |
| **32. Total Nursing Service** | | 1,420,000 | 8. Total Structures | | 11,548,987 |
| | | | 9. General Requirements | Included | 0 |

HUD 0032

| G. Estimated Replacement Cost (continued) | | | | Legal and Organization: | | BRYLIN HOSPITALS |
|---|---|---|---|---|---|---|
| Fees: | | | | 31. Legal | $50,000 | |
| 10. Builder's General Overhead | | | | 32. Organization | $20,000 | |
| @ %    % | | | | 33. Cost Certification Audit Fee | $20,000 | |
| 11. Builder's Profit | | | | 34. Total legal and Organization | | 90,000 |
| @ %    % | | | | 35. Consultant Fee (N.P. only) | | 0 |
| 12. Architect Fee-Design | | | | 36. Major Movable Equip. (Non-Realty) | | 1,545,789 |
| @ %    % | | | | 37. Total Est. Development Cost  (Excl. of Land or | | |
| 13. Architect Fee-Suprvr.. | | | | Off-site Cost) (17+30+34+35+36) | | 14,799,128 |
| @ %    % | | | | 37a. Depreciation (line 37 times 44.00%) | | 6,511,616 |
| 14. Bond Premium | | | | 38. Land | | 343,500 |
| 15. Other Fees | 350,000 | | | 39. Total Estimated Replacement Cost of Project | | |
| 16. Total Fees | | 350,000 | | (Add Lines 37 and 38 and subtract Line 37a) | | 8,631,000 |
| 17. Total for All Improvements (3+8+9+16) | | 12,348,987 | | | | |
| 18. Cost Per Gross Sq. Ft. | 128.66 | | | H. Total Requirements for Settlement | | |
| 19. Estimated Construction Time | 12 | Months | | 1. Existing Debt & Loan Closing Costs | | 7,011,497 |
| | | | | 2. Required Repairs | | 77,325 |
| Carrying Charges and Financing: | | | | 3. Subtotal (Line 1 + Line 2) | | 7,088,822 |
| 20. Interest         %       Mos. @ | | | | 4. Mortgage Amount | $7,012,500 | |
| 14     on    $12,799,000 | | | 0 | 5. Fees Paid by Other than Cash | $0 | |
| 21. Taxes | | | 0 | 6. Line 4 plus Line 5 | | 7,012,500 |
| 22. Insurance | | | 0 | 7. Line 3 minus Line 6 | | 76,322 |
| 23. FHA Mtg. Ins. Pre. | 0.50% | | 63,995 | 8. Initial Operating Deficit | | 0 |
| 24. FHA Exam/ Fee | 0.30% | | 38,397 | 9. Anticipated Discount | | 0 |
| 25. FHA Inspec. Fee | 0.50% | | 63,995 | 10. Working Capital | | 0 |
| 26. Financing Fee | 2.00% | | 255,980 | 11. Off-Site Construction Costs | | 0 |
| 27. AMPO (N.P. only) | 0.00% | | 0 | 12. Non-Mortgagable Equipment and Furnishings | | 0 |
| 28. GNMA Fee | 1.50% | | 191,985 | 13. Total Estimated Cash Requirement | | 76,322 |
| 29. Title and Recording | | | 200,000 | (Total of Lines 7, 8, 9, 10, 11, and 12) | | |
| 30. Total Carrying Charges and Financing | | | 814,352 | | | |

| Source of Cash to Meet Requirements | | Amount | |
|---|---|---|---|
| SPONSOR AND PREPAID COSTS | | $ | 76,322 |
| X    From Sponsor's general funds | | $ | - |
| SOURCE | | $ | - |
| Total (Submit Attachment if Additional Space is Needed) | | $ | 76,322 |

I. Names, Adresses and Telephones Numbers of the Following

| Sponsor Name | Telephone Number |
|---|---|
| NAME  Linreal Corporation | PHONE NUMBER  (716) 886-8200 |
| Address and Zip Code | |
| ADDRESS   1263 Delaware Ave., Buffalo, NY 14209 | |
| Sponsor Name | Telephone Number |
| NAME | PHONE NUMBER |
| Address and Zip Code | |
| ADDRESS | |
| Sponsor Name | Telephone Number |
| NAME | PHONE NUMBER |
| Address and Zip Code | |
| ADDRESS | |
| Contractor Name | Telephone Number |
| NAME | PHONE NUMBER |
| Address and Zip Code | |
| ADDRESS | |
| Sponsor's Attorney Name | Telephone Number |
| NAME | PHONE NUMBER |
| Address and Zip Code | |
| ADDRESS | |
| Architect Name | Telephone Number |
| NAME | PHONE NUMBER |
| Address and Zip Code | |
| ADDRESS | |

HUD 0033

Certification

The undersigned as the principal sponsor of the proposed mortgagor, certifies that he/she is familiar with the provisions of the Regulations of the Secretary of Housing and Urban Development under the above identified Section of the National Housing Act and that, to the best of his/her knowledge and belief, the mortgagor has complied, or will be able to comply, with all of the requirements thereof which are prerequisite to insurance of the mortgage under such Section.

The undersigned further certifies that to the best of his/her knowledge and belief no information or data contained herein or in the exhibits or attachments listed herein, in any way false or incorrect and that they are truly descriptive of the project or property which is intended as the security for the proposed mortgage and that proposed construction will not violate zoning ordinances or restrictions of record.

The undersigned agrees with the Department of Housing and Urban Development that pursuant to the requirements of the HUD Regulations, (a) neither he/she nor anyone authorized to act for him/her will decline to sell, rent, or otherwise make available any of the property or housing in the multifamily project to a prospective purchaser or tenant because of his/her race, color, religion, sex, or national origin; (b) he/she will comply with Federal, State, and local laws and ordinances prohibiting discrimination; and (c) his/her failure or refusal to comply with the requirements of either (a) or (b) shall be a proper basis for the Commissioner to reject requests for future business with which the sponsor is identified or to take any other corrective action he/she may deem necessary.

Signature (Sponsor, Authorized to sign): *[signed] Eric R. Leston, President*    Date: 1/31/01

Request for Commitment: ☐ Conditional   ☒ Firm

To: Secretary of Housing and Urban Development

Pursuant to the provisions of the Section of the National Housing Act identified in the foregoing application and HUD Regulations applicable thereto, request is hereby made for the issuance of a commitment to insure a mortgage covering the property described above. After examination of the application and the proposed security, the undersigned considers the project to be desirable and is interested in making a loan in the principal amount of $ **7,012,500** which will bear interest at **7.50** %, will require repayment of principal over a period of **420** months according to amortization plan to be agreed upon.

Insurance of advances during construction ☐ is, ☒ is not desired.

It is understood that the financing expense, in the amount of $ **140,250** is subject to adjustment so that the total will not exceed **2** % of the amount of your commitment.

Herewith is check for $ **21,038**, which is in payment of the application fee required by HUD Regulations.

Signature (Proposed Mortgagee): *[signed] Robert H. Sr., VP*

Address of Mortgagee:
16800-0000-5
CONTINENTAL SECURITIES, LLC
~~ONE MONY PLAZA, STE. 800~~
SYRACUSE NEW YORK 13202

## Instructions

**Foreword:** HUD procedures divide the process of filing an application for project mortgage insurance into a maximum of three stages, the first being a request for Site Appraisal and Market Analysis (SAMA) letter or a feasibility analysis if a rehabilitation project. The second stage is a request through an approved mortgagee for a Conditional Commitment, and the third, a formal application through an approved mortgagee for a Firm Commitment.

A sponsor may combine two or three stages provided he/she has plans and exhibits in sufficient detail. The Firm Commitment stage is always required.

HUD Field Office personnel will provide advice and assistance to sponsors and potential sponsors at all stages in connection with the submission of applications.

A request for SAMA letter may be submitted directly to the HUD Field Office by letter or in person. At the SAMA stage, the form HUD-92013-NH-ICF is completed as follows:

Page 1—Introduction, Sections A, B and C
Page 2—Section G, Line 38
Page 3—Section I, to the extent known; and Section J.

A request for feasibility analysis (rehabilitation) or Conditional Commitment or Firm Commitment must be submitted with this form completed in its entirety.

The exhibits that must be submitted for each stage of processing are listed at the end of these instructions. The exhibits to be submitted for feasibility analysis (rehabilitation) are those required for SAMA plus items numbered 10 and 11. If a stage of processing is omitted, the exhibits for that stage are submitted with those required for the subsequent stage or stages. Information for all stages must be submitted in triplicate. No application will be considered unless it is complete and is accompanied by the requested exhibits (24 C.F.R. 207.1).

**Section A**—Self-explanatory.

**Section B**—The letters NH refer to Nursing Homes, the letters ICF refer to Intermediate Care Facilities, and the letters BC refer to Board and Care Homes.

**Section B**
Line 21—Insert any cost paid or contracted, in addition to the stipulated purchase price. If the site will require demolition expense, or other preparatory expense, this should be indicated and explained on an attached sheet. If the proposed site is leased, indicate the annual dollar amount of the ground rental. All other items in this section are self-explanatory.

**Section C**

Line 27—Insert the estimated rates to be charged on a monthly basis per bed for the accommodation and service rendered.

Line 28—Income for special services and facilities provided occupants at additional charge above base rates when the cost of such service is included in the operating expense estimate. Commercial income, if any, should be recorded here.

**Section D**

Items 32 through 37—Furnish the total number of employees and the monthly rates for each of the six categories.

Line 38—Show the total dollar annual payroll.

**Section E**—The estimate of project expenses shall be based on actual operating experience with comparable projects.

Line 45—Total annual tax to cover all items in Tax Section should be shown on this line.

Line 47—Sum of the total annual operating expense (Line 39 + Line 45 + Line 46).

**Section F**

Line 2—Occupancy percentage is estimated from market experience if available; otherwise the sponsor's best estimate.

Line 6—Represents the cash return to owner of the real estate as determined from available realty and nonrealty data.

HUD 0034

# BRYLIN HOSPITALS MORTGAGE CREDIT ANALYSIS

### Identification of Principals

The real estate owner for Brylin is Linreal Corporation. It is a single asset corporation owning both parcels that will comprise the mortgaged premises (Delaware Avenue in Buffalo and Genesee Street in Alden). The operator is Brylin Hospitals, Inc. There is an operating lease between Linreal and Brylin.

The sole shareholder of both entities is Eric Pleskow.

### Credit Investigation

The following documents were obtained in determining the credit worthiness of the borrower:

1. Credit reports for Brylin, Linreal and Eric Pleskow

2. Form 92013 Supplement for Brylin, Linreal and Eric Pleskow.

3. Form 92004-F, Verifications of Deposit for Brylin, Linreal and Eric Pleskow.

We reviewed the credit reports for Eric Pleskow, Linreal and Brylin. The credit report of Eric Pleskow is unremarkable. It shows payments to all listed creditors as current, on time, with no negative items listed. It appears that Mr. Pleskow is a timely payor of his personal obligations. The credit report for Linreal is very limited, showing only UCC information. This would be expected, as it is merely a real estate holding entity.

The credit report for Brylin Hospitals was also reviewed. The contents of this credit report are consistent with the current impaired operations of the facility as described in the appraisal. The credit report indicates payments slower that 70% of related firms and that payments are increasingly late. This situation is as described in our interviews with the sponsors. They have indicated that this proposed refinancing will alleviate virtually all of their cash flow problems and will enable them to become current payors of their obligations once again

There are two unsatisfied judgements appearing on the credit report. The borrower has attached an explanation for each. We will require that these judgements be removed from record as a condition of the Firm Commitment.

EXHIBIT SJ 8

HUD 0035

Mortgage Credit Analysis<br>Page 2

None of the principals indicate delinquent federal debt on Form 92013-Supplement.

It was not considered necessary to directly contact trade references on the 92013 Supplements, other than reviewing 92004-Fs from bank references. Based on a review of credit reports, interviews with the sponsor and a review of the financial statements (discussed below), it is obvious that considering the current debt structure of the facility, the facility is having trouble meeting its obligation on a timely basis. Directly contacting creditors would yield little additional information.

## Financial Statements

The audited financial statements of Brylin were reviewed. Audits for the years 1995, 1996 and 1997 are unremarkable, showing consistent profitable operations and a good financial position. The 1998 financial statement, however, contains a going concern qualification. The notes to the financial statements (Note 6 and 7) discuss the arrangement with the prospective purchaser that was brought in and assumed operations during the time of determination of the sale of the business (this entire arrangement is described in more detail in the Appraisal). In 1999, audited financial statements also discussed this situation in Notes 6 and 10. By reading these notes it is obvious that operations were severely impacted by the arrangement with BHMA, to the point where the future of Brylin was in question. Attached to the 1999 statements is a summary by Brylin showing the fees associated with the BHMA acquisition attempt. These amount to nearly $700,000.

The sponsor has provided a June 2000 income statement and balance sheet, along with a comparison of the operating results for 1998, 1999 and 2000 year to date through June. This sponsor has not been able to produce 2000 income statements more current than June 2000.

Our review of the comparisons of 1998, 1999 and 2000 year to date does show a significant improvement. If this trend can continue and as the operations can stabilize as described in the Appraisal, this along with the restructuring of the balance sheet debt that will be accomplished with this refinancing should put the facility on a stable footing.

Mortgage Credit Analysis
Page 3

### Determination of Mortgage Amount, Commencement of Amortization and Cash Requirement, Operating Deficit

Under Tab #5 is Form 92264A with attachment. The attachment is the format to compute fees in a refinancing transaction. Additionally, at the bottom of this attachment is a detail of the Organization costs and existing indebtedness. The Organization costs amounts were determined by an interview with the sponsor. The existing debt items are contained in the borrower's certification with Tab #44.

The mortgage amount is controlled by criterion 1 and 3. The amount is $7,012,500. The cash requirement based on Section II, Part B of Form 92264A is $1,157. The sponsor has prepaid the exam fee ($21,038) and $3,102 of items included in Organization Expense. Therefore they meet the cash requirement.

Amortization should commence on the first day of the second month following the date of endorsement of the mortgage.

The term of the mortgage used in criterion number 5 on Form 92264A was thirty-five years. This is within 75% of the remaining lease for life included in the Appraisal.

No secondary financing is proposed, so a calculation of a lot of the secondary financing was not needed.

There are no grants/loans involved, so the provisions of paragraph 8, 10, 11 of the MAP Guide do not apply.

No operating deficit (OD) is required. The calculation of the OD was modified slightly from the form attachment to 92264-A. Because of the numerous admissions and relatively short length of stay, a "rent roll" at a particular date is not meaningful. We compared 92264 expenses and debt service to 2000 net revenues to determine the need for an OD.

### Lender's Review and Recommendation (MAP Guide Chapter 8 Paragraph 8.16)

1. The name of the Mortgagor Entity is Linreal Corporation.

2. The Mortgagor Entity is 100% owned by Eric Pleskow, who also is the 100% owner of the operating company, Brylin Hospitals, Inc.

3. Not Applicable.

HUD 0037

Mortgage Credit Analysis
Page 4

4. The mortgage amount is $7,012,500. This was determined by criterion 1 and 3 of Form 92264A.

5. The cash requirement for closing is $1,157.

6. The source and funds to meet the cash requirement include the prepaid exam fee, and prepaid organizational expense items.

7. Mr. Pleskow has significant experience with the industry and the project. It is a business that has been in existence for over fifty years. The Pleskow family has been involved with the facility since its founding.

8. A credit and financial review of the borrower and principals is above. While there are negative aspects involved, the refinancing of this project using an insured mortgage will enable the facility to once again be on a solid financial footing and enjoy continued profitable operations.

9. Not Applicable.

10. We recommend acceptance subject to the conditions below.

11. The mortgage credit conditions are as follows:

   a. As part of the mortgagor certification of actual costs, appropriate documentation of the existing debt labeled "Consent Judgements and Lienable A/P" must be provided. Items that may be disallowed during this review that do not meet the requirements of the MAP Guide Chapter 8, paragraph 8.9E may result in a mortgage reduction.

   b. Condition 8 – all recorded judgements are either Linreal Corporation or Brylin Hospitals, Inc. to be removed from record prior to endorsement.

12. The completed Form HUD 92264A is included in Tab #5.

Continental Securities, LLC

_____ /s/ VP        Date: 2-15-01

RPC/cc

**HUD 0038**

| | | |
|---|---|---|
| UPPLEMENT TO PROJECT ANALYSIS | U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT OFFICE OF HOUSING | |
| ECTION/TITLE: 232/223(f) | | PROCESSING STAGE:   Firm |

UBLIC REPORTING BURDEN FOR THIS PROJECT ANALYSIS IS ESTIMATED TO AVERAGE 16 HOURS PER RESPONSE, INCLUDING THE TIME FOR REVIEWING ISTRUCTIONS, SEARCHING EXISTING DATA SOURCES, GATHERING AND MAINTAINING THE DATA NEEDED, AND COMPLETING AND REVIEWING THE OLLECTION OF INFORMATION. SEND COMMENTS REGARDING THIS BURDEN ESTIMATE OR ANY OTHER ASPECT OF THIS COLLECTION OF INFORMATION, ICLUDING SUGGESTIONS FOR REDUCING THIS BURDEN, TO THE REPORTS MANAGEMENT OFFICER, OFFICE OF INFORMATION POLICIES AND YSTEMS, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, WASHINGTON, D.C. 20410-3600 AND TO THE OFFICE OF MANAGEMENT AND TO THE FFICE OF MANAGEMENT AND BUDGET, PAPERWORK REDUCTION PROJECT (2502-0331), WASHINGTON, D.C. 20503. O NOT SEND THIS COMPLETED FORM TO EITHER OF THESE ADDRESSES.

AME OF MORTGAGOR:   LINREAL CORPORATION          PROJECT NUMBER:
ROJECT NAME:   BRYLIN HOSPITALS
OCATION:   1263 DELAWARE AVE, BUFFALO, NY & 11438 GENESEE STREET, ALDEN

YPE OF BORROWER:
☑ Private   ☑ Profit   ☐ Public   ☐ Non-Profit   ☐ Instrumentality, etc.
☐ Management Group   ☐ Sales Coop.   ☐ Investor-Sponsor   ☐ Builder/Seller   ☐ Limited Distribution

YPE OF PROJECT:
☐ RENTAL HOUSING            ☑ SPECIALIZED USE FACILITY       ☐ -NEW CONSTRUCTION       ☐ NON-ELEVATOR
☐ -COOPERATIVE              ☐ -INTERMEDIATE CARE FACILITY     ☐ -REHABILITATION          ☐ ELEVATOR
☐ -CONDOMINIUM              ☐ -HOUSING FOR THE ELDERLY        ☐ -REDEVELOPMENT           ☑ EXISTING
☐ -SINGLE RM OCCUPANCY      ☐ -MOBILE HOME COURT              ☐ -SUPPLEMENT LOAN             REFINANCE
☐ -BOARD AND CARE           ☐ -CAPITAL ADVANCE 202/811        ☐ -GROUP HOME

DETERMINATION OF MAXIMUM INSURABLE MORTGAGE

| CRITERIA | (COL. 1) | (COL. 2) $ | (COL. 3) |
|---|---|---|---|
| . MORTGAGE OR LOAN AMOUNT REQUESTED IN APPLICATION | | | $ 7,012,500 |
| . RESERVED | | | |
| . AMOUNT BASED ON VALUE OR REPLACEMENT: | | | |
|     VALUE (REPLACEMENT COST) FEE SIMPLE | $ 8,250,000  x 85% | $ 7,012,500 | |
|  )     VALUE OF LEASED FEE | $ - | | |
|  (2)    GRANT/LOAN FUNDS ATTRIBUTABLE TO R.C. | $ - | | |
|  (3)    EXCESS UNUSUAL LAND IMPROVEMENT | $ - | | |
|  (4)    COST CONTAINMENT MORTGAGE DEDUCTION | $ - | | |
|  (5)    TOTAL LINES B1 TO B4 | $ -  x | $ - | |
| C UNPAID BALANCE OF SPECIAL ASSESSMENT | | $ - | |
| D TOTAL LINE 3B PLUS LINE 3C | | $ - | $ |
| E LINE A MINUS LINE D | | | 7,012,500 |
| . AMOUNT BASED ON LIMITATION PER FAMILY UNIT: | | | |
|  A NUMBER OF NO BEDROOM UNITS | x $ - | $ - | |
|     NUMBER OF ONE BEDROOM UNITS | x $ - | $ - | |
|     NUMBER OF TWO BEDROOM UNITS | x $ - | $ - | |
|     NUMBER OF THREE BEDROOM UNITS | x $ - | $ - | |
|     NUMBER OF FOUR OR MORE BEDROOM UNITS | x $ - | $ - | |
|  B COST NOT ATTRIBUTABLE TO DWELLING UNITS | $ -  x  100% | $ - | |
|  C SITE NOT ATTRIBUTABLE TO DWELLING USE | $ -  x | | |
|  D TOTAL LINES A THROUGH LINE C | | $ - | |
|  E TOTAL NUMBER OF SPACES | 0 x $ - | $ - | |
|  F SUM: VALUE OF LEASED FEE AND UNPAID BALANCE OF SPECIAL ASSESSMENT(S) | | $ - | $ |
|  G LINE D OR LINE E, WHICHEVER IS APPLICABLE, MINUS LINE F | | | - |
| . AMOUNT BASED ON DEBT SERVICE RATIO: | | | |
|  A MORTGAGE INTEREST RATE | | 7.500% | |
|  B MORTGAGE INSURANCE PREMIUM RATE | | 0.50% | |
|  C INITIAL CURTAIL RATE - ENTER LOAN Y     35 | | 0.590911% | |
|  D SUM OF ABOVE RATES | | 8.590911% | |
|  E NET INCOME   $  -   | $ 949,523  x  85% | $ 807,095 | |
|  F ANNUAL GROUND RENT    +ANNUAL SPEC. ASS'MT. | $ - | $ - | |
|  G LINE 5E MINUS LINE 5F | | $ 807,095 | $ |
|  H LINE 5G DIVIDED BY LINE 5D | | | 9,394,700 |
|  I. TAX ABATEMENT (IF ANY) | | | $ - |
|  J. LINE H PLUS LINE I | | | 9,394,700 |

PAGE 1 OF 3                                     FORM HUD-92264-A (2/94)



EXHIBIT SJ 9

HUD 0039

| NAME OF MORTGAGOR: | LINREAL CORPORATION | PROJECT NUMBER: | | |
|---|---|---|---|---|
| PROJECT NAME: | BRYLIN HOSPITALS | | | |
| LOCATION: | 1263 DELAWARE A | 0 | 0 | |

DETERMINATION OF MAXIMUM INSURABLE MORTGAGE (CONTINUED)

| CRITERIA | (COL. 1) | (COL. 2) | (COL. 3) |
|---|---|---|---|
| AMOUNT BASED ON ESTIMATED COST OF REHABILITATION PLUS: | | | |
| (I) 'AS IS' VALUE, OR (II) ACQUISITION COST OR | | | |
| (III) EXISTING MORTGAGE INDEBTEDNESS AGAINST THE | | | |
| PROPERTY BEFORE REHABILITATION: | | | |
| A  TOTAL ESTIMATED DEVELOPMENT COST | $ - | | |
| B  ESTIMATED COST OF OFF-SITE CONSTRUCTION | $ - | | |
| C  SUM OF LINE 6A AND LINE 6B | | $ - | |
| D  GRANT/LOAN FUNDS ATTRIBUTABLE TO R.C. ITEMS | $ - | | |
| E  LINE 6C MINUS LINE 6D | | $ - | |
| F  AS IS' VALUE OF PROP. BEFORE REHAB.  $ 0  x  100.0000% | $ - | | |
| G  EXISTING MORTGAGE INDEBTEDNESS (PROP. OWNER) OR PURCHASE PRICE OF PROPERTY (TO BE ACQUIRED) | $ - | | |
| H  LINE 6E PLUS LINE 6F    - | | $ - | $ - |
| I.  LINE 6H  $         X        100.00% | | | |
| AMOUNT BASED ON BORROWER'S TOTAL COST OF ACQUISITION SECTION 223(f) | | | |
| A  PURCHASE PRICE OF PROJECT | $ - | | |
| B  REPAIRS AND IMPROVEMENTS, IF ANY | $ - | | |
| C  OTHER FEES | $ - | | |
| D  LOAN CLOSING CHARGES | $ - | | |
| E  SUM OF LINES 7A THROUGH LINE 7D | | $ - | |
| F  ENTER THE SUM OF ANY GRANT/LOAN AND RESERVE FOR REPLACEMENT AND MAJOR MOVABLE EQUIPMENT TO BE PURCHASED AS A ASSET OF THE PROJECT | $ - | | |
| G  LINE 7E MINUS LINE    - | | $ - | $ - |
| H  LINE 7G  $         X        85.00% | | | $ - |
| AMOUNT BASED ON SUM OF UNIT MORTGAGE AMOUNTS | | | $ - |
| AMOUNT BASED ON ESTIMATED COST TO BORROWER: | | | |
| A  TOTAL ESTIMATED COST (EXCL. OF SITE & REQUIRED CONST. OFF THE SITE) | $ - | | |
| B  PURCHASE PRICE OF SITE | $ - | | |
| C  TOTAL COST OF CLEARING SITE, IF ANY | $ - | | |
| D  EXPENSE OF RELOCATING OCCUPANTS, IF ANY | $ - | | |
| E  COST OF OFF-SITE CONSTRUCTION, IF ANY | $ - | | |
| F  SUM OF LINES 9A THROUGH 9E | | $ - | $ - |
| G  LINE 9F  $         X        100.0000% | | | - |
| AMOUNT BASED ON EXISTING INDEBTEDNESS, REPAIRS & LOAN CLOSING CHARGES SECTION 223(f) | | | |
| A  TOTAL EXISTING INDEBTEDNESS | $ 5,746,546 | | |
| B  REQUIRED REPAIRS | $ 46,232 | | |
| C  OTHER FEES | $ 773 | | |
| D  LOAN CLOSING CHARGES | $ 1,220,164 | | |
| E  SUM OF LINES 10A THROUGH LINE 10D | | $ 7,013,715 | |
| F  ENTER THE SUM OF ANY GRANT/LOAN & RESERVE FOR REPLACEMENT AND MAJOR MOVABLE EQUIPMENT ON DEPOSIT | $ - | | |
| G  LINE 10E MINUS LINE 10F | | $ 7,013,715 | |
| H  70% OF VALUE      $ 0 X 70% | | $ - | |
| I.  GREATER OF LINE 10G OR LINE 10H | | | 7,013,700 |
| ATTACH FORMAT FOR COMPUTING LOAN CLOSING CHARGES. | | | $ |
| MAXIMUM INSURABLE MORTGAGE (LOWEST OF THE FORGOING CRITERIA) | | | 7,012,500 |

HUD 0040

| | | |
|---|---|---|
| AME OF MORTGAGOR: | LINREAL CORPORATI | |
| ROJECT NAME: | BRYLIN HOSPITALS | |
| OCATION: | 1263 DELAWARE A | 0   0 |

PROJECT NUMBER:

TAL REQUIREMENTS FOR SETTLEMENT

PART B

| | | | | |
|---|---|---|---|---|
| S NOT TO BE PAID IN CASH: | | 1. a. Existing Debt & Loan Closing Cos | | 6,967,425 |
| A BSPRA/SPRA | $ | b. Adjustment for Contracted Amounts in | | |
| BUILDERS PROFIT | $ — | Excess of form HUD 92264 Estimates | | |
| OTHER: | $ — | | | |
| TOTAL (ENTER IN PART B ON LINE 5) | $ — | (1) CONSTRUCTION CONTRAC | $ — | |
| COMMITMENT, MKTG., GNMA | | (2) ARCHITECT'S CONTRACT | $ — | |
| A FEES: | $ — | (3) OTHER | $ | $ |
| OTHER: PERMANENT LOAN | $ — | c. TOTAL OF LINES a.& b | | 6,967,425 |
| B DISCOUNTS: CONSTRUCTION LOAN | $ — | 2. REQUIRED REPAIRS | $ | 46,232 |
| DEBT SVC. RESERVE (BOARD & CARE | $ — | | $ | |
| C ESCROWS: | $ — | 3. SUBTOTAL (LINES 1c +2) | | 7,013,657 |
| OTHER: | $ — | 4. A. MORTGAGE AMOUNT   $ 7,012,500 | | |
| TOTAL (ENTER IN PART B ON LINE 9) | $ — | B. GRANT/LOAN   $ — | | |
| WORKING CAPITAL: | | 5. FEES NOT TO BE PAID IN CAS  $ | $ | |
| A WORKING CAPITAL | $ | 6. SUBTOTAL (LINES 4A + 4B + 5) | $ | 7,012,500 |
| B MINIMUM CAPITAL INVESTMENT (SEC. 202/811) | $ — | 7. CASH INVESTMENT REQUIRED (LINE 3 MIN | $ | 1,157 |
| C NON-REALTY ITEMS NOT INCLUDED IN MORTGAGE | $ — | 8. INITIAL OPERATING DEFICIT * | | 0 |
| TOTAL (ENTER IN PART B ON LINE 10) | $ — | 9. COMMITMENT, MARKETING FEES DISCOUNT AND ESCROWS | $   $ — | |
| | | 10. WORKING CAPITAL | | |
| | | 11. OFF-SITE CONSTRUCTION & DEMOLITION C ($_____ + $_____) | $ | 0 |
| | | 12. TOTAL ESTIMATED CASH REQUIREMENT (SUM OF LINES 7 + 8 + 9 + 10 + 11) | $ | 1,157 |
| | | FRONT MONEY ESCROW, IF ANY (SUBTRACT LINE 6 FROM LINE 1) | $ | |

NOTE: FOR SECTION 223(f) CASES, ATTACH THE FORMAT FOR COMPUTING THE OPERATING DEFICIT.

SOURCE OF FUNDS TO MEET CASH REQUIREMENT / MORTGAGE CREDIT NOTES

| URCE: | AMOUNT | | MORTGAGE CREDIT PROCESSING NOTES: |
|---|---|---|---|
| | | | 1. |
| ONSOR PLUS PREPAID TRANSACTION COSTS | $ | 1,157 | 2. |
| | | — | 3. |
| | $ | | 4. |
| | | | 5. |
| | $ | | 6. |
| | | | 7. |
| | $ | | 8. |
| | | | 9. |
| | $ | | 10. |
| TAL AVAILABLE CASH FOR PROJECT | $ | 1,157 | |

RECOMMENDATION, REQUIREMENTS AND REMARKS

LOAN CLOSING CHARGES BASED ON MORTGAGE AMOUNT:

| | |
|---|---|
| FINANCING FEE | 140,250 |
| MIP | 70,125 |
| EXAM FEE | 21,038 |
| PLACEMENT FEE | 105,188 |
| LEGAL & ORG | 58,350 |
| IDRR | 775,000 |
| TITLE & RECORDING | 50,156 |
| TOTAL | 1,220,106 |

Mortgage Recommendation

X     RECOMMEND APPROVAL; SUBJECT TO CONDITIONS STATED IN ADDENDUM, IF ANY.

_____ RECOMMEND REJECTION FOR REASONS STATED IN ADDENDUM.

**HUD 0041**

NATURE OF THE MORTGAGE CREDIT EXAMINER:

*[signature]*     DATE: 2-15-01

TO COMPUTE FEES A REFINANCING TRANSACTION

Step 1.   Add the known dollar amounts for:

|   |   |   |
|---|---|---|
| A. | Exisiting Indebtedness | 5,746,546 |
| B. | Repairs | 46,232 |
| C. | Initial Deposit to Reserve for Replacement | 775,000 |
| D. | Legal | 30,000 |
| E. | Organizational | 28,350 |
| F. | Title and Recording | 50,156 |
| G. | Other Fees (Arch, Inspection, Engineering) (HUD) | 773 |
| H. | GNMA Fee (MBS) | 0 |
|   | Total | 6,677,057 |

Step 2.   Deduct the amounts of any Replacement Reserve Escrow
          currently on deposit with the mortgagee                                      0
                                                        Result                 6,677,057

Step 3.   Add the known percentages for:

|   |   |   |
|---|---|---|
| A. | Financing Fee (Initial Service Charge) | 2.0% |
| B. | MIP | 1.0% |
| C. | Exam Fee | 0.3% |
| D. | FNMA Fee | 1.5% |
| E. | Discounts, if Allowable | 0.0% |
|   | Total | 4.8% |

Step 4.   Subtract the sum from Step 3 from 100%                                  95.2%

Step 5.   Divide the sum from Step 2 by the result from Step 4. The
          quotient rounded down to the nearest hundred becomes the
          mortgage amount.                                                     7,013,700

Step 6.   Compute and total the actual fees based on the mortgage
          amount determined in Step 5.

|   |   |   |
|---|---|---|
| A. | Financing Fee | 140,274 |
| B. | MIP | 70,137 |
| C. | Exam Fee | 21,041 |
| D. | FNMA FEE | 105,206 |
| E. | Discounts | 0 |
|   | Total | 336,658 |

Step 7.   Add to the sum from Step 6, the following:

|   |   |   |   |
|---|---|---|---|
| A. | Legal & Organizational | 30,000+28,350 | 58,350 |
| B. | Initial Deposit to Reserve for Replacement |  | 775,000 |
| C. | Title and Recording |  | 50,156 |
| D. | GNMA Fee |  | 0 |
|   |  | Total | 1,220,164 |

| Organization: |  | Debt: |  |
|---|---|---|---|
| Frandina | 6,750 | Key | 3,750,000 |
| GAR | 15,000 | Heller | 1,350,000 |
| Phase I | 1,500 | Taxes | 460,936 |
| LBP | 600 | Charter | 61,779 |
| Survey | 4,500 | Misc | 123,831 |
|  | 28,350 |  | 5,746,546 |

HUD 0042



# BRYLIN
HOSPITALS

January 31, 2001

Robert Corp
Continental Securities, LLC
One Mony Plaza, Suite 800
Syracuse, NY 13202

Re: BryLin/Linreal Existing Debt and Leases

Dear Bob:

Per your request, below please find a list of BryLin's and Linreal's existing debt and leases:

| | | |
|---|---|---|
| Key Bank Debt includes: | Key Bank First Mortgage - | $3,778,429 |
| | Key Computer Lease - | $ 472,961 |
| | Key Computer Lease - | $ 30,955 |
| | Key HVAC Lease - | $ 187,317 |
| | TOTAL KEY BANK INDEBTEDNESS - | $4,469,662 |

BryLin has successfully negotiated a payoff amount for all of it's and Linreal's indebtedness to KeyBank in the amount of $3,750,000.00.

Additional indebtedness includes:

| | |
|---|---|
| Delinquent Real Estate Taxes - | $ 460,936.00 |
| Consent Judgments and Lienable A/P - | $ 123,830.86 |
| Charter Phone Lease - | $ 61,779.03 |
| Heller Financial - | $1,350,000.00 |

Should you require any additional information, please so advise.

Sincerely,

Eric D. Pleskow
President and CEO

**EXHIBIT SJ 10**

HUD 0043

CORPORATE OFFICES

1263 DELAWARE AVENUE • BUFFALO, NY 14209 • 716/886-8200 • FAX 716/884-1986

HUD 01410