HELLER LETTERHEAD

Brylin Hospitals
1263 Delaware Avenue
Buffalo, NY 14209

Re:   Accounts Receivable Financing Facility

Gentlemen:

In connection with the accounts receivable financing facility between Brylin Hospitals and Heller Financial, please be advised that the outstanding/principal balance on this obligation at this date is $ _____.

As you know, this financing agreement requires the collection of all accounts receivable payments by Heller, to be held in trust for Brylin Hospitals. The current balance held is $ _____. Heller agrees, for payoff purposes, to offset these amounts. Therefore, the net payoff amount to satisfy this obligation is $ _____.

Payoff funds should be wired to:

(Wire Instructions)

Cordially,

D03923
GE-0774

EXHIBIT
SJ 15



CONTINENTAL SECURITIES, LLC

May 21, 2001

Ms. Diane Rosinski
MAP Coordinator
U.S. Dept. of Housing & Urban Development
Buffalo Office
465 Main Street
Buffalo, New York 14203-1780

**Re: Brylin Hospitals**
   **Project No. 014-22019**

Dear Diane:

I would like to take this opportunity to bring you up to date on the status of several items needed to get to closing.

**Repairs**
At this time, all of the critical repairs at the Buffalo location with the exception of F3b, replace torn carpet, have been completed and inspected. Additionally, two non-critical repairs at the Buffalo location have been completed and inspected. The remaining critical repair at Buffalo and all of the critical repairs at Alden are scheduled for completion this Thursday, May 24, 2001. I will be inspecting those repairs, as well as any other non-critical repairs completed on that date. I will have to your office on Friday morning, May 25, 2001, a Certification of Inspection of all repairs as well as photographs of the completed repairs. At that point, we can adjust the repair escrow to reflect any of the non-critical repairs that have been completed.

**Mortgagor's Certificate of Actual Cost**
Enclosed is Form 2205-A with all documentation except for the Heller Financial existing indebtedness. I expect to have that letter in the next day or two and when I do, I will have the Cost Certification completed and sent to you along with that letter. In the meantime, you can begin reviewing the other documentation enclosed with the certification.

**EXHIBIT**
**SJ 16**

HUD 0053

ONE MONY PLAZA, SUITE 800, SYRACUSE, NY 13202 (315) 424-1994 • FAX (315) 424-1

May 21, 2001
Brylin Hospitals
Page 2

**Special Conditions**
Special Conditions 2-6 have been addressed by submission of the draft closing documents as well as my discussion of the repairs above.

Regarding Special Condition 1, it is known that the Operating Entity, Brylin Hospitals, has applied to the City of Buffalo and Erie County for working capital/job preservation financing in the approximate amount of $600,000. Both the Mortgagor Entity and the Operating Entity understand that they will be bound by the terms of the Regulatory Agreements executed at closing with respect to other financing. They are fully aware that after endorsement of the insured loan, that any such financing proposals are subject to review and approval by HUD's Asset Management staff. Also, please be advised that the potential city/county financing contemplated is <u>not</u> intended to be used to satisfy Special Condition number 7 regarding judgements and liens.

Regarding Special Condition number 7, any items recorded on the real estate will obviously be satisfied because we will be bringing a clean title policy to the closing table. Any judgements that have been recorded that are not liens on the real estate, we will have satisfactions in hand held by the Title Company pending closing.

We understand that this project has been difficult and confusing and we certainly appreciate the help that you have given in getting us to this point. If you have any questions or comments, please call. I look forward to seeing you at the closing.

Cordially,

Robert P. Corp
Vice President

RPC/cc
Encls.

HUD 0054

# BRYLIN HOSPITALS

014-22019

Line 1  -  EXISTING INDEBTNESS

| | |
|---|---|
| Key Bank | $3,750,000.00 |
| Heller Financial | |
| Real estate Taxes | 567,172.01 |
| Other, Miscellaneous | 136,666.49 |
| Charter | <u>53,544.32</u> |

May 21, 2001

**HUD 0055**

```
***********************
***  TX REPORT    ***
***********************

TRANSMISSION OK

TX/RX NO              1979
CONNECTION TEL        913154241908
SUBADDRESS
CONNECTION ID         CONTINENTAL SEC.
ST. TIME              05/22 17:04
USAGE T               02'30
PGS. SENT             5
RESULT                OK
```

# Heller Financial, Inc.

2 WISCONSIN CIRCLE, 4TH FLOOR
CHEVY CHASE, MD 20815
TEL: 301/961-1640  FAX: 301/664-9860
WWW.HELLERFIN.COM

*Formerly HealthCare Financial Partners*

## FACSIMILE TRANSMITTAL SHEET

TO: Bob Corp / Karen Manny
FROM: Dwight Meier
COMPANY:
DATE: 5/22/01
FAX NUMBER: 315-424-1908 / 716-886-1986
TOTAL NO. OF PAGES INCLUDING COVER: 5
PHONE NUMBER:
SENDER'S DIRECT DIAL: 301-347-3101
RE: Buy-Lin
SENDER'S DIRECT FAX: 301-347-3170

GE-0093

☐ URGENT   ☒ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS: Draft payoff letter. Please ... 11. [301-664-9850?]

HUD 00177

EXHIBIT SJ 17


Formerly
HealthCare Financial Partners

**Heller Financial, Inc.**

2 WISCONSIN CIRCLE, 4TH FLOOR
CHEVY CHASE, MD 20815
TEL: 301/961-1640   FAX: 301/664-9860
WWW.HELLERFIN.COM

## FACSIMILE TRANSMITTAL SHEET

TO: Bob Corp
Karen Manny

FROM: Dwight Meier

COMPANY:

DATE: 5/22/01

FAX NUMBER: 315-424-1908
716-886-1986

TOTAL NO. OF PAGES INCLUDING COVER: 5

PHONE NUMBER:

SENDER'S DIRECT DIAL: 301-347-3101

RE: Brg-Lin

SENDER'S DIRECT FAX: 301-347-3170

☐ URGENT   ☒ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS: Draft payoff letter. Please call Mike Gardullo [301-664-9850] with any comments.

♦ WORKING CAPITAL ♦ STRUCTURED TERM LOANS ♦ REAL ESTATE MORTGAGES ♦ MEZZANINE LOANS ♦ SALE/LEASEBACKS


Heller Financial, Inc.

GE-0094

HUD 00178

May 23, 2001

VIA FACSIMILE: (716) 886-1986 Mr. Eric Pleskow

Mr. Eric Pleskow
Bry-Lin Hospitals, Inc.
Linreal Corporation
Western New York Behavioral Medicine and
 Psychotherapies, PLLC
1263 Delaware Avenue
Buffalo, New York 14209

Re:   Payoff of all Indebtedness of Bry-Lin Hospitals, Inc.; Linreal Corporation; and Western New York Behavioral Medicine and Psychotherapies, PLLC (collectively, "Seller") to Heller Healthcare Finance, Inc. ("Purchaser")

Ladies and Gentlemen:

    This letter will confirm that under that certain Receivables Purchase and Sale Agreement dated May 12, 1999 (as the agreement has been and may from time to time be amended, modified or supplemented, the "Receivables Purchase Agreement") and the Purchase Documents entered into by Purchaser with Seller (collectively, the "Purchase Agreement Documents"), the present maximum Commitment to purchase accounts receivable from the Borrower is $2.5 million, subject to a Purchase Cap of $1.350 million. As of May 23, 2001, the outstanding principal balance on this obligation is $[approximately 643,247.51]. Upon receipt by Purchaser of the "Payoff Amount," as defined below, from or on behalf of Seller, all outstanding indebtedness of Seller to Purchaser (the "Indebtedness") shall be paid in full. This payoff letter relates only to the above-referenced Purchase Agreement Documents and only to the Indebtedness of the Seller thereunder, and not to any other obligations of the Seller or any related party to Purchaser or any subsidiary or affiliate of Purchaser.

    The Payoff Amount is $[approximately 643,247.51] through and including the close of business on May 23, 2001. For any payoff after May 23, 2001, please contact Purchaser for an updated Payoff Amount. Any updated Payoff Amount shall be deemed given subject to the terms of this letter. Purchaser hereby reserves the right to adjust the Payoff Amount in the event that it discovers a mathematical, typographical, bookkeeping or clerical error in its calculation or in the event information provided by third parties is inaccurate. The Payoff Amount should be paid by Seller in accordance with the wire instructions set forth below.

    Upon Seller's acceptance of this letter or any earlier receipt by Purchaser of the Payoff Amount, all of Purchaser's commitments, if any, to purchase further accounts receivable from Seller

GE-0095

HUD 00179

under the Purchase Agreement Documents shall terminate.

Upon Purchaser's receipt of the Payoff Amount and Seller's countersignature to this letter, the obligations of Seller under the Purchase Documents shall terminate (other than any provision of any of the Purchase Agreement Documents which survives repayment of the Indebtedness and termination of the Loan Documents) and all liens and security interests securing the Indebtedness shall be deemed to be fully released. Upon and subject to Purchaser's indefeasible receipt of the Payoff Amount, the Obligations of Guarantors also shall terminate. If Purchaser is ever required by court order to disgorge some or all of the Payoff Amount (or if Purchaser in its sole discretion settles a claim seeking disgorgement of some or all of the Payoff Amount from Purchaser), then Seller's and Guarantor's Obligations to Purchaser will be revived and renewed to the extent of any such disgorgement of the Payoff Amount.

Following Purchaser's receipt of the Payoff Amount and Seller's countersignature to this letter:

(a) Purchaser will cause to be delivered to Seller, within three (3) business days of Purchaser's receipt of the Payoff Amount, originally executed termination statements pertaining to UCCs filed by Purchaser, and Seller is authorized to file such UCC termination statements and releases with the appropriate filing offices;

(b) Purchaser agrees to forward to Seller all items or the proceeds of all checks, drafts, or other instruments received by Lender after Lender's receipt of the Payoff Amount. In consideration of this undertaking and the release of Purchaser's liens and security interests, Seller hereby indemnifies Purchaser against and agrees to promptly pay Purchaser for any amounts which may be owed to Purchaser because a check, draft, or other instrument deposited before Purchaser's receipt of the Payoff Amount is returned for any reason; and

(c) Purchaser agrees to release its interest, if any, in the Lockbox through which Seller made collections in respect of the Indebtedness.

Payment of the Payoff Amount should be made by wire transfer in accordance with the following instructions:

Bank One, N.A., Chicago IL
ABA 071000013
For account of Heller Healthcare Finance, Inc.
Account: 59-29792
RE: Bry-Lin Hospitals, Inc.

Purchaser's receipt of the Payoff Amount does not affect any rights of Purchaser, or obligations of the Seller or any other obligor, under the Loan Documents which survive repayment of the Indebtedness and termination of the Loan Documents.

This letter shall become binding upon Purchaser only if Purchaser receives Seller's written acceptance of its terms on or before 5:00pm (Eastern time) on May 23, 2001. If you have any

questions concerning this payoff, please call Michael G. Gardullo at (301)-664-9850.

Very truly yours,

**HELLER HEALTHCARE FINANCE, INC.**

By:_____
Name:  Michael G. Gardullo
Title:    Vice President

GE-0097

HUD 00181

HUD 00182

**ACCEPTED AND AGREED:**

**Bry-Lin Hospitals, Inc.**

By: _____

Its: _____

**Linreal Corporation**

By: _____

Its: _____

**Western New York Behavioral Medicine and Psychotherapies, PLLC; as Guarantor**

By: _____

Its: _____

**Eric Plesko, as Guarantor**

By: _____

Its: _____

GE-0098

05/30/01 12:17 FAX 3013473150            HELLER HEALTHCARE FIN                               ⌀002

May 30, 2001

<u>VIA FACSIMILE</u>: (716) 886-1986

Mr. Eric Pleskow
Bry-Lin Hospitals, Inc.
Linreal Corporation
Western New York Behavioral Medicine and
 Psychotherapies, PLLC
1263 Delaware Avenue
Buffalo, New York 14209

    Re: Payoff Letter for Receivables Purchase Transaction (the "Transaction") between **BRY-LIN HOSPITALS, INC.**, a New York corporation, and **LINREAL CORPORATION**, a New York corporation (collectively "Seller"), as seller, and **HELLER HEALTHCARE FINANCE, INC.**, a Delaware corporation f/k/a HCFP Funding, Inc. ("Purchaser"), as purchaser

Gentlemen:

    Reference is made to that certain Receivables Purchase and Sale Agreement dated May 12, 1999 (as the agreement has been and may from time to time be amended, modified or supplemented, the "Agreement"). This letter will confirm that the amount necessary to terminate the referenced Transaction (the "Termination Payment") and permit Seller to repurchase all outstanding receivables purchased by Purchaser from Seller is $604,378.51 as of May 30, 2001.

    Seller has advised Purchaser that Seller is entering into a new financing transaction and Seller desires to sell additional receivables in accordance with the Agreement to Purchaser prior to the closing of the new financing which will increase the Termination Payment under the Agreement to $1,350,000. Based upon the terms of the loan program through which the new financing is being provided, such increase in the Termination Payment will cause a corresponding increase in the amount of the new financing. Such increase in the new financing will permit Seller to fund certain closing costs for the new financing. Such increase has been acknowledged and is expected by the party providing the new financing and, based on Seller's representations to Purchaser, is consistent with the loan application made by Seller in respect of the new financing.

    Accordingly, based on the foregoing, we are advised the Seller expects to sell, and Purchaser expects to purchase, on June 1, 2001, additional receivables in the amount of $738,239.10, which (together with the "Purchase Discounts" applicable thereto) will


EXHIBIT SJ 18

HUD 00185

GE-0002

05/30/01  12:18 FAX 3013473150          HELLER HEALTHCARE FIN                                    ☒003

Mr. Eric Pleskow
Bry-Lin Hospitals, Inc.
Linreal Corporation
Western New York Behavioral Medicine and
 Psychotherapies, PLLC
May 30, 2001
Page 2

increase the Termination Payment to $1,350,000 for any termination made as of June 1, 2001. The terms of such purchase will be more fully set forth in a letter agreement between Seller and Purchaser, but the terms will, inter alia, require Seller to repurchase such receivables, and all other receivables purchased by Purchaser under the Agreement, no later than June 4, 2001 for an amount equal to the Termination Payment, and Seller, by its acceptance of this letter, agrees to such repurchase. Nothing herein shall constitute an obligation of Purchaser to make the purchase necessary to increase the Termination Payment as described above.

For any termination after June 1, 2001, please contact Purchaser for an updated Termination Payment. The Termination Payment should be paid by Seller in accordance with the wire instructions set forth below.

Upon receipt by Purchaser of the Termination Payment, all of Purchaser's commitments to make further purchases of receivables from Seller shall terminate. All assignments of receivables from Purchaser to Seller shall be made "as-is" "where-is" and without recourse or warranties of any kind.

Upon Purchaser's receipt of the Termination Payment and Seller's countersignature to this letter, the obligations of Seller under the Agreement shall terminate (other than any provision of the Agreement or related documents which survives termination of the Agreement) and all liens and security interests securing the Agreement shall be deemed to be fully released.

Following Purchaser's receipt of the Termination Payment and Seller's countersignature to this letter:

(a) Purchaser will cause to be delivered to Seller, within fifteen (15) business days of Purchaser's receipt of the Termination Payment, originally executed termination statements pertaining to UCCs filed by Purchaser, and Seller shall be authorized to file such UCC termination statements and releases with the appropriate filing offices;

(b) Purchaser agrees to forward to Seller all items or the proceeds of all checks, drafts, or other instruments received by Purchaser after Purchaser's receipt of the Termination Payment. In consideration of this undertaking and the release of Purchaser's liens and security interests, Seller hereby indemnifies Purchaser against and agrees to promptly pay Purchaser for any amounts which may be owed to Purchaser because a check, draft, or other instrument deposited before Purchaser's receipt of the Termination Payment is returned for any reason; and

HUD 00186

GE-0003

Sent By: BRYLIN EXECUTIVE OFFICE;          716 886 1986;          May-30-01 13:36;          Page 3

Mr. Eric Pleskow
Bry-Lin Hospitals, Inc.
Linreal Corporation
Western New York Behavioral Medicine and
 Psychotherapies, PLLC
May 30, 2001
Page 3

     (c) If the lockbox through which Purchaser made collections in respect of the Agreement is owned by Seller, Purchaser agrees to release its interests in such lockbox.

    Payment of the Termination Payment should be made by wire transfer in accordance with the following instructions:

> Bank One, N.A., Chicago IL
> ABA 071000013
> For account of Heller Healthcare Finance, Inc.
> Account: 59-29792
> RE: Brylin

    Purchaser's receipt of the Termination Payment does not affect any rights of Purchaser, or obligations of the Seller or any other obligor, under the Agreement or related documents which survive termination of the Agreement.

    This letter shall become binding upon Purchaser only if Purchaser receives Seller's written acceptance of its terms on or before 5:00pm (Eastern time) on May 30, 2001. If you have any questions concerning this payoff, please call the undersigned at (301) 664-9808.

                                           Very truly yours,

                                           HELLER HEALTHCARE
                                           FINANCE, INC.

                                           By: _____
                                           Name: Robert P. Goodridge
                                           Title: Managing Attorney

HUD 00187

GE-0004

05/30/01  12:18 FAX 3013473150        HELLER HEALTHCARE FIN                              ☒005

Mr. Eric Pleskow
Bry-Lin Hospitals, Inc.
Linreal Corporation
Western New York Behavioral Medicine and
  Psychotherapies, PLLC
May 30, 2001
Page 4

**ACCEPTED AND AGREED TO:**

|  |  |
|---|---|
| ATTEST: | SELLER: |
|  | BRY-LIN HOSPITALS, INC., a New York corporation |
| By: *Karen D. Manny* | By: *Eric D. Pleskow* |
| Name: Karen D. Manny | Name: Eric D. Pleskow |
| Title: VP - General Counsel | Title: President/CEO |
| ATTEST: | LINREAL CORPORATION, a New York corporation |
| By: *Karen D. Manny* | By: *Eric D. Pleskow* |
| Name: Karen D. Manny | Name: Eric D. Pleskow |
| Title: VP & General Counsel | Title: President/CEO |

HUD 00188

GE-0005