

## CONTINENTAL SECURITIES, LLC

### *TELECOPIER COVER LETTER*

DATE: _5/29/01_  NO. OF PAGES (INCLUDING THIS PAGE): _5_

TO: _Diane Rosinski_  FROM: _Trish Maloney_

RE: _Brylin_  FAX NO.: _____

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE CALL BACK AS SOON AS POSSIBLE (315) 424-1994**

Diane —
Here are the remaining items on the 2205-A. I believe this ties this up. Give me a call if you need anything further. Thanks for your time.
Trish

HUD 0056

EXHIBIT
SJ 20

ONE MONY PLAZA, SUITE 800, SYRACUSE, NY 13202 (315) 424-1994 • FAX (315) 424-1908
452 FIFTH AVENUE, 25TH FLOOR, NEW YORK, NY 10018 (212) 840-2060 • FAX (212) 869-6418

05/29/01   14:53   ☎315 424 1908   CONTINENTAL SEC. →→→ HUD BUFFALO   ☒003

# BRYLIN HOSPITALS

014-22019

Line 1  -  EXISTING INDEBTNESS

| | | |
|---|---|---|
| Key Bank | $3,750,000.00 | ✓ |
| Heller Financial | 1,350,000.00 | ✓ |
| Real estate Taxes | 567,172.01 | ✓ |
| Other, Miscellaneous | 138,666.49 | |
| Charter | 53,544.32 | ✓ |
| **Total** | $5,857,382.82 | |

*5,859,383.02*

May 29, 2001



**BRYLIN**
H O S P I T A L S

May 29, 2001

Mr. Robert Corp
Continental Securities, LLC
One Mony Plaza, Suite 800
Syracuse, NY 13202

Re: Heller Healthcare Finance, Inc.

Dear Bob:

In accordance with the Receivables Purchase and Sale Agreement among Heller Healthcare Finance, Inc., BryLin Hospitals, Inc. and Linreal Corporation I am advised that the indebtedness to Heller Healthcare Finance, Inc., as of June 1, 2001, will be $1,350,000.00.

The payoff amount of $1,350,000.00 should be made by wire transfer to:

> Bank One, N.A., Chicago, Illinois
> ABA 071000013
> For account of Heller Healthcare Finance, Inc.
> Account 59-29792
> Re: BryLin

Thank you for your cooperation.

Sincerely,

Eric D. Pleskow
President and CEO

**HUD 0058**

CORPORATE OFFICES

1263 DELAWARE AVENUE   •   BUFFALO, NY 14209   •   716/886 8200   •   FAX 716/886-1986

# MONROE
## TLE INSURANCE CORPORATION

**SYRACUSE OFFICE**
333 E ONONDAGA ST
SYRACUSE, NY 13202
315-472-4761

| Invoice No. | Customer No. |
|---|---|
| 30-180893 | 40690 |

| Invoice Date | Order No. |
|---|---|
| 05-21-201 | 275236 |

BYRNE, COSTELLO & PICKARD
SUITE 800
100 MADISON STREET
SYRACUSE NY   13202

BRY-LIN HOSPITALS INC
1263 DELAWARE AVE  ALDEN

ATTN:  JOHN R. BRENNAN

| Customer Reference No. | Exam | Copy | Title Ins./Abstract No. |
|---|---|---|---|
| | 224 | ERIE | 101104274 |

| Description | | Amount |
|---|---|---|
| 14BM | LOAN POLICY - REFINANCE/SUBORDINATE   7012500.00 | $14,961.00 |
| | Insured Bank:  GMAC COMMERCIAL MTG | |
| 25D16 | ENVIRONMENTAL LIEN (GOVERNMENT) | 25.00 |
| 25D13 | WAIVER OF ARBITRATION ENDORSEMENT | 25.00 |
| MISC | MISCELLANEOUS (ESCROW FEE) | 250.00 |
| RECFEE | RECORDING FEES | |
| | UCC  (MONROE COUNTY) | 13.00 |
| | UCC  (NIAGARA COUNTY) | 13.00 |
| | REGULATORY AGREEMENT - LINREAL CORP | 43.50 |
| | REGULATORY AGREEMENT - BRY-LIN HOSPITALS | 46.50 |
| | SUPPLEMENTAL MORTGAGE | 46.00 |
| | CONS., EXT., MOD. ASSUMP. AGREEMENT | 107.00 |
| | TWO FINANCING STATEMENTS - ERIE COUNTY | 13.00 |
| | Linreal Corp.        SEC'Y OF STATE | 12.00 |
| | TWO FINANCING STATEMENTS - ERIE COUNTY | 13.00 |
| | Bry-lin Hospitals    SEC'Y OF STATE | 12.00 |
| | ASSIGNMENT OF MORTGAGE | 26.00 |
| | DISCHARGE OF ASSIGNMENT OF RENTS | 19.50 |
| | DISCHARGE OF REGULATORY AGREEMENT | 19.50 |
| | (24) UCC TERMINATIONS (COUNTY AND STATE | 168.00 |
| | 255 AFFIDAVITS (2) | 10.00 |
| CX | COPIES | 150.00 |
| STUB | STUB SEARCH | 350.00 |
| RETS | REAL ESTATE TAX SEARCHES (2) | 50.00 |
| UCCS | UCC SEARCHES | 100.00 |
| FCS | FEDERAL COURT SEARCHES (2) | 70.00 |
| TAX | MORTGAGE TAX | 35,717.00 |
| | **Amount Due:** | $52,260.00 |

---

*Detach here and return with your check made payable to:*
**"MONROE TITLE INSURANCE CORPORATION"**

333 E ONONDAGA ST
SYRACUSE, NY 13202

BYRNE COSTELLO & PICKARD
SUITE 800
100 MADISON ST
SYRACUSE, NY   13202

| Invoice No. | Customer No. |
|---|---|
| 30-180893 | 40690 |

| Invoice Date | Order No. |
|---|---|
| 05/21/2001 | 275236 |

| Title Ins./ Abstract No. |
|---|
| 101104274 |

| Customer Reference No. |
|---|
| 2 |

| Invoice Total | $52,260.00 |
|---|---|
| Amount Due | $52,260.00 |
| Amount Enclosed | $ |

HUD 0059

REMITTANCE

1    UNITED STATES DISTRICT COURT
2    NORTHERN DISTRICT OF NEW YORK
     ------------------------------------

3    UNITED STATES OF AMERICA,

4                         Plaintiff,

5            vs.                        CIVIL ACTION NO.

6    ROBERT CORP,                       1:08-CV-00333-JTC

7                         Defendant.

8    ------------------------------------

9

10           Proceedings in the above-entitled
     action were held pursuant to notice on
11   January 13, 2009 at the Offices of the
     United States Attorney, Syracuse, New York.

12

13

14   TESTIMONY OF:   PATRICIA MARONEY

15

16

17   APPEARANCES:    BRIAN R. YOUNG, ESQ.
                     Office of the United States Attorney
18                   U.S. Department of Justice
                     601D Street, Room 9147
19   ALSO PRESENT    Washington,  D.C.  20004
                     KENNETH MASSMAN, ESQ.

20

21                   ELLEN KIMATIAN EAGEN, ESQ.
                     Attorneys for Plaintiff
22                   Hiscock & Barclay
                     300 South State Street
23                   Syracuse, New York

24

25   REPORTED BY:
     SUSAN M. BYRNE

                         SUSAN M. BYRNE
                         (315) 243-7560

EXHIBIT
SJ 21

1   Q   Okay.  Can you look at the bottom of the first page,

2       which is HUD 0053?  It says, enclosed is a Form

3       2258-A with all documentation except for the Heller

4       Financial existing indebtedness.  I expect to have

5       that letter in the next day or two, and when I do, I

6       will have the Cost Certification completed and sent

7       to you, along with that letter.

8           Do you know what that letter is that's referred

9       to in this document?  Do you know what this document

10      is referring to when it says, that letter?

11  A   It reads as if it's referring to a letter with regard

12      to the Heller Financial existing indebtedness.

13  Q   Do you know whether or not Brylin had any trouble

14      obtaining from Heller any documentation which

15      pertained to Brylin's debt to Heller?

16  A   They may have.  I don't have a specific memory of

17      that.

18  Q   Okay.  Do you remember any conversations that you had

19      with anybody, communications which would pertain to

20      Brylin trying to get Heller to write a letter?

21  A   I don't remember specific conversations.

22  Q   Do you have any general recollection of this topic?

23  A   No.

24          MR. YOUNG:  The next thing I am going

25      to show you is HUD 0060.  It's a telecopier

```
 1            cover letter dated May 30th, 2001.  And we

 2            will mark it for identification as Exhibit

 3            39.

 4                 (Exhibit 39 marked for identification)

 5      BY MR. YOUNG:

 6   Q  Ms. Maroney, have you seen this document before?

 7   A  I don't have a specific recollection of this

 8            document.

 9   Q  Is this one of the documents that you reviewed in

10            preparation for your testimony today?

11                 MS. EAGEN:  Objection.  I just

12            caution, just answer that as a yes or no

13            answer.

14   A  Yes.

15   Q  Did you send this document to Kim Carmichael?

16   A  I believe I did.  This is my writing.

17   Q  Who is Kim Carmichael?

18   A  She is the mortgage credit reviewing at the HUD

19            Buffalo office.

20   Q  And it says --

21                 MS. EAGEN:  -- Your question, a

22            delayed objection, who is she at this

23            moment in time, or who was she at the time

24            of May 30th?

25      BY MR. YOUNG:
```

verify?

A    The underwriter, to my knowledge, the underwriter has

no responsibility for the Mortgagor's Certificate of

Actual Cost.   It's between the borrower and HUD.

Q    Is there anybody at Continental who has any

responsibility to --

A    -- Continental doesn't exist.

Q    I am talking about at the time of May 2001.

A    There was no one I know of whose responsibility it

was to verify those numbers.

Q    Do you know if Continental had any procedures in

place to -- in May of 2001, to verify the accuracy of

the data ultimately included on the Mortgagor's

Certificate of Actual Cost?

A    No specific procedure that I can recall.

Q    Do you know if Mr. Corp took any efforts to verify

the accuracy of the numbers that appear on Exhibit 39

at page HUD 0061?

A    I don't know that he did or did not.

Q    Is it fair to say you don't know either way?

A    That's true.

          MR. YOUNG:   I am going to show you

     what's been labeled document HUD 0056.

     It's a Continental Securities Telecopier

     cover letter dated May 29th, 2001.   And we

1          will mark it for identification as

2          Exhibit 43.

3               (Exhibit 43 marked for identification)

4     BY MR. YOUNG:

5     Q   Ms. Maroney, have you seen this before?

6     A   Yes.

7     Q   All right.  Do you have any recollection of seeing

8         this before the Brylin loan closed?

9     A   I don't remember it, but this is my writing, so I am

10        assuming that I did.

11    Q   Is this a document that you transmitted to Trish

12        Maroney?

13    A   No.  I am Trish Maroney.

14    Q   I am sorry.  Is this a document that you transmitted

15        to Diane Rosinski?

16    A   Yes.

17    Q   Do you remember transmitting this to Ms. Rosinski?

18    A   No.

19    Q   Do you remember, did you discuss this, the documents

20        included in this package, with Mr. Corp before

21        transmitting this document to HUD?

22    A   I don't remember discussing these documents.

23    Q   I would like to direct your attention to the page

24        HUD 0058.  Have you ever seen this page before?

25    A   I don't recall seeing it, but if I sent it to Diane,



## CONTINENTAL SECURITIES, LLC

### *TELECOPIER COVER LETTER*

DATE: 5/30/01    NO. OF PAGES (INCLUDING THIS PAGE): ___

TO: Ken Carmichael    FROM: Lisa Maroney

RE: Buyer    FAX NO.: _____

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE CALL BACK AS SOON AS POSSIBLE (315) 424-1994**

Dear Ken —

Attached is the signed, corrected 2205-A. Could you please fax it back once you have signed it? Our attorney would like it to complete his file —

Thanks

Lisa

EXHIBIT
SJ 22

HUD 0060

ONE MONY PLAZA, SUITE 800, SYRACUSE, NY 13202 (315) 424-1994 • FAX (315) 424-1908
452 FIFTH AVENUE, 25TH FLOOR, NEW YORK, NY 10018 (212) 840-2060 • FAX (212) 869-6418

05/30/01   11:04   ☎315 424 1908          CONTINENTAL SEC. →→→ HUD BUFFALO          ☑002

## Mortgagor's Certificate of Actual Cost

**U.S. Department of Housing and Urban Development**
Office of Housing
Federal Housing Commissioner

OMB No. 2502-044 (Exp. 08/31/2003)

(Section 207 Pursant to Section 223f)

Public reporting burden for this collection of information is estimated to average 8 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless that collection displays a valid OMB control number.

To Secretary of Housing and Urban Development
c/o

        HUD Buffalo

Project No.        014-22019

Project Name        Brylin Hospitals

Location        Buffalo/Alden, NY

The actual cost to the undersigned of labor, materials and necessary services for the purchase or refinancing of the existing property (land and improvements) in connection with the subject loan, after excluding any kickbacks, rebates, adjustments made or to be made are as follows:

| | Item | Paid | To be Paid at Endorsement | Total |
|---|---|---|---|---|
| 1. | Purchase Price or Existing Indebtedness | $ | 5,859,383 | 5,859,383 |
| 2. | Repairs (Itemize on Schedule A on the back of this form) | | 331,911 | 331,911 |
| 3. | HUD Fees (.3% + 1.0%) | 21,038 | 70,125 | 91,163 |
| 4. | Lender's Fee (Loan origination and closing) | 35,063 | 210,375 | 245,438 |
| 5. | Recording Expenses | | 52,260 | 52,260 |
| 6. | Legal and Organizational Expense (Attach an itemized schedule) | 7,952 | 35,750 | 43,702 |
| 7. 8. | Other Expense (Itemize on Schedule C on the back of this form) | | 553,284 | 553,284 |
| 9. | Total Cost | $ 64,053 | 7,113,088 | 7,177,141 |

This certification is made, presented and delivered for the purpose of influencing an official action on behalf of the Secretary of Housing and Urban Development. This certification may be relied upon as a true statement of the facts contained herein.

Signature of Borrower
X [signature] President/CEO

Date        6-1-01

**Warning:** U.S. Code, Title 31, Section 3729, False Claims, provides a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages for any person who knowingly presents, or causes to be presented, a false or fraudulent claim; or who knowingly makes, uses, or causes to be used, a false record or statement; or conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

**Warning:** U.S. Criminal Code, Section 1010, Title 18, U.S.C., "Department of Housing and Urban Development and Federal Housing Administration transactions". Provides in part: "Whoever, for the purpose of . . . influencing in any way the action of such Department . . . makes, passes, utters, or publishes any statement, knowing the same to be false . . . shall be fined not more than $5,000 or imprisoned not more than two years or both."

To Lender: Maximum Insurable Loan (For Completion by HUD)

| | |
|---|---|
| Total Per Line Item 8 | $ 7,177,141 |
| Less Disallowed Amounts | |
| Subtotal | $ 7,177,141 |
| Mortgage Amount | |
| A. 100 % of Item 9 (Enter 85% if Acquisition; 100% if Refinanced) | $ 7,177,141 |
| B. Amount Committed for Insurance | $ 7,012,500 |
| C. Amount Based on Recomputed Mortgage | $ - |
| Maximum Insurable Loan (Enter the lower of A, B, or C) | $ 7,012,500 |

By (Authorized Agent)
Kim Carmichael

Date        6-5-01

form HUD-2205-A (6/75)
ref. Handbook 4600.1

HUD 0061

## Instructions

In accordance with HUD Regulations, accurate records of all costs must be maintained and are subject to review by employees of HUD prior to the endorsement of the loan for insurance. The records must be in sufficient detail to permit the itemization of cost required by this form, including the Schedules below. Only those items of cost actually incurred by the Borrower will be allowed by HUD. (If the space allowed below for the Schedules of Cost is insufficient, continue the itemization on an attached sheet.)

**Schedule A (Repairs – Item 2)**

| | $ |
|---|---|
| See Attached | 331,911 |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total** | **$ 331,911** |

**Schedule B (Lender's Fees - Item 4)**

| | $ |
|---|---|
| Initial Service Charge | 140,250 |
| Placement Fee | 105,188 |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total** | **$ 245,438** |

**Schedule C (Other - Item 7)**

| | $ |
|---|---|
| Initial Deposit to Replacement Reserve | 550,000 |
| HUD Inspection Fee | 3,284 |
| | |
| | |
| | |
| | |
| | |
| **Total** | **$ 553,284** |

To Lender: Maximum Insurable Loan (For Completion by HUD)

Total Per Line Item 8                          $          Mortgage Amount  $
Less Disallowed Amounts                                 A. % of Item 3 (Enter 85% if Acquisition;
100% if Refinanced)

                                                        B. Amount Committed for Insurance
Subtotal                                       $        C. Amount Based on Recomputed Mortgage
                                                       Maximum Insurable Loan (Enter the lower of A, B, or
C)
By (Authorized Agent)                          $
                                                       Date

**HUD 0062**

form HUD-2205-A (5/75)
ref. Handbook 4600.1

HUD 01765

# BRYLIN HOSPITALS

014-22019

Line 1  -  EXISTING INDEBTNESS

| | |
|---|---|
| Key Bank | $3,750,000.00 |
| Heller Financial | 1,350,000.00 |
| Real estate Taxes | 567,172.01 |
| Other, Miscellaneous | 138,666.69 |
| Charter | <u>53,544.32</u> |
| **Total** | **$5,859,383.02** |

May 29, 2001

**HUD 0063**

Privileged
Between
03315 + 03316
2/23/01

P 03315-a
2 pages



# BRYLIN
**H O S P I T A L S**

TO:   File

FROM:  Karen D. Tunis-Manny

DATE:  February 23, 2001

RE:   Heller Meeting

---

Eric Pleskow and I flew to the offices of Heller Financial Management located in Chevy Chase, MD to review what we believe is the last two or so months of our financial relationship.  We went to the offices with the following goals in mind:

1. A subsequent set of documents signed by Eric Pleskow related to an interim funding request accelerated the end of the Heller-BryLin relationship to March 12, 2001.  Given that we are clearly not going to be closed at HUD at that point in time, it was important that we review this matter and obtain an agreement that our relationship be extended until the HUD closing.  Mike Gardullo was not aware of the pending date.  He explained it by saying that in the interim funding request negotiation there must have been a discussion when BryLin felt they would be closed with HUD.  Mr. Gardullo guessed that BryLin may have said "some time in March" and as such that date made it into the documents.  Mr. Gardullo was very clear that he had a comfort level with the HUD project and was willing to extend, if need be, the Heller-BryLin relationship until the HUD refinancing could be brought to fruition.

2. BryLin will need cash in order to obtain the HUD refinancing.  There are a number of items at closing which cannot be financed and require a cash outlay.  Moreover, there are a few judgements and other items that must be satisfied before we proceed to closing or the HUD loan will be held up.  Accordingly, we requested that we maintain our line of credit in a manner similar to that which we are currently maintaining and anything below the 1,350,000.00 figure, which is currently dedicated to the Heller buyout, be obtained from Heller just prior to closing in order to use those fungible dollars in whatever way we can.  Parenthetically, it is in our best interest to pay down the loan as far as possible in order to obtain as much cash as we possibly can the day before closing for not only HUD closing costs, but also coming payrolls and other items which need to be addressed as we continue to operate the business.

Mr. Gardullo, representing Heller, agreed in concept to this matter.  He indicated he has done this multiple times before albeit with larger deals.  He suggested if it would work for us, that he pay the money directly to the Title Company who will disperse it to BryLin at closing.  I will work out the mechanics of this arrangement with Basil Elmer and Bob Corp.  Our goal is to obtain these dollars in such a way that HUD has no say in how we spend or use them.  It was my impression that Heller will work with us in this regard.

**EXHIBIT**

**SJ 23**

3. BryLin has demonstrated over the past year an amazing debt service ability with regard to the Heller debt. Mike Gardullo indicates that we were almost forced to help ourselves given the lack of census which would not permit the disbursement of cash. Nonetheless, the practical result has been to pay the line down from its high in June, 2000 of $2.2 million to a present low of $980,000. In recognition of this large amount of debt service and the fact that Heller feels 100% secured in Brylin's current indebtedness to them, they have agreed to loosen up certain of the formula and other details of funding. For example, instead of receiving 50% of the over 120 day collections, we will be receiving 100%. Sybil Potts requested that we receive 80% of our Medicaid receivables supported by our historical and demonstrated efficient collections in this regard. Mike Gardullo indicated that for the reasons stated above he would consider this request and report back to BryLin. The upshot was that it appears Heller may work with us to increase our cashflow. Mr. Gardullo spoke to the need for an increased census in this regard and suggested that with a consistent and respectable census, it would improve our cash flow considerably.

4. We spoke to the practical issues around the change in our relationship at the HUD closing. We requested information with respect to the easiest way to implement the changed relationship. Mike Gardullo suggested that the lock box, which is the destination of all our receivables is currently owned by BryLin. He suggested that at the time of closing Heller relinquish all of their rights to the lock box and BryLin maintain it as the destination for its receivables. The only responsibility therefore, will be for us to prevail on the appropriate bank to make the switch from sweeping to Heller to maintaining it in BryLin's name as quickly as possible, with new sweeping instructions. This will avoid the need for letters to all of our payors and other arrangements which would clearly impact cash flow. Mr. Gardullo suggested that many of this clients, especially those with cash flow issues, maintain the lock box until they stabilize and at that point in time consider whether a change is necessary or desired. A more stable cash flow will permit a small glitch, which could occur, when and if the lockbox is closed, in whatever changes are necessary in closing the lock box. At this point in time there does not seem to be any reason for us to change the lock box as it will be totally in our control after Heller is taken out.

Conclusion:

This was a very successful trip to Heller. It is my opinion that our plan to fly into Baltimore and meet in their offices was very successful and that it showed the concern and effort they were looking for in speaking to the issues named above.

# BYRNE, COSTELLO & PICKARD, P.C.

### ATTORNEYS AT LAW

MICHAEL J. BYRNE
TERRY R. PICKARD *
MATTHEW V. BYRNE III **
JOHN R. BRENNAN ***
F. SCOTT MOLNAR ***
LORETTA R. KILPATRICK

*ALSO MEMBER FLORIDA BAR
AND MASSACHUSETTS BAR
**ALSO MEMBER FLORIDA BAR
AND DISTRICT OF COLUMBIA BAR
***ALSO MEMBER MASSACHUSETTS BAR

MATTHEW V. BYRNE, JR.
(1920-2000)

JOHN J. COSTELLO
OF COUNSEL

MONY TOWER I
100 MADISON STREET, SUITE 800
SYRACUSE, NEW YORK 13202-2721
TELEPHONE: 315/474-6448
TELECOPIER: 315/424-8556
E-MAIL: JBRENNAN@BCPLEGAL.COM

JUNE 4, 2001

*VIA TELECOPIER (315/472-3964)*

Leanne Galster
Monroe Title Insurance Corporation
333 East Onondaga Street
Syracuse, New York 13202

**Re:  Brylin Hospitals (FHA Project No.  014-22019)**

Dear Leanne:

For tomorrow's closing, I am working on very specific pay-off instructions that I will deliver over to your office as early today as possible.  There is one pay-off in particular, however, that needs some advance explanation.  Brylin Hospitals has an accounts receivable factoring arrangement with Heller Healthcare Finance that will be paid-off and terminated tomorrow.  The arrangement involves a line of credit or something similar.  When the $7,012,500.00 loan that we will close tomorrow was first processed, Brylin listed a debt of $1,350,000.00 due to Heller.  The debt due Heller has been paid down in recent months. Brylin has the right to draw down additional funds from Heller up to the $1,350,000.00 amount and wants to do so before we close tomorrow.  Heller is willing to advance the additional funds but wants some reasonable assurance that it will be repaid the full $1,350,000.00 at closing.  Accordingly, you will be receiving a wire transfer today from Heller to hold in escrow until after the closing.  The amount to be wired will be the difference between the debt owed to Heller this morning and $1,350,000.00.

Attached is a draft escrow instruction letter to Monroe Title Insurance Corporation from the attorney for Heller, Robert Goodridge, Esq.  I have asked that Heller identify in its escrow instruction letter the exact amount that Heller will be wiring to Monroe today.  I expect that they will be faxing out a final version of the escrow instruction letter to you this morning.  Once that is done, they would like Monroe Title to acknowledge the matter by signing the last page of the escrow instruction letter and by faxing it to Mr. Goodridge. Please arrange for an authorized officer of Monroe Title to do that upon your receipt of the final the escrow instruction letter.

**EXHIBIT
SJ 24**

HUD 00198

BYRNE, COSTELLO & PICKARD, P.C.

---

Monroe Title Insurance Corporation
June 4, 2001
Page 2

You will also be receiving an escrow instruction letter from Dean W. Wantland, the Vice President / Manager - FHA Closing Department, of GMAC Commercial Mortgage Corporation ("GMACCMC") either today or tomorrow concerning the funds that GMAC will wire to your escrow account tomorrow morning immediately after we close with HUD. All funds wired by either GMACCMC or Heller Healthcare Financial to Monroe Title must be held in escrow strictly pursuant to the terms of the respective instruction letters.

The instruction letter that I will deliver over to your office later today will clear-up any issues related to the closing, including the above two escrows. Call me if you have any questions in the meantime.

Very truly yours,

**BYRNE, COSTELLO & PICKARD, P.C.**

John R. Brennan

JRB/hs
enclosure
cc:    Karen Manny, Esq.
       Dean W. Wantland
       Robert Goodridge, Esq.
       Trish Maroney

**HUD 00199**

June 4, 2001


Monroe Title Insurance Corporation
333 East Onondaga Street
Syracuse, New York 13202

Ladies and Gentlemen:

Heller Healthcare Finance, Inc. ("Heller") is issuing these instructions to you ("Title Company") pursuant to your closing of a financing transaction between Bry-Lin Hospitals, Inc. and GMAC Commercial Mortgage Corporation.

Heller will be wiring to Title Company the sum of $_____ (the "Purchase Amount") which Title Company shall hold in escrow pursuant to the terms of these instructions.

The Purchase Amount is being disbursed by Heller in connection with the purchase by Heller of certain receivables of Bry-Lin Hospitals, Inc. ("Seller") (such receivables are herein referred to as the "Special Batch") pursuant to that certain Receivables Purchase and Sale Agreement dated May 12, 1999 (the "Agreement").

All sums wired by Heller to Title Company shall be deemed the property of Heller and shall be subject to recall by Heller at any time prior to the instant in time in which such sums become the property of Seller under the terms of this letter of instructions.

The Purchase Amount shall become the property of Seller only upon confirmation by Heller that all of the following conditions have been satisfied:
    (a) completion of all conditions precedent in the Agreement to the funding of a receivables purchase;
    (b) Heller has received confirmation satisfactory to Heller that the Title Company is holding in escrow sufficient funds to pay to Heller the sum of $1,350,000 (the "Termination Payment") and that there are no conditions to release of such funds to Heller.

If the Purchase Amount has not become the property of Seller by 5:00pm on June 6, 2001 strictly in conformity with the provisions above set forth, then Title Company shall return the Purchase Amount to Heller and this escrow shall terminate.

Once the Purchase Amount has become the property of Seller strictly in conformity with the provisions above set forth, the Purchase Amount shall remain held by Title Company subject to the terms of these instructions.

**HUD 00200**

The Purchase Amount shall be released by Title Company to or for the account of Seller only after Title Company has paid to Heller, by wire transfer, the Termination Payment.

If Heller has not received the Termination Payment by 5:00pm on June 7, 2001, then the Purchase Amount shall be deemed to have reverted to property of Heller as a payment by Seller to Heller to repurchase the Special Batch. In such event, Title Company shall pay the Purchase Amount to Heller and the escrow herein shall terminate.

All costs, fees and charges of Title Company in connection with this letter agreement shall be paid by the "Bry-Lin Parties," which include Seller, Linreal Corporation, Eric Pleskow and Western New York Behavioral Medicine and Psychotherapies, PLLC.

Any sums required to be paid to Heller hereunder shall be made by wire transfer in accordance with the following instructions:

> Bank One, N.A., Chicago IL
> ABA 071000013
> For account of Heller Healthcare Finance, Inc.
> Account: 59-29792
> RE: Brylin

This letter may be executed in counterparts, each of which shall be deemed an original, and all of which, when taken together, shall constitute one and the same instrument.

Please indicate your acceptance of these escrow instructions by signing below. Seller and its affiliates, by their joinder below, hereby acknowledge and agree to the foregoing.

HELLER HEALTHCARE FINANCE, INC.


By: _____

Name: _____

Title: _____

**HUD 00201**

AGREED AND ACCEPTED THIS __ DAY OF JUNE, 2001:

MONROE TITLE INSURANCE CORPORATION

By:_____
Name:_____
Title:_____


BRY-LIN HOSPITALS, INC.,
a New York corporation

By: *Eric D. Pleskow* _____
Name: Eric D. Pleskow
Title: President/CEO


LINREAL CORPORATION,
a New York corporation

By: *Eric D. Pleskow* _____
Name: Eric D. Pleskow
Title: President

WESTERN NEW YORK
BEHAVIORAL MEDICINE AND
PSYCHOTHERAPIES, PLLC, AS A GUARANTOR

By: *Eric D. Pleskow* _____
Name: Eric D. Pleskow
Title: General Manager


ERIC D. PLESKOW, INDIVIDUALLY AND AS GUARANTOR

By: *Eric D. Pleskow* _____
      ERIC D. PLESKOW


**HUD 00202**

Heller Financial, Inc.
2 Wisconsin Circle, 4th Floor
Chevy Chase, Maryland 20815
301.961.1640

# Heller Financial

June 4, 2001

Monroe Title Insurance Corporation
333 East Onondaga Street
Syracuse, New York 13202

Ladies and Gentlemen:

Heller Healthcare Finance, Inc. ("Heller") is issuing these instructions to you ("Title Company") pursuant to your closing of a financing transaction between Bry-Lin Hospitals, Inc. and GMAC Commercial Mortgage Corporation.

Heller will be wiring to Title Company the sum of $787,136.67 (the "Purchase Amount") which Title Company shall hold in escrow pursuant to the terms of these instructions.

The Purchase Amount is being disbursed by Heller in connection with the purchase by Heller of certain receivables of Bry-Lin Hospitals, Inc. ("Seller") (such receivables are herein referred to as the "Special Batch") pursuant to that certain Receivables Purchase and Sale Agreement dated May 12, 1999 (the "Agreement").

All sums wired by Heller to Title Company shall be deemed the property of Heller and shall be subject to recall by Heller at any time prior to the instant in time in which such sums become the property of Seller under the terms of this letter of instructions.

The Purchase Amount shall become the property of Seller only upon confirmation by Heller that all of the following conditions have been satisfied:
    (a) completion of all conditions precedent in the Agreement to the funding of a receivables purchase;
    (b) Heller has received confirmation satisfactory to Heller that the Title Company is holding in escrow sufficient funds to pay to Heller the sum of $1,350,000 (the "Termination Payment") and that there are no conditions to release of such funds to Heller.

If the Purchase Amount has not become the property of Seller by 5:00pm on June 6, 2001 strictly in conformity with the provisions above set forth, then Title Company shall return the Purchase Amount to Heller and this escrow shall terminate.

**EXHIBIT**

**SJ 25**

HUD 00203

Once the Purchase Amount has become the property of Seller strictly in conformity with the provisions above set forth, the Purchase Amount shall remain held by Title Company subject to the terms of these instructions.

The Purchase Amount shall be released by Title Company to or for the account of Seller only after Title Company has paid to Heller, by wire transfer, the Termination Payment.

If Heller has not received the Termination Payment by 5:00pm on June 7, 2001, then the Purchase Amount shall be deemed to have reverted to property of Heller as a payment by Seller to Heller to repurchase the Special Batch. In such event, Title Company shall pay the Purchase Amount to Heller and the escrow herein shall terminate.

All costs, fees and charges of Title Company in connection with this letter agreement shall be paid by the "Bry-Lin Parties," which include Seller, Linreal Corporation, Eric Pleskow and Western New York Behavioral Medicine and Psychotherapies, PLLC.

Any sums required to be paid to Heller hereunder shall be made by wire transfer in accordance with the following instructions:

> Bank One, N.A., Chicago IL
> ABA 071000013
> For account of Heller Healthcare Finance, Inc.
> Account: 59-29792
> RE: Brylin

This letter may be executed in counterparts, each of which shall be deemed an original, and all of which, when taken together, shall constitute one and the same instrument.

Please indicate your acceptance of these escrow instructions by signing below. Seller and its affiliates, by their joinder below, hereby acknowledge and agree to the foregoing.

HELLER HEALTHCARE FINANCE, INC.


By:    _Robert Baker_
Name:  _Robert P. Goodridge_
Title: _Vice-President_


HUD 00204

AGREED AND ACCEPTED THIS __ DAY OF JUNE, 2001:

MONROE TITLE INSURANCE CORPORATION

By:_____
Name:_____
Title:_____


BRY-LIN HOSPITALS, INC.,
a New York corporation

By: _Eric D Pleskow_____
Name: Eric D. Pleskow
Title: President/CEO


LINREAL CORPORATION,
a New York corporation

By: _Eric D Pleskow_____
Name: Eric D. Pleskow
Title: President


WESTERN NEW YORK
BEHAVIORAL MEDICINE AND
PSYCHOTHERAPIES, PLLC, AS A GUARANTOR

By: _Eric D Pleskow_____
Name: Eric D. Pleskow
Title: General Manager


ERIC D. PLESKOW, INDIVIDUALLY AND AS GUARANTOR

By: _Eric D Pleskow_____
     ERIC D. PLESKOW


HUD 00205

# Memorandum - BryLin Hospitals

**To:**   Bob Corp; Basil Elmer

**CC:**   Eric D. Pleskow; Mike Mazgaj

**From:**  Karen D. Tunis-Manny

**Date:**  January 8, 2001

**Re:**   HUD Immediate Critical & Non Critical Accessibility Reports and Wish List

---

Per a request from Basil Elmer, Mike Mazgaj and I reviewed the Frandina Repair List in its entirety and compared it to the BryLin "Wish List". Below please find the Wish List items that do not appear on the Frandina list. I've identified the Wish List items, listed them below and reported an estimate of when the work will be done. Please refer to the BryLin Plant Operations Capital Request List for project details.

BRYLIN WISH LIST

| ITEM NUMBER | ESTIMATED YEAR OF WORK |
|---|---|
| 1263-002 | YEAR 3 |
| 1263-002 (INCLUDED IN 1263-002) | |
| 1263-008 | YEAR 2 |
| 1263-013 | YEAR 3 |
| 1263-016 | YEAR 5 |
| 1263-019 | YEAR 1 |
| 1263-020 | YEAR 1 |
| 1263-021 | YEARS 2-4 |
| 1263-024 | YEAR 5 |
| 1263-026 | YEAR 1 |
| 1263C-002 | YEAR 4 |
| 1263C-003 | YEAR 1 |
| 1255-003 | YEAR 6 |
| 11438-001 | YEAR 8 |
| 11438-007 | YEAR 2 |
| 11438-008 | YEAR 2 |
| 11438-011 | YEAR 7 |
| 11438-015 | YEAR 2 |

EXHIBIT
SJ 26

1

D02700

*January 8, 2001*

Please note that on page 2 of 5 of the Frandina Near Repair List, we have removed D.5, the installation of the chain link fence, as we no longer require this project due to a collaborative effort with a neighboring church to improve the property in question for use by BryLin patients, which was the intended result of the installation of the chain link fence. Item labeled E.3 that relate to the Carriage House Roof are addressed in BryLin's Wish List, Project number 1263C-003, which addresses this project in what we believe is a more comprehensive and long term manner. BryLin would prefer to go in this direction. Frandina's Project number F.3.c. which appears on page 2 of 5 is a duplicate from page 1, line 3.

With regard to BryLin's Wish List, Project number 1263-002 is the preferred approach to the generator project. Should we be able to complete this project number, project item 1263-003 would not be necessary.

Bob, thanks so much for speaking with Mike Gardulla at Heller. We appreciate your time and efforts.

I am working with KeyBank to pin them down on the final amount it will take for BryLin to satisfy all of the KeyBank indebtedness. As you know, I've offered $3M against approximately $4.6 of indebtedness. I need to pin them down so that we can submit the final number. I will keep you apprised of my progress

If following your review of any of this information you have any questions, please so advise. Thanks.

2

D02701

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 1:08-CV-00333-JTC |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT P. CORP, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF
## INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Robert P. Corp ("Defendant" or "Corp"), by his attorneys, Hiscock & Barclay, LLP, as and for his responses to Plaintiff United States of America's ("Plaintiff" or the "United States") First Set of Interrogatories and Requests for Production of Documents, states as follows:

### GENERAL OBJECTIONS

1.     Defendant objects to any Interrogatory or Request that seeks information subject to the attorney-client privilege.

2.     Defendant objects to any Interrogatory or Request that seeks trial preparation information, or other information prepared in anticipation of, as a result of, or relating to litigation, or that is otherwise protected by the work-product doctrine or other applicable privilege or protection from disclosure.



EXHIBIT

SJ 27

ambiguous.   Further, this Interrogatory seeks information that is more appropriately sought through deposition discovery.   Subject to these and the General Objections, Defendant states as follows:   Defendant sought information required to complete the referenced form from representatives of Brylin Hospitals, Inc. and Linreal Corporation, as well as third parties. Defendant arranged for completion of the form using the information he received from Brylin Hospitals, Inc., Linreal Corporation and third parties.

**Interrogatory No. 3**

**Please explain why Mr. Corp did not include documentation for the existing indebtedness pertaining to HELLER FINANCIAL with the materials that he submitted to Diane Rosinski on May 21, 2001 (*see* Exhibit 7 of the Complaint in this action (Dkt. No. 1)).**

Defendant objects to this Interrogatory to the extent it seeks information that is more appropriately sought through deposition discovery.   Subject to this and the foregoing General Objections, Defendant states as follows:   As explained in Exhibit 7 to the Complaint, no documentation concerning the "existing indebtedness pertaining to HELLER FINANCIAL" was included with the materials submitted to Diane Rosinski because that information was outstanding at the time the letter was drafted.

**Interrogatory No. 4**

**Please identify each and every conference call, two-party call, or COMMUNICATION that Mr. Corp had that included either Michael G. Gardullo or Robert P. Goodridge, of HELLER FINANCIAL, or any other employee, agent, or representative of HELLER FINANCIAL.   In so doing, please identify the date of the telephone call, the participants, and the topics discussed.**

Defendant objects to this Interrogatory because it is overly broad and seeks information that is neither relevant nor likely to lead to admissible evidence.   Defendant also objects to the extent that this Interrogatory seeks a precise and complete recounting of events that took place several years ago.   It is not reasonable, appropriate, or relevant to require Defendant to "identify

each and every" event referenced in the Interrogatory or all "topics discussed" at such events. Further, this Interrogatory seeks information that is more appropriately sought through deposition discovery. Subject to these and the General Objections, Defendant states as follows: Defendant had a telephone conference with Mike Gardulla in or about early January 2001. The topic of the call included the progress of the HUD loan. *See* Bates No. D03805. In addition, Defendant was present during one or two telephone conference calls between John Brennan and/or Karen Manny and a "HELLER REPRESENTATIVE." Those calls took place in Brennan's or Manny's office in or about the second quarter of 2001. The topics of the call included Brylin's debt to Heller. Mr. Corp was not an active participant in these later call(s). *See* Bates No. D03916.

### Interrogatory No. 5

**Please identify each and every COMMUNICATION of which Mr. Corp is aware CONCERNING BRYLIN HOSPITALS's debt to HELLER FINANCIAL.**

Defendant objects to this Interrogatory because it is overly broad and seeks information that is neither relevant nor likely to lead to admissible evidence. Defendant also objects to the extent that this Interrogatory seeks a precise and complete recounting of events that took place several years ago. It is not reasonable or appropriate to require Defendant to "identify each and every" event referenced in the Interrogatory. Further, this Interrogatory seeks information that is more appropriately sought through deposition discovery. Subject to these and the General Objections, Defendant refers to Plaintiff's Exhibits 3, 7, 10 and 11 of the Complaint, and Bates No. D03666 of concurrent production.

## VERIFICATION

STATE OF NEW YORK          )
                           ) SS.:
COUNTY OF ONONDAGA         )

**ROBERT P. CORP**, being duly sworn, deposes and says that deponent is the Defendant

in the within action, that deponent has read the foregoing Responses to Plaintiff's First Set of

Interrogatories and Requests for Production of Documents and knows the contents thereof, that

the same is true to deponent's own knowledge, except as to those matters therein stated to be

alleged upon information and belief, and that as to those matters deponent believes it to be true.

_____
                    ROBERT P. CORP

Subscribed and sworn to before me

this _10th_ day of November, 2008.

_____
            Notary Public

VALERIE R. FURZE
Notary Public, State of New York
Qualified in Onondaga Co. No. 01FU6087802
Commission Expires on Feb. 24, 20_11_

*Multifamily*
# Closing Memorandum

U.S. Department of Housing
and Urban Development
Office of Housing
Federal Housing Commissioner

*Housing Docket*

CORRECTED

HI-00001R    See detailed instructions on pages 2-3

| 1. Project Name / Street Address / State / Zip/ County Name: | 2. County Code: (numeric) | 3. Date of Memorandum: |
|---|---|---|
| **BRYLIN HOSPITALS** **1263 DELEWARE AVENUE and 11438 GENESEE ST** **BUFFALO  and ALDEN , NY  (ERIE COUNTY)** | 029 | 06/05/2001 |

| 4. Related Project Numbers: (if applicable) | 5. Project Number: | 6. PRAC Number: |
|---|---|---|
| n/a | 014-22019 | n/a |

| 7. ☐ Insured Advances  ☒ Insurance Upon Completion  ☐ Capital Advances  ☐ Risk -Sharing | 8. Numeric SOA: **232/223(f)** | 9. Alpha SOA: **RNQ** |
|---|---|---|

10. Production Method
☐ New Construction
☐ Rehabilitation
☒ Acquisition/Existing/Refinancing

11. Processing Method / Indicators: *MAP Closing*
(see instructions)
☐ FT  ☐ SPP  ☐ BM   ☐ TC  ☐ MX  ☐ TE  ☐ PR

| 12. Date of Firm Commitment: | 13. Date of Initial Endorsement / Closing: | 14. Date of Final Endorsement / Closing: |
|---|---|---|
| 05/01/2001 | 06/05/2001 | 06/05/2001 |

15. Mortgagee Name / Street Address / City / State / Zip Code:    Mortgagee ID No: **34444**

**CONTINENTIAL SECURITIES CORP**
**ONE MONY PLAZA**
**SYRACUSE, NEW YORK 13202**

16. Mortgagor Name / Street Address / City / State / Zip Code:

**LINREAL CORPORATION**
**1263 DELEWARE AVENUE**
**BUFFALO, NY   14222**

17. Mortgage:

| | | | |
|---|---|---|---|
| Original Amount | $7,012,500.00 | Date: | 06/05/2001 |
| Increase or Decrease | | Interest Rate: | 7.4% through final endorsement |
| Consolidated Amount | $7,012,500.00 | Thereafter: | 7.4% |
| Date of First Payment to Principal: | 08/1/2001 | Maturity Date: | 7/1/2036 |
| | | Term (no. of years) | 35 |

18. Project Rental Assistance Contract: (Sec. 202/811 projects only)
Annual Contract Authority: $  0.00    Budget Authority: $  0.00    Term: **0** (no. of years)

19. Amortization:  (a)  Level of Monthly Payment (principal & interest)  $46,781.31
(b)  Amortization Period  (number of years)    35

20. Total Units/Beds:    Number of Units:    or  Number of Beds: **150**

| 21. Risk-Share Percent | HUD:    % | Housing Finance Agency:    % | Qualifying Participating Entity:    % | Mortgage Insurance Premium:    % |
|---|---|---|---|---|

22. Insurance of Advance Cases:  (a)  Completion Date Per Construction Contract:
(b)  Form of Assurance of Completion:
(c)  Form of Guaranty Against Latent Defects:

23. Insurance Upon Completion Cases:  Form of Guaranty Against Latent Defects:

24. Capital Advance Cases:  (a)  Completion Date Per Construction Contract:
(b)  Form of Assurance of Completion:
(c)  Form of Guaranty against Latent Defects:

Signature of Multifamily HUB Director:    Signature of Closing Attorney:

X *Rosalind a Lamberty*    X *Pierre M Strick*

Original:  Field Office    Project Docket
Copies:   Headquarters    Multifamily Insurance Operations Branch  (Insured and Risk-Sharing Programs only)
Office of Business Products  (Section 202/811 Programs only)
Washington Docket, Chief, Records Management, rm. B264  (Final Endorsements/Closings only)
Ft. Worth Accounting Center  (Section 202/811 Programs only)

**EXHIBIT**
**SJ 28**

**HUD 0067**

form HUD-290 (5/98)