**CONTINENTAL SECURITIES, LLC**

---

To:     Basil Elmer

From:   Bob Corp

Date:   May 7. 2001

Re:     BryLin Hospitals

Basil,

I understand that we will be meeting at BryLin on Thursday May 10 at 10:00 AM to discuss various issues to get to a closing by the end of this month. The following is a summary of the things I would like to find out about and finalize. Let's assume that we'll be able to meet a May 29, 2001 closing date.

### Existing Debt

The major pieces of debt include Key, Heller, Taxes, Charter and consent judgements/lienable A/P:

1.  I have a copy of the March 7, 2001 Key Bank agreement. I assume that the $3.75 million is the total payoff, not to be adjusted by any additional interest that may accrue between now and the payoff.

2.  The firm commitment was processed with a Heller balance due of $1,350,000. I need to know what the payoff amount of that debt will be on May 29.

3.  The firm commitment was processed with back taxes amounting to $460,936. Becky in my office is contacting the various taxing authorities to get current payoff numbers for all of the taxes.

4.  The firm commitment was processed with a payoff of $61,779. I need the payoff amount on May 29.

5.  For the Consent Judgements/Lienable A/P items, the firm commitment was processed with a list of 29 items totaling $123,831. On May 1, 2001, we received from Karen information on six items totaling $136,709, four of which were on the original list. I need clarification of this item.

### Repairs

You told me previously that all of the "Critical" repairs have been completed. I'll need to see them. Also, I'll need a status of the "Immediate Non-Critical" repairs. If any of those have been completed I'll need to inspect them. It should be kept in mind that for

ONE MONY PLAZA, SUITE 800, SYRACUSE, NY 13202 (315) 424-1994  •  FAX (315) 424-1908
452 FIFTH AVENUE, 25TH FLOOR, NEW YORK, NY 10018 (212) 840-2060  •  FAX (212) 869-6418

HUD 00246

EXHIBIT

SJ 53

the Non-Critical repairs that are not completed by closing, an escrow of 150% of the cost is required. Therefore, the more that can be done, the better off BryLin will be.

### Tax/Insurance Escrow

An initial deposit to a tax/insurance escrow is required. We have made a preliminary calculation, which is enclosed.

### Commitment Fee

We will require a commitment fee of .50% of the mortgage amount, or $35,062.50. This is not an additional fee. It will be credited toward the total financing fee.

### Other Amounts Due

I would like to make sure that the providers of services in connection with this application are paid. Specifically, GAR Associates and Frandina are owed balances. Also, I'm not sure of the surveyor or other parties that need to be paid in connection with the application processing.

I've enclosed a preliminary draft of a settlement statement for the closing. As discussed above, we need to refine the numbers to get a better idea what the closing will look like. As we will withhold interest for the month of May, the first payment of principal, interest, escrows and reserves will be July 1.

HUD 00247

## BRY-LIN HOSPITALS

**Payoff as of June 4, 2001**

| | |
|---|---:|
| BRYLIN (Batch Total) | 261,755.24 |
| BRYCARE (Batch Total) | 81,923.10 |
| BRYCAID (Batch Total) | 204,468.62 |
| | 548,146.96 |
| | |
| Legal Fee | 3,000.00 |
| HCAC Fee (Audit) | 3,845.00 |
| | 6,845.00 |
| | |
| **Total** | **$   554,991.96** |

**Payoff as of June 1, 2001**

| | |
|---|---:|
| Additional Purchase/Funding | 787,136.67 |
| Purchase Discount | 7,871.37 |
| | 795,008.04 |
| | |
| **June 1, 2001 Termination Payment** | **$   1,350,000.00** |

EXHIBIT

SJ 54

GE-0082

HUD 00162

# BRY-LIN HOSPITALS

## Payoff as of June 4, 2001

| | |
|---|---:|
| BRYLIN (Batch Total) | 261,755.24 |
| BRYCARE (Batch Total) | 81,923.10 |
| BRYCAID (Batch Total) | 204,468.62 |
| | 548,146.96 |
| | |
| Legal Fee | 3,000.00 |
| HCAC Fee (Audit) | 3,845.00 |
| | 6,845.00 |
| **Total** | **$    554,991.96** |

## Payoff as of June 1, 2001

| | |
|---|---:|
| Additional Purchase/Funding | 787,136.67 |
| Purchase Discount | 7,871.37 |
| | 795,008.04 |
| | |
| June 1, 2001 Termination Payment | **$   1,350,000.00** |

William M. Daly (signature)

GE-0415

HUD 00163

## ASSIGNMENT OF FHA COMMITMENT FOR INSURANCE
## AND RELATED FHA LOAN RIGHTS

FHA LOAN PROJECT NUMBER: 014-22019
PROJECT NAME: Brylin Hospitals
CITY AND STATE: Buffalo, New York

FOR GOOD AND VALUABLE CONSIDERATION, receipt of which hereby is acknowledged, *CONTINENTAL SECURITIES, LLC,* a New York limited liability company ("*Assignor*"), being mortgagee of record for the FHA commitment for insurance ("*FHA Commitment for Insurance*") pertaining to the above captioned property, hereby assigns and transfers to *GMAC COMMERCIAL MORTGAGE CORPORATION,* a California corporation ("*Assignee*"), all of its rights, title and interest in and to the FHA Commitment for Insurance and the related FHA Loan (including, without limitation, the loan servicing rights).

Assignee hereby accepts the foregoing assignment of the FHA Commitment for Insurance and related FHA-Insured Loan and assumes and agrees to bound by the terms and conditions of such FHA Commitment and related FHA-Insured Loan and to perform all of the duties and obligations on the part of the mortgagee to be performed thereunder.

Assignee further represents that its FHA identification number is **FHA Mortgagee No. 04951-0000-1.**

Continental Securities, LLC                           GMAC Commercial Mortgage Corporation

by: _____                           by: _____
Name: Robert P. Corp                                  Name: Dean W. Wantland
Title: Vice President                                 Title: Vice President

Date: June 5, 2001                                    Date: June 5, 2001

### Acknowledgment of Assignment by Borrower

The undersigned, being the borrower of the FHA Loan described in the foregoing FHA Commitment for Insurance, hereby acknowledges the foregoing assignment by Assignor to Assignee.

Date: June 5, 2001                                    LINREAL CORP.

                                                      by: _____
                                                          Eric D. Pleskow, President

### Approval of Assignment by HUD

The foregoing Assignment is hereby acknowledged and approved.

Date: June 5, 2001                                    Secretary of Housing and Urban Development
                                                      Acting by and through the Federal Housing Commissioner

                                                      by: _____
                                                          Authorized Agent

EXHIBIT

SJ 55



U.S. Department of Housing and Urban Development

**Buffalo Office**
465 Main Street
Buffalo, New York 14203-1780

JUN 1 2001

Ms. Patricia Maroney
Continental Securities, LLC
One Mony Plaza
Syracuse, NY  13202

Dear Ms. Maroney:

Subject:  Project No. 014-22019, Brylin Hospitals

As you requested in your letter of May 31, 2001, paragraph 4 of the Firm Commitment issued for the subject project on May 1, 2001, is hereby amended as follows:

"4.  The Mortgage shall bear interest at the rate of 7.40 percent per annum payable on the first day of each month on the outstanding balance of principal.  The first payment to principal (Commencement of amortization) shall be due not later than the first day of the second month following the date of endorsement of the Mortgage for insurance.  The Mortgage shall be payable on a level annuity basis by 420 monthly payments of principal and interest in the amount of $46,781.31.  The maturity and final payment date shall be 34 years and 11 months following the due date of the first payment to principal."

All remaining terms and conditions of the Commitment remain in full force and effect.

Sincerely,

Ralph M. Colosimo
Director, Project Management

D00015

U.S. Department of Housing and Urban Development

**Buffalo Office**
465 Main Street
Buffalo, New York 142

MAY 1  2001

RECEIVED

MAY – 7 2001

Continental Securities Corp.

Mr. Robert Corp
Continental Securities, LLC
One Mony Plaza
Syracuse, NY  13202

Dear Mr. Corp:

Subject:   Project No. 014-22019, Brylin Hospitals,
           Buffalo and Alden, NY

    Enclosed you will find an original and four copies of
the Form HUD 2453-MM, Commitment to Insure Upon
Completion, Section 232 pursuant to Section 223(f)),
Multifamily Accelerated Processing (MAP), in the amount of
$7,012,500.  Also enclosed are the Forms 92264 and revised
2264A for this property.  One copy of the Commitment and
the Forms 92264 and 2264A are for the use of the Sponsor.

    Your attention is invited to the various items of
this Commitment, and, in particular, the special
conditions enclosed.

    It is recommended that your attorney contact our
Counsel, Ms. Diane Schwach, at (716) 551-5755, extension
5202, to facilitate an early closing date and become
familiar with all legal requirements for closing.  Three
copies of the draft closing documents shall be sent to
this Office for review at least three weeks prior to the
date of the scheduled closing.

                    Sincerely,

                    Ralph M. Colosimo
                    Director, Project Management
                    Buffalo Multifamily Hub

Enclosures

*http://www.hud.gov/local/buf/bufofc.html*

D00016

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
FEDERAL HOUSING ADMINISTRATION

COMMITMENT TO INSURE UPON COMPLETION
SECTION 207
(Section 232 Pursuant to Section 223(f))

TO:

Continental Securities, LLC
(Mortgagee)

Project Number: 014-22019

One Mony Plaza
(Street)

Linreal Corporation
(Name of Sponsor(s))

Syracuse, NY  13202
(City and State)

Buffalo (Erie),   New York
(City, County, and State)

Linreal Corporation
(Name of Proposed Mortgagor)

DEAR SIRS:

We understand that you, as Mortgagee, have agreed to make a loan to _Linreal Corporation_ (hereinafter called the "Mortgagor"), in an amount not exceeding the sum of _seven million twelve thousand five hundred_ Dollars ($7,012,500 ) to be secured by a credit instrument and security instrument (hereinafter jointly called the "Mortgage") covering real property with existing building(s) thereon, (hereinafter called the "Project"), situated in the _County_ of _Erie_ and State of _New York_ at _1263 Delaware Avenue, Buffalo, and 1-1438 Genesee Street, Alden_ , as shown on the As-built Survey, Surveyor's Certificate, and legal description of the property.

It is your intention to present the said Mortgage to this Administration for mortgage insurance under the provisions of Section 207, Section 232 pursuant to Section 223(f) of the National Housing Act, and the Regulations thereunder now in effect.

The Federal Housing Commissioner acting herein on behalf of the Secretary of Housing and Urban Development hereby agrees to insure said Mortgage under the provisions of said Act and Regulations upon the following conditions:

1.       Upon endorsement of the Mortgage for insurance, repairs, if any, shall have been completed in accordance with the Work Write-up attached hereto as "Exhibit B" and the Specifications (and Drawings, if required) attached hereto as "Exhibit C" except as they may have been modified by changes formally approved in writing by the Commissioner before the changes are made.

2.       During the course of repairs, if any, the Commissioner and his representatives shall at all times have access to the property and the right to inspect the progress of the repairs. In addition, if required by the Commissioner, the Mortgagor will furnish at the Project site all necessary facilities for the use of the Commissioner's inspector such as, office space, use of a telephone, typewriter, etc. The inspection of the repairs by a representative or representatives of the Commissioner shall be for the benefit and protection of the Secretary of Housing and Urban Development. If deviations from the Work Write-up and Specifications (and Drawings, if applicable) or unsatisfactory workmanship or defective materials are not corrected to the satisfaction of the Commissioner prior to the completion of repairs, the Mortgage will not be considered eligible for insurance.

3.       Prior to endorsement of the Mortgage for insurance, the Mortgagor shall present to the Commissioner a title policy or title evidence in conformity with the Regulations above mentioned which shall show that title to the property on the date of endorsement of the Mortgage for insurance is vested in the Mortgagor free of all encumbrances other than said Mortgage and all exceptions to title (either junior or prior to said Mortgage) except such as are specifically determined to be acceptable by the Commissioner. The Mortgagor shall also furnish satisfactory proof that there exist no unpaid obligations contracted in connection with the Mortgage transaction, the purchase of the mortgaged property or refinancing of existing indebtedness, or the completion of the repairs, except such obligations as may be approved by the Commissioner. If such title evidence is in the form of a title insurance policy, it shall by its terms inure to the benefit of the Mortgagee and/or Secretary of Housing and Urban Development, as their interests may appear. If under the laws of the jurisdiction in which the Project is located the chattels and personal property of the Mortgagor required in the operation of the Project are not covered by and subject to the terms of the Mortgage, the Mortgagee must require and receive from the Mortgagor a chattel mortgage or such other security instrument as may be necessary covering such personal property and chattels.

4.       The Mortgage shall bear interest at the rate of _7.50_ percent per annum payable on the first day of each month on the outstanding balance of principal. The first payment to principal (Commencement of amortization) shall be due not later than the first day of the second month following the date of endorsement of the Mortgage for insurance. The Mortgage shall be payable on a level annuity basis by _420_ monthly payments of principal and interest in the amount of $47,281.26 . The maturity and final payment date shall be _34_ years and _11_ months following the due date of the first payment to principal.

5.       The credit instrument and the security instrument to be insured shall be in the form prescribed by the Commissioner for use in connection with Section 207 loans in the locality in which the property is situated.

D00017

FHA FORM NO. 2453-MM (6/75) (REVISED 3/94)

-2-

6.     The Mortgagor must possess the powers necessary for operating the Project and meeting all the requirements of the Commissioner for insurance of the Mortgage. Prior to endorsement of the Mortgage for insurance, there shall be filed with the Commissioner a copy of the instrument under which the Mortgagor entity is created (unless the Mortgagor is an individual) together with copies of all instruments or agreements necessary under the laws of the applicable jurisdiction to authorize execution of the Mortgage and the other closing documents, and a Regulatory Agreement or other instrument as will permit the Commissioner's regulation of the Mortgagor as to rents, charges and methods of operation. Such instrument shall provide, among other things, for the establishment of a Reserve Fund for Replacements by payment of $ 75,000  per annum to be accumulated monthly under the control of the Mortgagee, commencing on the date of the first payment to principal as established in the insured Mortgage unless a later date is agreed to by the Commissioner. In addition to the per annum amount required to be accumulated monthly under control of the Mortgagee for the Reserve Fund for Replacements, there shall be an initial deposit in the amount of $ 550,000  made to the Reserve Fund for Replacements by the Mortgagor prior to endorsement of the Mortgage for insurance.

7.     If any repairs are to be made to an existing Project which require additional sewer, water, gas or electrical facilities, evidence satisfactory to the Commissioner shall be submitted prior to endorsement of the Mortgage for insurance showing that adequate sewer, water, gas, and electrical facilities have been fully installed and that necessary public streets, sidewalks and curbing outside the Project site have been completed. All off-site facilities or utilities required by the special conditions under this commitment shall be included in such evidence.

8.     Prior the endorsement of the Mortgage for insurance, evidence shall be submitted to the Commissioner that the buildings, including electric wiring, plumbing, gas, and other appliances therein have been inspected and approved by all departments, boards, or agencies of the municipality, county or State, or other governmental bureaus or departments having jurisdiction thereof, and by the rating or inspection organization, bureau, association or body performing similar functions and that such certification as may be required with respect to the approval of the said buildings for occupancy and otherwise as may be required by the Commissioner have been issued to the Mortgagor.

9.     Prior to the endorsement of the Mortgage for insurance, the Commissioner shall be furnished with a current As-built survey duly certified to by a registered surveyor satisfactory to the Commissioner and an up-dated Surveyor's Certificate showing that there are no easements or encroachments upon the subject property except those approved by the Commissioner and that the improvements of the Project are contained upon the land covered by the Mortgage and within the building restriction lines, if any, on said land and do not encroach upon or overhang any land not covered by the Mortgage or beyond the said building restriction lines, if any, nor any easement or right-of-way. The survey shall also show the exact location of water, sewer, gas, and electric mains, and all easements for such utilities then existing.

10.    Upon endorsement of the Mortgage for insurance, the Mortgage must be current with respect to all payments required to be made by its terms, including all deposits required to be made with the Mortgagee for mortgage insurance premiums, fire, and other property insurance premiums, ground rents, water rates, taxes and other assessments; and there shall be in full force and effect fire and other property insurance as required by the insured Mortgage.

11.    Upon endorsement of the Mortgage for insurance, the Mortgagee shall pay to the Commissioner in advance, a mortgage insurance premium equal to one percentum of the principal amount of the insured Mortgage to cover the first mortgage insurance premium and shall continue to make payments thereafter as required by the aforesaid Regulations.

12.    In the case of a Project (1) on which construction was commenced prior to June 30, 1974, (2) which was completed prior to December 31, 1975, (3) on which an application was filed after completion and prior to December 31, 1975, and (4) which is less than one year old at the time of endorsement of the Mortgage for insurance, the Mortgagor shall furnish satisfactory evidence that the work of the General Contractor is covered by a guarantee acceptable to the Commissioner, running for a period of at least one year, following endorsement of the mortgage, against latent defects and faulty workmanship and defective materials in the construction of the building, which guarantee will be secured by (a) valid surety bond (FHA Form Number 3259) in an amount not less than ten percent (10%) of the cost of construction, running for a period of not less than two years following endorsement of the Mortgage, with Mortgagor and Mortgagee named as Obligees on the bond with the Mortgagee's interest assignable to the Commissioner; or (b) a sum equal to two and one-half percent (2 1/2%) of the face amount of the Mortgage to be held in escrow and subject to the control of the Mortgagee for a period of 15 months following endorsement of the Mortgage, which sum, upon failure of such corrections being made as are required by the Mortgagee or the Commissioner within said one year period, may be used by the Mortgagee, or its assigns, for making such required corrections or, with the consent of the Commissioner, may be applied to the last maturing installments of principal of the indebtedness evidenced and secured by the Mortgage.

13.    Prior to endorsement of the Mortgage for insurance, the Mortgagor must certify under oath that in selecting tenants for the property covered by the Mortgage, the Mortgagor will not discriminate against any family by reason of the fact that there are children in the family, unless the Commissioner determines that the Project is intended primarily for occupancy by the elderly or handicapped and is not compatible for occupancy by families with children, and that the Mortgagor will not sell the property while mortgage insurance is in effect unless the purchaser also so certifies and files such certification with the Commissioner.

14.    Prior to endorsement of the Mortgage for insurance, the Mortgagor must certify under oath that so long as the Commissioner has any interest in the Mortgage transaction no part of any building will be rented for a period of less than 30 days or operated in such a manner as to offer any hotel services to any tenant in the building or buildings; and that the property will not be sold so long as the Commissioner retains any interest therein, unless the purchaser files with the Commissioner a like certification executed by such purchaser under oath.

15.    Upon endorsement of the Mortgage for insurance, the Mortgagor(s) shall execute FHA Form 2476a "Escrow Agreement - Additional Contribution by Sponsors" showing the deposit of $-0-  in the form of cash, unconditional irrevocable letter of credit issued to the depository by a banking institution, or United States bearer bonds. In the event a demand under the letter of credit is not promptly met, the Mortgagee shall immediately provide the cash equivalent in the undrawn balance thereunder.

D00018

-3-

16.     The Mortgagor shall not be required to pay to the Mortgagee an initial service charge in excess of two percent (2%) of the original amount of the Mortgage.

17.     This commitment shall expire 60 days from the date hereof, unless extended by the Commissioner. Upon such expiration, all rights and obligations of the respective parties shall cease.   Prior to any extension of this commitment, the Commissioner may, at his/her option, reexamine the commitment to determine whether it shall be extended, shall be extended in the same amount, or shall be amended to include a lesser amount AND the Commissioner will determine whether there is sufficient credit subsidy available for reservation for this project.   You must proceed to (initial, initial/final) endorsement for this project within 60 days from the date of the reservation of credit subsidy for this project.

18.     Prior to the execution of any repair contracts relative to the subject Project, the Agreement and Certification Form Number _N/A_ shall be executed by the Mortgagor, Mortgagee, and Federal Housing Commissioner and the Mortgagor shall be bound thereby with respect to any subsequent contracts or subcontracts.   The commitment amount herein above is subject to appropriate reduction in accordance with the terms of the Agreement and Certification.

19.     A request for reopening received within ninety (90) days of its expiration must be accompanied by a reopening fee of $.50 per $1,000 of the amount of the expired commitment.

20.     It is a condition of this commitment that any change in sponsorship upon which this commitment was predicated must be indicated in writing by the Mortgagee on behalf of the proposed substitute sponsor(s) and such request must be approved in writing by the Commissioner.

21.     In the event that additional code requirements are imposed by any state or local authority, after the issuance of this commitment, that would cause the total cost of all required repairs to exceed fifteen percent (15%) of the total HUD/FHA estimate of value after repairs, this commitment shall be null and void.

SPECIAL CONDITIONS:

1.   Pursuant to Form HUD-2880, this commitment is based on owner certifications regarding the absence of Tax Credit or Other Government Assistance. If the owner's intentions subsequently change, and Tax Credit or Other Government Assistance is applied for, Form HUD-2880 must be updated, and HUD reserves the right to unilaterally alter any and all of its underwriting determinations, or revise the terms of its mortgage insurance commitment or regulatory agreement accordingly.

2.   Three copies of the draft closing documents shall be submitted to this Office at least three weeks prior to the scheduled closing date.

3.   All critical repairs as identified in Exhibit B must be completed prior to closing.

4.   A repair escrow in the amount of $ 411,728  must be established for the completion of the non-critical repairs totaling $274,485 as identified in Exhibit B.  All non-critical repairs must be completed within 12 months of closing.

5.   An Operating Lease exists between the Mortgagor, Linreal Corporation, and the Operator, Brylin Hospitals, Inc.  Both the mortgagor entity and the Operating entity will be required to execute a Regulatory Agreement at closing.

6.   The Organizational documents for both the Mortgagor entity and the Operating entity must be amended to include all of the required powers and restrictions.

7.   All recorded judgments for the Linreal Corporation and the Brylin Hospitals, Inc., must be removed from record prior to endorsement.

SECRETARY OF HOUSING AND URBAN DEVELOPMENT
BY:  FEDERAL HOUSING COMMISSIONER

Dated ___MAY 1   2001___      By ___Ralph En Cadosimo___
                                              Authorized Agent

EXHIBIT B   Part 1

| Project Name: Brylin Hospitals<br>Location: 1263 Delaware Avenue<br>Buffalo, NY | | | | |
|---|---|---|---|---|
| Immediate Critical (Health & Safety) Repairs (to be completed before closing) | | | | |
| **Section** | **Description of Repairs** | **Location** | **QTY** | **Replacement Cost** |
| E.5. | Repair concrete step and railing anchor | Main Hospital front stairway | 1 | $300 |
| F.3.b. | Replace torn carpet | Main hospital staff dining room, Rm. #B-19 | 350 sf | $525 |
| F.3.c. | Replace rotted window and frame with glass block window | Carriage House basement | 1 | $669 |
| G.3,H.10 | Asbestos abatement program | Main Hospital:  Radiant heaters in Stairwells: floors 1 to 4<br>Carriage House:  Basement insulation | 1 | 7,543 |
| G.5. | Replace Fire alarm system and detectors | Main Hospital | 1 | 37,195 |
| | | **Total Immediate critical (health & safety) Repairs** | | **$46,232** |

| Note:  All repair costs include applicable State and Local taxes<br>Inflation Factor = 3% per year | Above adjusted to reflect sponsor obtained quotes for the work<br>.vs. – PIR estimates |
|---|---|

Page 1 of 3

4/24/01

D00020

| | Project Name: Brylin Hospitals<br>Location: 1263 Delaware Avenue<br>Buffalo, NY | | | |
|---|---|---|---|---|
| Non -Critical Repairs (within first year after closing) | | | | |
| **Section** | **Description** | **Location** | **QTY** | **Replacement Cost** |
| D.5. | Install Chain link fence | Linwood Lot | 1 | $13,000 |
| E.3 | Replace missing downspouts | Carriage House | 100 lf | $200 |
| E.3 | Replace gutters | Carriage House | 200 lf | $400 |
| E.5 | Replace ramp railing | Main Hospital entrance ramp | 75 lf | $1,050 |
| E.5. | Replace delaminated stair treads in 3 stairways | Main Hospital | 1 | $400 |
| F.3.c | Replace rotted window and frame with glass block window | Carriage House basement | 2 | $1,000 |
| F.4. | Install wall and floor padding in 1st floor seclusion room | Main Hospital | 1 | $23,265 |
| F.4. | Repair stained ceilings and loose plaster in ceilings of rooms B-22 and B-11 | Main Hospital basement | 2 | $600 |
| G.3. | Repair fin tube radiator in stairway #1 | Main Hospital basement | 1 | $200 |
| D.3. | Patch and seal asphalt drives & parking lot | Parking lot | 1 | $1,000 |
| D.3. | Replace ramp curbs | Main Hospital entrance ramp | 75 lf | $450 |
| D.3. | Replace ramp curb lights | Main Hospital entrance ramp | 8 | $1,200 |
| D.3. | Replace missing lamppost | Parking lot | 1 | $800 |
| D.3. | Straighten bent lamppost | Parking lot | 1 | $300 |
| E.2. | Repair stucco façade | Main Hospital front portico | 1 | $18,000 |
| E.3 | Repair loose slate roof shingles | Administration Building | 100 sf | $600 |
| E.3 | Patch roof sheathing | Carriage House | 100sf | $1,000 |
| E.3 | Replace missing Spanish roof tiles | Carriage House | 100 sf | $800 |
| E.7. | Upgrade the elevator control panels | Main Hospital | 1 | $11,000 |
| G.10 | Security system upgrade | Main Hospital | 1 | $16,200 |

Page 2 of 3

4/24/01

D00021

Project Name: Brylin Hospitals
Location: 1263 Delaware Avenue
Buffalo, NY

Non -Critical Repairs (within first year after closing)

| Section | Description | Location | QTY | Replacement Cost |
|---------|-------------|----------|-----|------------------|
| G.9 | Nurse Emergency Call system | Main Hospital 2nd & 3rd floors | 1 | $35,000 |
| D.3. | Replace spalled concrete sidewalks | Administration Building | 375 sf | $1,500 |
| D.3. | Replace spalled concrete sidewalks | Main Hospital Building | 1550 sf | $6,200 |
| E.3. | Replace roof shingles | Main Hospital front portico | 1 | $3,000 |
| F.1. | Replace partitions in Women's and lobby restrooms | Main Hospital 3rd floor | 1 | $3,200 |
| F.3.c. | Replace rotted doors & frames on exits #2, #7 | Main Hospital | 2 | $2,700 |
| G.3. | Replace control valves on HVAC radiators in stairways and halls | Main Hospital | 1 | $6,000 |
| D.5. | Replace emergency generator shed | Main Hospital rear | 1 | $10,000 |
| E.2. | Repoint Brick Chimney | Administration Building | 1 sf | $3,500 |
| E.2. | Repoint Brick Chimney | Carriage House | 1 sf | $3,000 |
| F.3.c. | Replace rotted door at front entrance | Administration Building | 2 | $3,600 |
| F.3.e. | Replace cabinets in pantry | Main Hospital 3rd floor | 1 | $3,500 |
| F.4. | Replace ceramic tile walls in dish room | Main Hospital | 1 | $3,200 |
| D.3 | Parking lot replacement and leveling of all storm receivers | Parking lot | 1 | $24,800 |
| D.5. | Demolish & dispose of abandoned incinerator | North side of Carriage House | 1 | $5,000 |
| | | **Total Immediate Non-Critical Repairs** | | **$205,665** |

Page 3 of 3

4/24/01

D00022

EXHIBIT B (Part 2)

| Project Name: Brylin Hospitals<br>Location: 11438 Genesee Street<br>Alden, NY | | | | |
|---|---|---|---|---|
| **Immediate Critical (Health & safety)  Repairs (to be completed before closing)** | | | | |
| **Section** | **Description** | **Location** | **QTY** | **Replacement Cost** |
| F.3.c. | Replace broken sash in 2nd floor stairway window, north side | Main Hospital | 1 | $200 |
| F.4 | Replace water stained ceiling tiles in group conference room | Administration Building | 1 | $300 |
| F.4 | Replace missing ceiling tiles in 1st floor bathroom | Administration Building | 1 | $200 |
| F.4 | Replace missing ceiling speaker cover in the hallway outside room 612 | Main Hospital | 1 | $200 |
| F.4 | Replace broken ceramic tile wall in the kitchen, rear corner wall | Main Hospital | 1 | $200 |
| F.4 | Replace broken ceramic tile in men's bathroom opposite room 609 | Main Hospital | 1 | $600 |
| E.3 | Roof:  Asphalt shingles | Administration Building | 5,000 sf | $6,000 |
| | | **Total Immediate Critical Repairs** | | $7,700 |

Page 1 of 2                                                                                     4/24/01

D00023

Project Name: Brylin Hospitals
   Location: 11438 Genesee Street
            Alden, NY

Non Critical Repairs (within first year after closing)

| Section | Description | Location | QTY | Replacement Cost |
|---------|-------------|----------|-----|------------------|
| D.3 | Patch and seal blacktop driveway near garbage dumpsters | East Driveway | 1 | $5,000 |
| D.3 | Seal all asphalt pavements | East and west lots | 20,800 sf | $3,120 |
| G.10 | Security system upgrade | Main Hospital | 1 | $30,000 |
| D.5 | Repair roof of storage trailers | East side of hospital building | 1 | $1,500 |
| F.3.c | Replace north entrance door, main entrance | Main Hospital | 1 | $6,000 |
| F.3.c | Replace exit doors and window panels | Administration Building | 1 | $7,000 |
| G.1. | Regrade leach field for the Septic System | Leach field in rear of parcel | 1 | $10,2000 |
| E.3. | Replace upper story roof | Administration Building | 1 | $6,000 |

                                    **Total Immediate Non-Critical Repairs**      **$68,820**

Page 2 of 2                                                                    4/24/01

D00024

# Health Care Facility
# Summary Appraisal Report

| | |
|---|---|
| ☐ SAMA | U.S. Department of Housing |
| ☐ Feasibility  (Rehab) | and Urban Development |
| ☒ Firm | Office of Housing |
| | Federal Housing Commissioner |

Skilled Nursing Facility (SNF)  Intermediate Care Facility (ICF)

Board and Care Facility (B&CF)  Assisted Living Facility (ALF)

| Property Rights Appraised:<br>☐ Other  ☒ Fee Simple | Project Name:  *232/223F – EXISTING*<br>*BRYLIN HOSPITALS* | Date<br>*11/22/00* | Project Number: |
|---|---|---|---|

Purpose: FHA Appraisers evaluate the subject property as security for a long-term insured mortgage. Included in the appraisal are the Appraiser's analyses of market need, location, earning capacity, expenses, taxes and warranted cost of the property. This form summarizes the FHA appraisal analyses and conclusions. Scope: The Appraiser has developed, and hereunder reports, conclusions with respect to: feasibility; suitability of improvements; extent, quality and duration of earning capacity; the value of real estate proposed or existing as security for a long-term mortgage; and several other factors which have a bearing on the economic soundness of the property.

## A. LOCATION AND DESCRIPTION OF PROPERTY:

| 1. Street Numbers  *1263 DELAWARE AVE.*<br>*11438 GENESEE STREET* | 2. Municipality  *BUFFALO*<br>*ALDEN* | 3. County<br>*ERIE* | 4. State<br>*NEW YORK* |
|---|---|---|---|

| 5. Type of Project: | 6. Gross | 7. Number | 8. Number of Beds or Units | 9. Average Monthly | 10. Average Other Monthly |
|---|---|---|---|---|---|
| ☒ Elevator | Floor Area | Bldg/Floors | SNF *0*  ICF *0* | Charges Per Bed | Charges Per Bed |
| ☐ 1 Story | *69,076/26,905* | *4 / 2* | B&CF *88 / 62*  AL *0* | | |

| 11. ☒ Existing  ☐ Rehab<br>☐ Proposed | 12. Year Built<br>*1968/1951* | 13. Accessory Buildings<br>*MULTIPLE BLDGS. AT BOTH SITES – SEE NARRATIVE* |
|---|---|---|

| Site Information | 14. Dimensions (SF):  ☐ Square Feet  or  ☒ Acres  *1.87/35.40 Acres* | 15. Zoning: (If recently changed submit evidence)<br>*DEL: R-4 (Apt.), ALDEN: R/C&R/H* |
|---|---|---|

| Building Information | 16. Structural System<br>*BOTH MASONRY* | 17. Exterior Finish<br>*BRICK/DRYVIT* | 18. Heating-A/C System<br>*HOT WATER RADIANT* |
|---|---|---|---|

## B. INFORMATION CONCERNING LAND OR PROPERTY

| 19. Date Acquired<br>*N/A* | 20. Purchase<br>Price<br>*N/A* | 21. Additional Cost Paid or Accrued | 22. Annual Ground Rent | 23. Total Cost<br>*N/A* | 24. Relationship between<br>Seller and Sponsor |
|---|---|---|---|---|---|

| 25. Utilities: | Public | Community | Distance From Site | 26. | Unusual Site Features | |
|---|---|---|---|---|---|---|
| | | | | ☐ Cuts | ☐ High Water table |
| | | | | ☐ Fills | ☐ Retaining Wall(s) |
| Water | ☒ | ☐ | AT SITE | ☐ Rock Formations | ☒ None |
| | | | | ☐ Erosions | ☐ Other (Specify) |
| Sewer | ☒ | ☐ | AT SITE | ☐ Poor Drainage | |

| 26a. Special<br>Assessments: | ☐ Prepayable<br>☐ Non-Prepayable | (2) Principal Balance: | (3) Annual Payment | (4) Remaining Term:<br>Years |
|---|---|---|---|---|

## C. ESTIMATE OF INCOME

| Type of Room<br>or Unit | Number of Beds or units | | | | Estimated Rate Monthly | | | | Mnthly Inc @<br>100% Occ. |
|---|---|---|---|---|---|---|---|---|---|
| | SNF | ICF | B&CF | ALF | SNF | ICF | B&CF | ALF | |
| *SEE ATTACHED* | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

\* Jurisdictional Exception: FHA underwriting standards require recognition of the fact that defined percentages of public reimbursement and private pay are sustainable in stabilized operations, and will generally be assumed in income estimation.

| 27. TOTAL MONTHLY INCOME FROM BEDS AND UNITS | | $1,442,534 |
|---|---|---|
| Other Income (List)  *(NET)* | | |
| *OUTPATIENT* | $79,583 | |
| *LAB* | $16,667 | |
| *RADIOLOGY/PHARMACY* | $54,166 | |
| *MISCELLANEOUS/ANCILLARY* | $35,417 | |
| 28. Total Other Income | | $185,333 |
| 29. Total Monthly Income – All Sources | | $1,628,367 |
| 30. Total Estimated Annual Gross Project Income at 100% Occupancy  *(not shown above)* | | $19,540,404 |
| 31. Number of Non-Revenue Producing Units for Employees  (not shown above) | | |

\* Gross for inpatient, net for other sources.  Page 1 of 6

form HUD-92264-HCF (6/95)

ref Handbooks 4480.1 & 4600.1

D00025



*Revenue Analysis*

*Delaware Ave./Psych*

| Payor Type | Percent | Beds | Rate/day | Days | Total Revenue | Monthly Revenue |
|---|---|---|---|---|---|---|
| Private | 1.70% | 1.5 | $ 685 | 548 | $ 375,038 | $ 31,253 |
| Medicare | 37.00% | 32.5 | $ 315 | 11863 | $ 3,736,688 | $ 311,391 |
| Medicaid | 25.00% | 22 | $ 250 | 8030 | $ 2,007,500 | $ 167,292 |
| Commercial | 36.30% | 32 | $ 480 | 11680 | $ 5,606,400 | $ 467,200 |
| *Totals* | 100.00% | 88 | $ 365 | | $ 11,725,625 | $ 977,135 |

*Occupancy Level/Net Revenue*        57% $ 6,683,606

*Alden/Substance*

| Payor Type | Percent | Beds | Rate/day | Days | Total Revenue | Monthly Revenue |
|---|---|---|---|---|---|---|
| Private | 1.00% | 0.62 | $ 1,540 | 226 | $ 348,502 | $ 29,042 |
| Medicare | 0.00% | 0 | $ - | 0 | $ - | $ - |
| Medicaid | 80.45% | 49.88 | $ 200 | 18206 | $ 3,641,240 | $ 303,437 |
| Commercial | 18.60% | 11.5 | $ 380 | 4198 | $ 1,595,050 | $ 132,921 |
| *Totals* | 100.05% | 62 | $ 241 | | $ 5,584,792 | $ 465,399 |

*Total Monthly Revenue\**        $ 1,442,534

*Occupancy Level/Net Revenue*        87% $ 4,858,769

*Total Revenue-Inpatient*        $ 11,542,375

| | |
|---|---|
| Outpatient | $ 955,000 |
| Laboratory | $ 200,000 |
| Radiology | $ 325,000 |
| Pharmacy | $ 325,000 |

*Subtotal-Revenue*        $ 13,347,375

*Miscellaneous/Ancillary*        $ 425,000

*Total Revenue*        $ 13,772,375

\* Both locations for inpatient prior to vacancy for application to HUD form 92264

D00026

**D. PAYROLL (SALARIES)**      12/22/00      Project Number      01/00/00

| Position | Number | Monthly Rate | Total Annual | Position | Number | Monthly Rate | Total Annual |
|---|---|---|---|---|---|---|---|
| ADMINISTRATIVE | | | | HOUSEKEEPING | | | |
| GENERAL | 33.4 | | $1,500,000 | | | | |
| NURSING | 12.6 | | $450,000 | | | | |
| | | | | | | | |
| 32. TOTAL ADMINISTRATIVE | | | $1,950,000 | 35. TOTAL HOUSEKEEPING | | | $ |
| BUILDINGS & GROUNDS | | | | NURSING SERVICE | | | |
| OP/MAINT. | 8.6 | | $350,000 | DAILY PATIENT | 88.6 | | $3,185,000 |
| MAINT./SEC. | 2 | | $40,000 | OUTPATIENT | 19.3 | | $650,000 |
| MISCELLANEOUS | 6.5 | | $170,000 | OTHER | 7 | | $210,000 |
| 33. TOTAL BUILDINGS & GROUNDS | | | $560,000 | 36. TOTAL NURSING SERVICE | | | $4,045,000 |
| DIETARY | | | | OTHER SALARIES | | | |
| DELAWARE | 10.5 | | $270,000 | PHARMACY | 1.5 | | $120,000 |
| ALDEN | 4.1 | | $75,000 | MED. RECORDS | 6 | | $180,000 |
| | | | | | | | |
| 34. TOTAL DIETARY | | | $345,000 | 37. TOTAL OTHER SALARIES | | | $300,000 |
| 38. ESTIMATED ANNUAL SALARIES | (sum of lines 32 through 37) | | | | | | $7,200,000 |

**E. ESTIMATE OF OPERATING DEFICIT**

| Periods | | Gross Income | Occupancy % | Effective Gross | Expenses | Net Income | Debt Service | Deficit |
|---|---|---|---|---|---|---|---|---|
| 39. | 1st | | | | | | | 0 |
| 40. | 2nd | | | | | | | 0 |
| 41. TOTAL OPERATING DEFICIT | | | | | | | | |

**F. Estimated Annual Operating Expenses**

| Administrative- | | | |
|---|---|---|---|
| 1. Telephone & Telegraph | $135,000 | | |
| 2. Advertising | $50,000 | | |
| 3. Insurance & Liability | $120,000 | | |
| 4. License or Permit | $25,000 | | |
| 5. Legal & Audit | $100,000 | | |
| 6. Miscellaneous | $257,000 | | |
| 7. Office Expense | $82,000 | | |
| 8. Total Administrative | | $769,000 | |
| | | | |
| Building and Grounds- | | | |
| 9. Decorating - Interior & Exterior | $ | | |
| 10. Heating | | | |
| 11. Electricity | $280,000 | | |
| 12. Water | | | |
| 13. Gas | | | |
| 14. Garbage Removal | | | |
| 15. Insurance | | | |
| 16. Supplies | | | |
| 17. Maintenance & Repairs | $60,000 | | |
| (Bldg. and Realty Items) | | | |
| 18. Ground Expenses | | | |
| 19. Miscellaneous | | | |
| 20. Exterminating | | | |
| 21. Total Building and Grounds | | $340,000 | |
| | | | |
| Dietary- | | | |
| 22. Supplies | $110,000 | | |
| | | | |
| 23. Food Costs | $330,000 | | |
| 24. Total Dietary | | $440,000 | |

| Housekeeping- | | | |
|---|---|---|---|
| 25. Supplies | $10,000 | | |
| 26. Laundry | | | |
| 27. Other | | | |
| 28. Total Housekeeping | | | $10,000 |
| | | | |
| Nursing Service- | | | |
| 29. Supplies | $50,000 | | |
| 30. Drugs | $230,000 | | |
| 31. Professional Fees | $1,140,000 | | |
| 32. Total Nursing Service | | | $1,420,000 |
| Other Expenses- | | | |
| 33. Director Fee | $325,000 | | |
| 34. Purch. Services | $545,000 | | |
| 35. Rent - Clinics | $225,000 | | |
| 36. Total Other Expenses | | | $1,095,000 |
| 37. Total Salaries (Line D-38) | | | $7,200,000 |
| 38. Replacement Reserve (Realty)(.0060 x Line H-8) | | | $37,500 |
| 39. Expenses (Less Taxes) | | | $11,311,500 |
| Taxes- | | | |
| 40. Real Estate Est. Assessed Value | | | |
| $____@$____ Per $1,000 | $135,000 | | |
| 41. Personal Property Assessed Value | | | |
| $____@$____ Per $1,000 | | | |
| 42. Employee Payroll Tax | $500,000 | | |
| 43. Employee Social Security | | | |
| 44. Other Benefits | $671,500 | | |
| 45. Total Taxes/Benefits | | | $1,306,500 |
| 46. Replacement Reserve (Non-Realty)(.10 x H-36) | | | $37,500 |
| 47. Total Estimated Annual Operating Expenses | | | |
| (Lines 39 + 45 and 46) | | | $12,655,500 |

     form HUD-92264-HCF (6/95)

D00027

**G. Estimate of Net Returns**

| | | 12/22/00 | | Project Number |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| 1. Annual Gross Earnings Expectancy (inpatient only) | | 5. Net Return Available for Proprietary Earnings, Realty | |
| (From C-30) | $17,310,417 | and Major Moveable Equipment (Line G-3 Other - minus Line G-4) | $1,117,086 |
| 2. Predicted Occupancy Ratio    66.68% * | | 6. Estimated Net Earnings Attributable to Realty | |
| 3. Effective Annual Gross Income (Line G-1 x 2) | $11,542,586 | and Major Moveable Equipment (Line K-7) (15%)* | $949,523 |
| ADD: Other (Net) | $2,230,000 | | |
| 4. Estimated Total Annual Operating | | 7. Residual Proprietary Earnings    (Line G-5 minus Line G-6) | ($167,563) |
| Expense (From F-47) | $12,655,500 | | |

* Jurisdictional Exception: May be limited by FHA Underwriting assumptions.

**H. Estimated Replacement Cost**

| | | | | | |
|---|---|---|---|---|---|
| 1. Unusual Land Improvements | | | **Carrying Charges and Financing** | | |
| 2. Other Land Improvements | 450,000 | | 20. Int.          Months @ | | |
| 3. Total Land Improvements | | $450,000 | on          #REF! | Included | |
| 4. Structures-Gross Floor Area Sq. Ft. | See narrative | | 21. Taxes | Included | |
| 5. Main Building - Delaware | 7,279,823 | | 22. Insurance | Included | |
| 6. Other - Alden | 3,445,185 | | 23. FHA Mtg. Insurance Premium    (    0.5% ) | 63,995 | |
| 7. Basement | 823,979 | | 24. FHA Exam Fee    (    0.3% ) | 38,397 | |
| 8. Total Structures | | $11,548,987 | 25. FHA Inspection Fee    (    0.5% ) | 63,995 | |
| 9. General Requirements    % | Included | | 26. Financing Fee    (    2% ) | 255,980 | |
| **Fees:** | | | 27. AMPO (N.P. only)    (    0.0% ) | 0 | |
| 10. Builder's General Overhead | | | 28. FNMA/GNMA Fee    (    1.5% ) | 191,985 | |
| @ | Included | | 29. Title and Recording | 200,000 | |
| 11. Builder's Profit | | | | | |
| @ | Included | | 30. Total Carrying Charges and Financing | | $814,352 |
| 12. Architect Fee - Design | | | **Legal and Organization:** | | |
| @ | Included | | 31. Legal | 50,000 | |
| 13. Architect Fee - Supervision | | | 32. Organization | 20,000 | |
| @ | Included | | 33. Cost Certification Audit Fee | 20,000 | |
| 14. Bond Premium | Included | | 34. Total Legal and Organization | | $90,000 |
| 15. Other Fees | 350,000 | | 35. Developer's Fee  (Non-Profit only) | | 0 |
| 16. Total Fees | | $350,000 | 35a. Contingency Reserve (Rehab Only) | | 0 |
| 17. Total For All Imprvmts (Lines 3 + 8 + 9 + 16) | | $12,348,987 | 36. Major Moveable Equipment (Non-Realty) (Depreciated) | | 1,545,789 |
| 18. Cost Per Gross Sq. Ft. | $128.66 | | 36a. Pre-Marketing Expense | | 0 |
| 19. Estimated Construction Time | 12 | Months | 37. Total Est. Development Cost (Lines 17+30+34+35+36) | | $14,799,128 |
| | | | 37a. Depreciation    (Line 37 times    44.00%    ) | | $6,511,616 |
| | | | 37b. Total Estimated Development Cost less Depreciation | | $8,287,512 |
| | | | 38a. Off-Site Costs (Rehab only) | | N/A |
| * FHA New Construction Underwriting requires that the site be valued assuming | | | 38. Warranted Price of Land (J-14(3))  (* See note at left) | | |
| that: 1) all off-site improvements are completed and 2) the site will be used for | | | 1.87/35.40  Sq. ft. @    $0.00  per sq ft | | $343,500 |
| its intended Care Facility use (not necessarily its highest and best use). | | | 39. Total Estimated Replacement Cost of Project as Depreciated | | |
| | | | (Add lines 37b, 38, 38a) | | $8,630,000 |

**I. Remarks**

The Marshall Valuation Sevice costs included as part of the base costs many of the segmented items (incl.). See narrative for details (text and addendum).
Other fees are associated with lease-up and premarketing for a facility of this nature, and certain soft costs not included in Marshall Valuation.


* Based on HUD guidelines, see narrative for additional details.
The occupancy ratio reflects a blend applied separately to the two locations; 57% for Delaware Ave. and 87% for Alden.
The other revenue was obtained in detail on the revenue analysis sheet presented earlier, and includes outpatient, lab, radiology/
pharmacy and miscellaneous.

form HUD-92264-HCF (6/95)

D00028

**Project Site Analysis and Appraisal**  | 12/22/00 | Project Number

| | 6. | X | Site Acceptable for type of Project Proposed under Section 232. |
|---|---|---|---|

s Location and Neighborhood Acceptable?  [X] Yes  [ ] No

s Site adequate in Size for Proposed Project?  [X] Yes  [ ] No  (If checked, acceptance subject to qualifications listed below)

s Site Zoning Permissive for Intended Use?  [X] Yes  [ ] No

7. [ ]  Site not acceptable for reasons stated below.

Date of Inspection

re Utilities Available Now to Serve the Site?  [X] Yes  [ ] No

*11/8/2000*

s there a Market at this Location for the

acility at the Proposed Rate Charges?  [X] Yes  [ ] No   By

M. Scott Allen

Value Fully Improved | Location of Project | Size of Subject Site

*1263 DELAWARE AVE., BUFFALO, NY*
*11438 GENESEE ST., ALDEN, NY*

| | | | | 1.87/35.40 AC | Sq. Ft. |
| | | | | 0 | Beds |

| Comparable Sales Address | Date of Sale | Sales Price | Size Sq. Ft. | Price Sq. Ft. | Adjustments (%) | | | | | | | Total Adj. Factor | Adjusted Sq. Ft. Price | Indicated Value by Comparison |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Time | Location | Zoning | Plottage | Demolition | Topogr | Other | | | |
| SEE NARRATIVE | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |

narks

9.  **Value of Site Fully Improved** _____

Value "As-Is"

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |

Note:

11.  **Value of Site "As-Is" by Comparison** _____

**Acquisition Cost:**  (Last Arms-Length Transaction)

| | Address: |
|---|---|

ver | Address:

ler | 

e | Price:

rce

**Other Costs**

| Legal Fees and Zoning Costs | 0 |
|---|---|
| Recording and Title Fees | 0 |
| Interest on Investment | |
| Other | 0 |
| Acquisition Cost (From "12" Above) | N/A |
| Total Cost to Sponsor | |

nments:

SEE MIKE DODDS' APPRAISAL FOR COMPLETE DISCUSSION OF COMPARABLES, ADJUST

**14. Value of Land and Cost Certification:**

(1) Fair Market Value of Land Fully Improved (From "9" above)  _____

(2) Deduct Unusual Items Included in Section H, Item 1  _____

(3) Warranted Price of Land Fully Improved (Replacement Cost items excluded)(Enter H-38)  _____

For Cost Certification Purposes -

(3a) Deduct Cost of Demolition:   0   and required offsites
0  to be paid by Mtgor or by special assessments

(4) Estimate of "As Is" by subtraction from Improved value  _____

(5) Estimate of "As Is" by direct comparison with similar unimproved sites (From "11" above)  _____

(6) "As Is" based on acquisition cost to Sponsor (From "13" above)  _____

(7) Commissioner's estimated value of land "As Is" (The lesser of 4 or 5 above) *  _____

* Where Land is purchased from LPA or other Government authority for specific reuse lesser of 4, 5 or 6.  _____

form HUD-92264-HCF (6/95)

D00029

**K. Estimate of Value by Capitalization**                    12/22/00                    Project Number

1.  Estimated Remaining Economic Life _____ 50 _____ Yrs.        4. Value of Leased Fee (if any)

2.  Capitalization Rate Determined By:

     ☐ Cash Flow from Equity      ☐ Debt Coverage Ratio      Ground Rent _____ divided by Cap.

     ☒ Rate From Band of Investment      ☒ Overall Rate From      Rate _____ = Value of Leased Fee

        (Add Recapture)        Comparable Projects      Fee $ _____

3.  Capitalization Rate Selected      11.50%

5.  Net Return to Realty & Major Moveable Equipment based on Leased Care Facility data (Excluding Proprietary Income)

| Address of Leased Care Facility | No. of Beds | Rent Realty Only PBPA | $ Lump Sum Adjustment PBPA | | Adj. Net Return to Realty and Non-Realty PBPA |
|---|---|---|---|---|---|
| | | | Return on Equipment | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

6.  Net Return to Realty and Major Moveable Equipment for Subject PBPA      $6,330.15

7.  Line K-6 x No. of Beds= Total Return Realty and Major Moveable Equipment (Excluding Proprietary Income)(Enter on Line G-6)      $949,523

8.  Net Return (Line K-7) / Overall Cap. Rate (Line K-3)   =   **Estimated Value of Property by Capitalization**      $8,250,000
                                                      **(Excluding Proprietary Income)**

mparable Leased Nursing Homes in Section K which are Hud insured must include Regulatory agreement Form HUD-92466 (NHL) in the file. Comparable leased Nursing Homes in Section K which are not HUD insured

must include in the file verification by the Appraiser from the lessor or the lessee that there is no identity of interest between lessee and lessor, and that the lease payments for realty and major moveable equipment to be paid

to lessor do not include proprietary income.

Remarks:

     SEE NARRATIVE FOR DETAILED DISCUSSION OF PROPRIETARY INCOME

| Address of Comparable Sale | Date | Sale Price | Number Beds | Sales Price Per Bed | Gross Inc. Per Bed | Gross Inc. Multiplier | AGE | ECO. | SALE | TIME | Indicated Price/Bed |
|---|---|---|---|---|---|---|---|---|---|---|---|
| *See narrative for details* | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

9.  Subject Gross Income Per Annum _____ x GIM

10a. Or: Number of Beds _____ 0 _____ x  Ind. Price _____ = Indicated Value of Subject by Comparison, Including Proprietary Earnings

10b. Value by Comparison, Excluding Proprietary Earnings ((Line K-7 divided by Line G-5 ) times Line L-10a)

Remarks:  * The Appraiser must comment on any prior sale of the subject within three years of the date of this processing.

                               SEE NARRATIVE FOR DETAILED DISCUSSION OF SALES COMPARABLES

**M. Appraisal Summary**

11.  Capitalization _____ $8,250,000      Summation _____ $8,630,000      Comparison _____ $8,100,000

    (Excluding Proprietary Income)

12.  **The Fair Market Value of the Property as of Date of Valuation is **      $    8,250,000

**N. Reserved**

**O. Total Estimated Cost of Off-Site Requirements**

Off-Site                                                     Estimated Cost

Total Off-Site Costs                                                        $0

     ** Care Facility property is not necessarily valued for its "highest and best use" but instead for its intended insured use. New construction is valued prospectively upon completion and Substantial Rehabilitation proposals are valued

         After Rehabilitation". Existing facilities being purchased are valued hypothetically "including Repairs" as of the date of the appraisal.

form HUD-92264-HCF (6/95)

**P. Remarks, Conclusions and Signatures**

D00030

Remarks, Conclusions and Signatures

| Cost Processor | Date | | |
|---|---|---|---|
| Architectural Processor | Date | Architectural Reviewer | Date |

### Appraiser's Certification

I certify that to the best of my knowledge and belief:

o  the statements of fact contained in this summary report are true and correct.

o  the reported analyses, opinions and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal unbiased professional analyses, opinions and conclusions.

o  I have no present or prospective interest in the property that is the subject of this report and I have no personal interest or bias with respect to the parties involved.

o  my compensation is not contingent upon the recording of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result or the occurrence of a subsequent event (other than the effects on value caused by FHA underwriting criteria already noted above).

o  my analyses, opinions and conclusions were developed, and this report has been prepared in conformity with the Uniform Standards of Professional Appraisal Practice and HUD Handbooks 4465.1, 4600.1 and 4480.1.

o  I have made a personal inspection of the property that is the subject of this report. (This may not apply to Valuation Reviewer signing below.)

o  no one provided significant professional assistance to the person signing this report, except for Architectural and Engineering and Cost Estimation professional signing above.  These professionals' estimations of the subject property's dimensions and "hard" replacement costs have been relied upon by the Appraiser and Review Appraiser.

| Appraiser | State Certified General Number | | Date | (See Note at bottom of page) |
|---|---|---|---|---|
| M. _____ | 46-1454 | | 1/12/01 | |
| Chief, Production Branch, Multifamily Housing Division   Date | | Director, Housing/Multifamily | | Date |
| Robert A. Sivus    2-15-01 | | Ralph _____ | | 5-1-01 |

Critical/Immediate Noncritical Repairs:

```
Buffalo  -  Critical                 $ 46,232
            Immediate Noncritical      205,665

Alden    -  Critical                     7,700
            Immediate Noncritical        68,820
                                      $328,417
```

See Attached for details

Note: The Appraiser may initial and date only those pages of this report for which he/she neither signature is authorized.

Arbor National Commercial Mortgage, LLC                    Page 8 of 8                    form HUD-92264-HCF (6/95)

D00031

SUPPLEMENT TO PROJECT ANALYSIS

**U.S. DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT
OFFICE OF HOUSING**

SECTION/TITLE:          232/223(f)                                    PROCESSING STAGE:   Firm

PUBLIC REPORTING BURDEN FOR THIS PROJECT ANALYSIS IS ESTIMATED TO AVERAGE 16 HOURS PER RESPONSE, INCLUDING THE TIME FOR REVIEWING INSTRUCTIONS, SEARCHING EXISTING DATA SOURCES, GATHERING AND MAINTAINING THE DATA NEEDED, AND COMPLETING AND REVIEWING THE COLLECTION OF INFORMATION.  SEND COMMENTS REGARDING THIS BURDEN ESTIMATE OR ANY OTHER ASPECT OF THIS COLLECTION OF INFORMATION, INCLUDING SUGGESTIONS FOR REDUCING THIS BURDEN, TO THE REPORTS MANAGEMENT OFFICER, OFFICE OF INFORMATION POLICIES AND SYSTEMS, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, WASHINGTON, D.C.  20410-3600 AND TO THE OFFICE OF MANAGEMENT AND TO THE OFFICE OF MANAGEMENT AND BUDGET, PAPERWORK REDUCTION PROJECT (2502-0331), WASHINGTON, D.C.  20503.
DO NOT SEND THIS COMPLETED FORM TO EITHER OF THESE ADDRESSES.

NAME OF MORTGAGOR:   LINREAL CORPORATION                          PROJECT NUMBER:

PROJECT NAME:       BRYLIN HOSPITALS

LOCATION:           1263 DELAWARE AVE, BUFFALO, NY & 11438 GENESEE STREET, ALDEN

TYPE OF BORROWER:
☑ Private    ☑ Profit    ☐ Public              ☐ Non-Profit          ☐ Instrumentality, etc.
☐ Management Group   ☐ Sales Coop.   ☐ Investor-Sponsor   ☐ Builder/Seller   ☐ Limited Distribution

TYPE OF PROJECT:
| | | |
|---|---|---|
| ☐ RENTAL HOUSING | ☑ SPECIALIZED USE FACILITY | ☐ -NEW CONSTRUCTION ☐ NON- ELEVATOR |
| ☐ -COOPERATIVE | ☐ -INTERMEDIATE CARE FACILITY | ☐ -REHABILITATION ☐ ELEVATOR |
| ☐ -CONDOMINIUM | ☐ -HOUSING FOR THE ELDERLY | ☐ -REDEVELOPMENT ☑ EXISTING |
| ☐ -SINGLE RM OCCUPANCY | ☐ -MOBILE HOME COURT | ☐ -SUPPLEMENT LOAN    REFINANCE |
| ☐ -BOARD AND CARE | ☐ -CAPITAL ADVANCE 202/811 | ☐ -GROUP HOME |

I: DETERMINATION OF MAXIMUM INSURABLE MORTGAGE

| CRITERIA | | (COL. 1) | (COL. 2) | $ (COL. 3) |
|---|---|---|---|---|
| 1. MORTGAGE OR LOAN AMOUNT REQUESTED IN APPLICATION | | | | $ 7,012,500 |
| 2. RESERVED | | | | |
| 3. AMOUNT BASED ON VALUE OR REPLACEMENT: | | | | |
| A VALUE (REPLACEMENT COST) FEE SIMPLE | $ 8,250,000 x 85% | | $ 7,012,500 | |
| B (1)   VALUE OF LEASED FEE | $ - | | | |
| (2)   GRANT/LOAN FUNDS ATTRIBUTABLE TO R.C. | $ - | | | |
| (3)   EXCESS UNUSUAL LAND IMPROVEMENT | $ - | | | |
| (4)   COST CONTAINMENT MORTGAGE DEDUCTION | $ - | | | |
| (5)   TOTAL LINES B1 TO B4 | $ - x | $ - | | |
| C UNPAID BALANCE OF SPECIAL ASSESSMENT | | $ - | | |
| D TOTAL LINE 3B PLUS LINE 3C | | | $ - | $ |
| E LINE A MINUS LINE D | | | | 7,012,500 |
| 4. AMOUNT BASED ON LIMITATION PER FAMILY UNIT: | | | | |
| A NUMBER OF NO BEDROOM UNITS | x $ - | $ - | | |
| NUMBER OF ONE BEDROOM UNITS | x $ - | $ - | | |
| NUMBER OF TWO BEDROOM UNITS | x $ - | $ - | | |
| NUMBER OF THREE BEDROOM UNITS | x $ - | $ - | | |
| NUMBER OF FOUR OR MORE BEDROOM UNITS | x $ - | $ - | | |
| B COST NOT ATTRIBUTABLE TO DWELLING UNITS | $ - x 100% | $ - | | |
| C SITE NOT ATTRIBUTABLE TO DWELLING USE | $ - x | $ - | | |
| D TOTAL LINES A THROUGH LINE C | | $ - | | |
| E TOTAL NUMBER OF SPACES | 0 x $ - | $ - | | |
| F SUM:  VALUE OF LEASED FEE AND UNPAID BALANCE OF SPECIAL ASSESSMENT(S) | | $ - | $ | |
| G LINE D OR LINE E, WHICHEVER IS APPLICABLE, MINUS LINE F | | | | |
| 5. AMOUNT BASED ON DEBT SERVICE RATIO: | | | | |
| A MORTGAGE INTEREST RATE | | 7.500% | | |
| B MORTGAGE INSURANCE PREMIUM RATE | | 0.50% | | |
| C INITIAL CURTAIL RATE - ENTER LOAN Y   35 | | 0.590911% | | |
| D SUM OF ABOVE RATES | | 8.590911% | | |
| E NET INCOME | $ - 949,523 x 85% | | $ 807,095 | |
| F ANNUAL GROUND RENT   +ANNUAL SPEC. ASS'MT. | $ - | | $ | |
| G LINE 5E MINUS LINE 5F | | | $ 807,095 | $ |
| H LINE 5G DIVIDED BY LINE 5D | | | | $ 9,394,700 |
| I. TAX ABATEMENT (IF ANY) | | | | |
| J. LINE H PLUS LINE I | | | | 9,394,700 |

PAGE 1 OF 3                                          FORM HUD-92264-A (2/94)

D00032

NAME OF MORTGAGOR:   LINREAL CORPORATION
PROJECT NAME:   BRYLIN HOSPITALS                              PROJECT NUMBER:
LOCATION:   1263 DELAWARE A                0            0
   DETERMINATION OF MAXIMUM INSURABLE MORTGAGE (CONTINUED)

| CRITERIA | (COL. 1) | (COL. 2) | (COL. 3) |
|---|---|---|---|
| 6. AMOUNT BASED ON ESTIMATED COST OF REHABILITATION PLUS: | | | |
|   (I) 'AS IS' VALUE, OR (II) ACQUISITION COST OR | | | |
|   (III) EXISTING MORTGAGE INDEBTEDNESS AGAINST THE | | | |
|   PROPERTY BEFORE REHABILITATION: | | | |
|   A TOTAL ESTIMATED DEVELOPMENT COST | $        - | | |
|   B ESTIMATED COST OF OFF-SITE CONSTRUCTION | $        - | | |
|   C SUM OF LINE 6A AND LINE 6B | | $        - | |
|   D GRANT/LOAN FUNDS ATTRIBUTABLE TO R.C. ITEMS | $        - | | |
|   E LINE 6C MINUS LINE 6D | | $        - | |
|   F 'AS IS' VALUE OF PROP. BEFORE REHAB.   $        0   x   100.0000% | $        - | | |
|   G EXISTING MORTGAGE INDEBTEDNESS (PROP. OWNER) | | | |
|     OR PURCHASE PRICE OF PROPERTY (TO BE ACQUIRED) | $        - | | |
|   H LINE 6E PLUS LINE 6F | | $        - | $        - |
|   I. LINE 6H   $                X         100.00% | | | |
| 7. AMOUNT BASED ON BORROWER'S TOTAL COST OF ACQUISITION SECTION 223(f) | | | |
|   A PURCHASE PRICE OF PROJECT | $        - | | |
|   B REPAIRS AND IMPROVEMENTS, IF ANY | $        - | | |
|   C OTHER FEES | $        - | | |
|   D LOAN CLOSING CHARGES | $        - | | |
|   E SUM OF LINES 7A THROUGH LINE 7D | | $        - | |
|   F ENTER THE SUM OF ANY GRANT/LOAN AND RESERVE FOR REPLACEMENT AND | | | |
|     MAJOR MOVABLE EQUIPMENT TO BE PURCHASED AS A ASSET OF THE PROJECT | | $        - | |
|   G LINE 7E MINUS LINE | | $        - | $        - |
|   H LINE 7G   $                X         85.00% | | | |
| 8. AMOUNT BASED ON SUM OF UNIT MORTGAGE AMOUNTS | | | $        - |
| 9. AMOUNT BASED ON ESTIMATED COST TO BORROWER: | | | |
|   A TOTAL ESTIMATED COST (EXCL. OF SITE & REQUIRED CONST. OFF THE SITE) | $        - | | |
|   B PURCHASE PRICE OF SITE | $        - | | |
|   C TOTAL COST OF CLEARING SITE, IF ANY | $        - | | |
|   D EXPENSE OF RELOCATING OCCUPANTS, IF ANY | $        - | | |
|   E COST OF OFF-SITE CONSTRUCTION, IF ANY | $        - | | |
|   F SUM OF LINES 9A THROUGH 9E | | $        - | $        - |
|   G LINE 9F   $                X         100.0000% | | | |
| 10 AMOUNT BASED ON EXISTING INDEBTEDNESS, REPAIRS & LOAN CLOSING CHARGES SECTION 223(f) | | | |
|   A TOTAL EXISTING INDEBTEDNESS | $ 5,746,546 | | |
|   B REQUIRED REPAIRS | $ ~~328,417~~  411,728 ✗ | | |
|   C OTHER FEES | $ | | |
|   D LOAN CLOSING CHARGES | $ 998,173 | | |
|   E SUM OF LINES 10A THROUGH 10D | | $ ~~7,076,420~~  7,159,731 DR | |
|   F ENTER THE SUM OF ANY GRANT/LOAN & RESERVE FOR | | | |
|     REPLACEMENT AND MAJOR MOVABLE EQUIPMENT ON DEPOSIT | | | |
|   G LINE 10E MINUS LINE 10F | | $ ~~7,076,420~~  7,157,731 | |
|   H 70% OF VALUE   $        0   X         70% | | | |
|   I. GREATER OF LINE 10G OR LINE 10H | | | $ ~~7,076,400~~  7,157,73  ✗ |
| * ATTACH FORMAT FOR COMPUTING LOAN CLOSING CHARGES. | | | |
| MAXIMUM INSURABLE MORTGAGE (LOWEST OF THE FORGOING CRITERIA) | | | $ 7,012,500 |

3,284

PAGE 2 OF 3                                        FORM HUD-92264-A (2/94)

D00033

NAME OF MORTGAGOR: LINREAL CORPORATION
PROJECT NAME: BRYLIN HOSPITALS
LOCATION: 1263 DELAWARE A          0          0

PROJECT NUMBER:

II: TOTAL REQUIREMENTS FOR SETTLEMENT

**PART A**

1. FEES NOT TO BE PAID IN CASH:
   - A BSPRA/SPRA ................................ $
   - BUILDERS PROFIT ............................. $     -
   - OTHER: ...................................... $     -
   - TOTAL (ENTER IN PART B ON LINE 5) ........... $     -
2. COMMITMENT, MKTG., GNMA
   - A FEES:
     - OTHER:    PERMANENT LOAN ................... $     -
   - B DISCOUNTS:   CONSTRUCTION LOAN ............. $     -
     - DEBT SVC. RESERVE (BOARD & CARE ........... $     -
   - C ESCROWS:
     - OTHER: ..................................... $     -
   - TOTAL (ENTER IN PART B ON LINE 9) ........... $     -
3. WORKING CAPITAL:
   - A WORKING CAPITAL ........................... $
   - B MINIMUM CAPITAL INVESTMENT (SEC. 202/811) . $
   - C NON-REALTY ITEMS NOT INCLUDED IN MORTGAGE . $     -
   - TOTAL (ENTER IN PART B ON LINE 10) .......... $

**PART B**

1. a. Existing Debt & Loan Closing Cos   6,744,936
   b. Adjustment for Contracted Amounts in
      Excess of form HUD 92264 Estimates

   (1) CONSTRUCTION CONTRAC $
   (2) ARCHITECT'S CONTRACT  $     -
   (3) OTHER                 $           $
   c. TOTAL OF LINES a.& b               6,744,936
2. REQUIRED REPAIRS              $   ~~328,417~~   411,728
3. SUBTOTAL (LINES 1c +2)        $   ~~7,073,353~~  7,156,664
4. A. MORTGAGE AMOUNT  $ 7,012,500
   B. GRANT/LOAN                 $
5. FEES NOT TO BE PAID IN CAS    $
6. SUBTOTAL (LINES 4A + 4B + 5)  $   7,012,500
7. CASH INVESTMENT REQUIRED (LINE 3 MIN   ~~60,853~~  144,164
8. INITIAL OPERATING DEFICIT *            0
9. COMMITMENT, MARKETING FEES
   DISCOUNT AND ESCROWS          $
10. WORKING CAPITAL-REPAIRS      $   137,243
11. OFF-SITE CONSTRUCTION & DEMOLITION C
    ($          +  $         )
12. TOTAL ESTIMATED CASH REQUIREMENT
    (SUM OF LINES 7 + 8 + 9 + 10 + 11)   ~~198,096~~  281,407
FRONT MONEY ESCROW, IF ANY       $
(SUBTRACT LINE 6 FROM LINE 1)

\* NOTE: FOR SECTION 223(f) CASES, ATTACH THE FORMAT FOR COMPUTING THE OPERATING DEFICIT.

III: SOURCE OF FUNDS TO MEET CASH REQUIREMENT / MORTGAGE CREDIT NOTES

| SOURCE: | | AMOUNT |
|---|---|---|
| A. SPONSOR PLUS PREPAID TRANSACTION COSTS | $ | 198,096 |
| B. | $ | |
| C. | $ | |
| D. | $ | |
| E. | $ | |
| TOTAL AVAILABLE CASH FOR PROJECT | $ | 198,096 |

MORTGAGE CREDIT PROCESSING NOTES:
1.
2.
3.
4.
5.
6.
7.
8.
9.
10.

IV: RECOMMENDATION, REQUIREMENTS AND REMARKS

LOAN CLOSING CHARGES BASED ON MORTGAGE AMOUNT:

| | |
|---|---|
| FINANCING FEE | 140,250 |
| MIP | 70,125 |
| EXAM FEE | 21,038 |
| PLACEMENT FEE | 105,188 |
| LEGAL & ORG | 58,350 |
| IDRR | 550,000 |
| TITLE & RECORDING | 50,156 |
| TOTAL | 995,106 |

Mortgage Recommendation

X          RECOMMEND APPROVAL: SUBJECT TO CONDITIONS STATED IN ADDENDUM, IF ANY.

_____ RECOMMEND REJECTION FOR REASONS STATED IN ADDENDUM.

SIGNATURE OF THE MORTGAGE CREDIT EXAMINER:
X _____

DATE:   4-23-01

D00034



## TO COMPUTE FEES IN A REFINANCING TRANSACTION

Step 1.   Add the known dollar amounts for:

| | | | |
|---|---|---|---|
| A. | Exisiting Indebtedness | | 5,746,546 |
| B. | Repairs | | 328,417 |
| C. | Initial Deposit to Reserve for Replacement | | 550,000 |
| D. | Legal | | 30,000 |
| E. | Organizational | | 28,350 |
| F. | Title and Recording | | 50,156 |
| G. | Other Fees (Arch, Inspection, Engineering) | (HUD) | 3,284 |
| H. | GNMA Fee (MBS) | | 0 |
| | | Total | 6.736.753 |

Step 2.   Deduct the amounts of any Replacement Reserve Escrow
currently on deposit with the mortgagee

| | | |
|---|---|---|
| | | 0 |
| | Result | 6.736.753 |

Step 3.   Add the known percentages for:

| | | |
|---|---|---|
| A. | Financing Fee (Initial Service Charge) | 2.0% |
| B. | MIP | 1.0% |
| C. | Exam Fee | 0.3% |
| D. | FNMA Fee | 1.5% |
| E. | Discounts, if Allowable | 0.0% |
| | Total | 4.8% |

Step 4.   Subtract the sum from Step 3 from 100%                95.2%

Step 5.   Divide the sum from Step 2 by the result from Step 4. The
quotient rounded down to the nearest hundred becomes the
mortgage amount.                                                7.076.400

Step 6.   Compute and total the actual fees based on the mortgage
amount determined in Step 5.

| | | |
|---|---|---|
| A. | Financing Fee | 141,528 |
| B. | MIP | 70,764 |
| C. | Exam Fee | 21,229 |
| D. | FNMA FEE | 106,146 |
| E. | Discounts | 0 |
| | Total | 339.667 |

Step 7.   Add to the sum from Step 6, the following:

| | | | |
|---|---|---|---|
| A. | Legal & Organizational | 30,000+28,350 | 58,350 |
| B. | Initial Deposit to Reserve for Replacement | | 550,000 |
| C. | Title and Recording | | 50,156 |
| D. | GNMA Fee | | 0 |
| | | Total | 998.173 |

| Organization: | | | Debt: | |
|---|---|---|---|---|
| Frandina | 6,750 | | Key | 3,750,000 |
| GAR | 15,000 | | Heller | 1,350,000 |
| Phase I | 1,500 | | Taxes | 460,936 |
| LBP | 600 | | Charter | 61,779 |
| Survey | 4,500 | | Misc | 123.831 |
| | 28,350 | | | 5,746,546 |

D00035