## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | ·1:08-CV-00333-JTC |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT P. CORP, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Robert P. Corp ("Defendant" or "Corp"), by his attorneys, Hiscock & Barclay, LLP, as and for his amended responses to Plaintiff United States of America's ("Plaintiff" or the "United States") Second Set of Interrogatories and Requests for Production of Documents, states as follows:

### GENERAL OBJECTIONS

1.    The following General Objections are hereby incorporated by reference into the responses made with respect to each separate Interrogatory or Request. Neither the inclusion of any specific objection in response to an Interrogatory or Request, nor the failure to include any general or specific objection in response to an Interrogatory or Request shall in any way be deemed as a waiver of any General Objection made herein or that may be asserted at another time.

**EXHIBIT**

SJ 56

2.     Defendant objects to each Interrogatory or Request to the extent that it calls for any documents or information protected by any applicable privilege or doctrine, including, without limitation, the attorney-client privilege.

3.     Defendant objects to any Interrogatory or Request that calls for trial preparation or other information prepared in anticipation of, as a result of, or relating to litigation, or that is otherwise protected by the work-product doctrine or other applicable privilege or protection from disclosure.

4.     Defendant objects to any Interrogatory or Request to the extent it calls for disclosure of information or documents that are not reasonably related to the subject matter of this action, that are not relevant to the claims or defenses asserted in this action, that are not reasonably calculated to lead to the discovery of admissible evidence, and/or to the extent it purports to impose upon Defendant any obligations beyond those imposed by the Federal Rules of Civil Procedure.

5.     Defendant objects to any Interrogatory or Request to the extent it employs imprecise specifications of the information sought. In particular, terms such as "consist of," "concern," "refer," and other like terms do not provide an adequate classification of the information sought. Where such terms are used, Defendant will provide only such information that reasonably can be identified as responsive to the Interrogatories or Requests.

6.     Neither these General Objections nor the Specific Responses set forth below are an admission as to the existence of any information sought, to the relevance or admissibility of any response, or to the truth or accuracy of any statement or characterization contained in any particular Interrogatory or Request.

7.      Defendant objects to Plaintiff's definition of the term "Document" to the extent that use of such definition is an attempt to impose upon Defendant any obligations beyond those imposed by the Federal Rules of Civil Procedure.

8.      Defendant objects to Plaintiff's Interrogatories to the extent that Plaintiff has exceeded the number of Interrogatories allowed under Rule 33 of the Federal Rules of Civil Procedure.

9.      Defendant's production of documents or things, or identification of information in response to any Interrogatory or Request, is not intended to waive, and does not constitute a waiver of, any objection which Defendant may have to the admissibility, authenticity, competency, or relevance of the materials produced or information identified.  For any and all materials produced or information identified in response to each Request or Interrogatory, Defendant reserves all objections or other questions regarding the competency, relevance, materiality, privilege, or admissibility of such documents or information as evidence in this suit or any other proceeding, action, or trial.

## SPECIFIC RESPONSES

Subject to the specific objections set forth below, and specifically incorporating each of the foregoing General Objections into each Specific Response below, and without waiving said objections and responses, Defendant responds as follows:

## INTERROGATORIES

### Interrogatory No. 13

**Please identify each individual for whom Robert Corp paid legal fees for services rendered CONCERNING *United States v. Corp*, 08-cv-0333-JTC (W.D.N.Y).  In so doing, please identify the law firm which rendered the services and the amount of money that Mr. Corp paid for the services.**

In addition to his General Objections, Defendant objects to this Interrogatory because it is compound, overly broad, unduly burdensome and seeks information that is neither relevant to the claims or defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence. Furthermore, Defendant objects to this Interrogatory to the extent that it seeks information that is subject to the attorney-client privilege, constitutes attorney work product, pertains to materials prepared in anticipation of or as a result of litigation, or is otherwise immune from discovery. In addition, Defendant objects to this Interrogatory because the terms "legal fees," "services," and "services rendered" are vague and ambiguous.

**AMENDED RESPONSE:**

Defendant maintains his objections set forth above. Subject to those objections Mr. Corp states that there are no "individuals for whom [Defendant] paid legal fees for services rendered." However, Mr. Corp's present counsel represented John Brennan and Patricia Maroney in connection with their depositions in this matter. Mr. Corp was charged and paid legal fees in connection with the representation of John Brennan and Patricia Maroney in connection with their respective depositions. The amounts paid are set forth below:

| Individual | Amount Paid |
|---|---|
| John Brennan | $2,588.50 |
| Patricia Maroney | $1,445.00 |

## Interrogatory No. 14

**Please identify all COMPENSATION that Robert Corp was paid for services rendered in connection with the BRYLIN TRANSACTION.**

In addition to his General Objections, Defendant objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims or

defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Interrogatory because it seeks information that is both confidential and proprietary. In addition, Defendant objects to this Interrogatory because the terms "compensation" and "services" are vague and ambiguous.

Subject to and without waiving these objections and the General Objections, Defendant refers Plaintiff to the documents attached hereto bearing Bates Nos. D004020 – D004021 [Redacted] and D004022 – D004023.

**AMENDED RESPONSE:**

Defendant maintains his objections set forth above. Subject to those objections Mr. Corp states that he was paid $21,854, for services rendered in connection with the "Brylin Transaction," as set forth in document D004020. In addition to the commission he received for services rendered in connection with the "Brylin Transaction," Mr. Corp received a salary of $80,000 in 2001. In addition, Mr. Corp received $60,723.50 as a distribution of the net income of Continental Securities, LLC in the third quarter of 2001. However, the monies received by Continental Securities, LLC in connection with the "Brylin Transaction" were only one of several sources of revenue used by Continental Securities, LLC to fund salaries and income distributions.

**Interrogatory No. 15**

**Please identify all commissions that Mr. Corp was paid for services rendered in connection with the BRYLIN TRANSACTION.**

In addition to his General Objections, Defendant objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims or defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Interrogatory because it seeks information

that is both confidential and proprietary.  In addition, Defendant objects to this Interrogatory because the terms "commissions" and "services" are vague and ambiguous.

Subject to and without waiving these objections and the General Objections, Defendant refers Plaintiff to the documents attached hereto bearing Bates Nos. D004022 – D004023.

**AMENDED RESPONSE:**

Defendant maintains his objections set forth above.  Subject to those objections Mr. Corp states that he received a commission of $21,854, for services rendered in connection with the "Brylin Transaction," as set forth in document D004020.  In addition to the commission he received for services rendered in connection with the "Brylin Transaction," Mr. Corp received a salary of $80,000 in 2001.  In addition, Mr. Corp received $60,723.50 as a distribution of the net income of Continental Securities, LLC in the third quarter of 2001.  However, the monies received by Continental Securities, LLC in connection with the "Brylin Transaction" were only one of several sources of revenue used by Continental Securities, LLC to fund salaries and income distributions.

## Interrogatory No. 16

**Please identify all monies paid to Continental Securities for services rendered in connection with the BRYLIN TRANSACTION.**

In addition to his General Objections, Defendant objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims or defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this Interrogatory because it seeks information that is both confidential and proprietary.  In addition, Defendant objects to this Interrogatory because the terms "monies" and "services" are vague and ambiguous.

Subject to and without waiving these objections and the General Objections, Defendant refers Plaintiff to the documents attached hereto bearing Bates Nos. D004022 – D004023.

**AMENDED RESPONSE:**

Defendant maintains his objections set forth above.  Subject to those objections Mr. Corp states Continental Securities Corporation received $269,270.34, for services rendered in connection with the "Brylin Transaction," as set forth in document D004025 – D004026.

**Interrogatory No. 17**

**Please describe in detail Robert Corp's compensation structure with Continental Securities in June of 2001, specifically including:  1) the commissions that Mr. Corp was entitled to receive; 2) the extent to which he was entitled to a share of Continental Securities's profits or to receive distributions; and 3) the extent to which Mr. Corp received equity or stock options in Continental Securities.**

In addition to his General Objections, Defendant objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims or defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this Interrogatory because it seeks information that is both confidential and proprietary.  Defendant objects to this Interrogatory to the extent that it presents compound questions.  In addition, Defendant objects to this Interrogatory because the terms "compensation structure," "commissions," "entitled," "profits," "distributions," "equity," and "stock options" are vague and ambiguous.

Subject to and without waiving these objections and the General Objections, Defendant refers Plaintiff to the documents attached hereto bearing Bates Nos. D004020 – D004021 [Redacted] and D004022 – D004023, and the attached Operating Agreement of Continental Securities, LLC, which was in force during June of 2001, bearing Bates Nos. D003942 – D004019.

**Interrogatory No. 18**

**Please describe Robert Corp's ownership interest in Continental Securities in June of 2001, specifically including (but not limited to) Mr. Corp's percentage of ownership.**

In addition to his General Objections, Defendant objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims or defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence. In addition, Defendant objects to this Interrogatory because the terms "ownership interest" and "percentage of ownership" are vague and ambiguous.

Subject to and without waiving these objections and the General Objections, Defendant refers Plaintiff to the attached Operating Agreement of Continental Securities, LLC, which was in force during June of 2001, bearing Bates Nos. D003942 – D004019.

**AMENDED RESPONSE:**

Defendant maintains his objections set forth above. Subject to those objections Mr. Corp states that owned twenty-five percent of Continental Securities, LLC as of June 2001.

**Interrogatory No. 19**

**Please list all persons who held an ownership or membership interest in Continental Securities in June of 2001 and state their respective ownership shares.**

In addition to his General Objections, Defendant objects to this Interrogatory because it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims or defenses of any party to this action, nor reasonably calculated to lead to the discovery of admissible evidence. In addition, Defendant objects to this Interrogatory because the terms "ownership," "membership interest," and "ownership shares" are vague and ambiguous.

## VERIFICATION

**STATE OF NEW YORK**    )
                       ) SS.:
**COUNTY OF ONONDAGA** )

     **ROBERT P. CORP**, being duly sworn, deposes and says that deponent is the Defendant in the within action, that deponent has read the foregoing Amended Responses to Plaintiff's Second Set of Interrogatories and Requests for Production of Documents and knows the contents thereof, that the same is true to deponent's own knowledge, except as to those matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes it to be true.

                                 **ROBERT P. CORP**

Subscribed and sworn to before me this _____ day of June, 2009.

_____
        Notary Public

BRADLEY R. GRAINGER
NOTARY PUBLIC, STATE OF NEW YORK
NO. 4727278, REG. IN TOMPKINS COUNTY
MY COMMISSION EXPIRES NOV. 30, 2010

SYLIB01\673487\4



CONTINENTAL SECURITIES CORPORATION

TO:      ROBERT J. DAINO

FROM:    Corp          (Originator #1)

DATE:    6-6-01

RE:      Brylin Hospitals

The above mentioned loan was closed on _____6-5-01_____. The loan amount was
$ _7,012,500_ ~~and the total fee received was~~ ____%~~or~~$ _____. The
fee is to be allocated as follows:          (see attached)

Total Fee for Commission Calculation        $ _304,332.84_

Payment to:  Mortgage Broker  $ _____
             Processor        $ _____
             ~~Other~~ Less    $ _36,062.50_
                  B.P.
Net Fee to CSC  Servicing      $ _269,270.34_

Allocation:              Name          %

    Originator (1    _Corp_        _100_
    Originator (2    _____    ____
    Other            _____    ____

Allocated Amount                             $ _269,270.34_
Less Breakeven (net)          $ _160,000.00_

Balance for Commission        $ _109,270.34_

Commission at _20_ %                         $ _21,854_

Net Available                                $ _____

Additional Commissions:
    Name          Description

                                             $ _____

Net to CSC Operating                         $ _____

I would like this commission to be _____✓_____ paid now _____ deferred.
If to be paid now, I will inform Trish of applicable deductions.

Requested:                    APPROVED:
Excel                                         DATE: _6-6-01_
F:\Proc SA\Commission Sheet

ONE MONY PLAZA, SUITE 800, SYRACUSE, NY 13202 (315) 424-1994 • FAX (315) 424-1908
452 FIFTH AVENUE, 25TH FLOOR, NEW YORK, NY 10018 (212) 840-2060 • FAX (212) 840-2373

D004022

# Memorandum

**GMAC**
**Commercial**
**Mortgage**
**Corporation**

| | | | |
|---|---|---|---|
| **TO:** | Robert P. Corp, Continental Securities, LLC | | |
| **FROM:** | Dean W. Wantland, GMACCM | **OFFICE PHONE:** | 314-721-7600 x.202 |
| | | **CELL PHONE:** | 314-614-1610 |
| **DATE:** | June 4, 2001 | | |
| **SUBJECT:** | BRYLIN HOSPITALS | **LOAN AMOUNT:** | $ 7,012,500.00 |
| | Buffalo & Alden, New York | | |
| | FHA Project No. 014-22019 | **PROJECTED FUNDING DATE:** | June 5, 2001 |
| | GMACCM Loan No. 10-1033009 | | |

I have calculated the compensation due Continental Securities, LLC in connection with the closing of the above-referenced transaction as follows:

*Net origination fee after broker (3.5% − 1.5%): 2% × 7,012,500 =*  $140,250.00

**GMACCM Assignment Consideration:**

| | | | |
|---|---|---|---|
| Agreed Upon Servicing Bid | 1.359586% | $ | 95,340.97 |

Less Transaction Fees:

| | | |
|---|---|---|
| New Loan Setup Fee | $ | 425.00 |
| GNMA Delivery Fee | $ | 500.00 |
| GEOPack Fee | $ | 30.00 |
| GNMA Custodian Fee | $ | 500.00 |
| GNMA Commitment Authority | $ | 1,700.00 |
| GMACCM Closing Fee | $ | 4,000.00 |
| GMACCM Final Endorsement Fee | | N/A |
| Trading Desk Fee | $ | 6,500.00 |
| GMACCM Legal Fees | | Borrower Paid |

| | | |
|---|---|---|
| Total Transaction Fees: | $ | (13,655.00) |

| | | |
|---|---|---|
| **Amount due Continental Securities LLC at Closing:** | $ | 81,685.97 |

*less 1st 50 bp of Servicing (7,012,500 × .50%)*  ( 35,062.50 ) — 46,623.47

**Trading Profit From Marketing Securities:**

| | | | |
|---|---|---|---|
| Total Trading Premium | 1.468750% | $ | 102,996.09 |
| * Portion due Continental Securities LLC | 80.00% | or  $ | 82,396.87 |  — 82,396.87

\* *[To be paid only upon receipt of Premium from Buyer of Securities]*

*Total for Commission Calculation*  $269,270.34

Should you have any questions regarding the above-described compensation, please contact me at your earliest opportunity.  We are looking forward to a timely and successful closing.

D004023

# OPERATING AGREEMENT

## OF

## CONTINENTAL SECURITIES, LLC

D003942

# TABLE OF CONTENTS

SECTION 1 DEFINED TERMS...........................................................................................1

SECTION 2 THE COMPANY..............................................................................................2
    2.1    FORMATION ...........................................................................................2
    2.2    NAME ....................................................................................................2
    2.3    PURPOSE ...............................................................................................2
    2.4    PRINCIPAL PLACE OF BUSINESS.............................................................2
    2.5    TERM ....................................................................................................3
    2.6    FILINGS ................................................................................................3

SECTION 3 MEMBERS; CAPITAL CONTRIBUTIONS ...........................................................3
    3.1    MEMBERS; CAPITAL CONTRIBUTIONS ....................................................3
    3.2    ADDITIONAL CAPITAL CONTRIBUTIONS ..................................................4
    3.3    DEFAULTS .............................................................................................4
    3.4    RETURN OF CAPITAL..............................................................................5
    3.5    INTEREST ..............................................................................................5
    3.6    LIMITED LIABILITY ...............................................................................5
    3.7    LOANS ..................................................................................................6

SECTION 4 ALLOCATIONS ...............................................................................................6
    4.1    PROFITS ................................................................................................6
    4.2    LOSSES .................................................................................................7
    4.3    TAX ALLOCATIONS................................................................................7

SECTION 5 DISTRIBUTIONS ..............................................................................................7
    5.1    NET AVAILABLE CASH ..........................................................................7
    5.2    AMOUNTS WITHHELD ............................................................................8

SECTION 6 MANAGEMENT ...............................................................................................8
    6.1    MANAGERS; MANAGEMENT COMMITTEE ...............................................8
    6.2    MEETINGS OF THE MANAGEMENT COMMITTEE.....................................10
    6.3    MANAGEMENT COMMITTEE POWERS ...................................................11
    6.4    DUTIES AND OBLIGATIONS OF THE MANAGEMENT COMMITTEE.....................14
    6.5    REIMBURSEMENTS ...............................................................................15
    6.6    INDEMNIFICATION OF THE MANAGERS .................................................16
    6.7    DEADLOCK PROVISIONS.....................................................................187
    6.8    OFFICERS............................................................................................18
    6.9    RESIGNATION.......................................................................................18
    6.10    FHA MANAGING MEMBER ..................................................................19

i

SECTION 7 ROLE OF MEMBERS ............................................................................ 19
    7.1   RIGHTS OR POWERS ................................................................ 19
    7.2   VOTING RIGHTS ...................................................................... 19
    7.3   MEETINGS OF THE MEMBERS .................................................. 19
    7.4   REQUIRED MEMBER CONSENTS ................................................ 21
    7.5   WITHDRAWAL/RESIGNATION ................................................... 22
    7.6   MEMBER COMPENSATION ........................................................ 22
    7.7   MEMBERS' LIABILITY .............................................................. 22
    7.8   PARTITION .............................................................................. 22
    7.9   TRANSACTIONS BETWEEN A MEMBER AND THE COMPANY ...... 23
    7.10  OTHER INSTRUMENTS .............................................................. 23
    7.11  COVENANT NOT TO COMPETE ................................................. 23

SECTION 8 BOOKS AND RECORDS ....................................................................... 26
    8.1   BOOKS AND RECORDS ............................................................. 26
    8.2   ANNUAL REPORTS .................................................................. 26
    8.3   TAX INFORMATION .................................................................. 26

SECTION 9 AMENDMENTS ................................................................................... 27
    9.1   AMENDMENTS ........................................................................ 27

SECTION 10 TRANSFERS OF INTERESTS ............................................................... 28
    10.1  RESTRICTIONS ON TRANSFERS ................................................ 28
    10.2  PERMITTED TRANSFERS .......................................................... 29
    10.3  CONDITIONS TO PERMITTED TRANSFERS .................................. 29
    10.4 RIGHT OF FIRST REFUSAL ....................................................... 30
    10.5  ADVERSE ACT PURCHASE ....................................................... 32
    10.7 PURCHASE PRICE .................................................................... 34
    10.8 PAYMENT OF PURCHASE PRICE ............................................... 34
    10.9 TRANSFER DOCUMENTS ......................................................... 36
    10.10 RIGHTS OF UNADMITTED ASSIGNEES ...................................... 36
    10.11 ADMISSION OF ASSIGNEES AS MEMBERS ................................. 37
    10.12 LEGEND ................................................................................. 38
    10.13 DISTRIBUTIONS AND APPLICATIONS IN RESPECT TO TRANSFERRED INTERESTS 38

SECTION 11 DISSOLUTION AND WINDING UP ....................................................... 39
    11.1  DISSOLUTION ......................................................................... 39
    11.2  WINDING UP .......................................................................... 40
    11.3  COMPLIANCE WITH TIMING REQUIREMENTS OF REGULATIONS .. 41
    11.4  ESTABLISHMENT OF TRUST ..................................................... 41
    11.5  RIGHTS OF MEMBERS AND ASSIGNEES .................................... 42

D003944

SECTION 12 MISCELLANEOUS .................................................................................................. 42

    12.1    NOTICES ......................................................................................................... 42

    12.2    BINDING EFFECT ......................................................................................... 43

    12.3    CONSTRUCTION ........................................................................................... 43

    12.4    HEADINGS ..................................................................................................... 43

    12.5       SEVERABILITY ........................................................................................ 43

    12.6    INCORPORATION BY REFERENCE ............................................................ 43

    12.7    ADDITIONAL DOCUMENTS ...................................................................... 44

    12.8    VARIATION OF PRONOUNS ...................................................................... 44

    12.9    NEW YORK LAW ......................................................................................... 44

    12.10     COUNTERPART EXECUTION ................................................................. 44

iii

D003945

APPENDIX "A"
      TABLE OF DEFINITIONS ............................................................................................. i

APPENDIX "B"
      TAX PROVISIONS ..................................................................................................... x

iv

D003946

# OPERATING AGREEMENT

## of

## CONTINENTAL SECURITIES, LLC

THIS OPERATING AGREEMENT is entered into and shall be effective as of the 1st day of November, 2000 by and among **ROBERT J. DAINO**, an individual residing at 3359 East Lake Road, Skaneateles, New York 13159, **BRADLEY R. GRAINGER**, an individual residing at 421 Highland Road, Ithaca, New York 14850, **ROBERT P. CORP**, an individual residing at 6383 Killoe Road, Baldwinsville, New York 13027 **PATRICIA D. MARONEY**, an individual residing at 7379 Coffeemill Circle, Liverpool, New York 13088, as the Manager(s) and the individuals and/or entities set forth on Exhibit "A" attached hereto and made a part hereof as Members.

WHEREAS, the parties hereto desire to form a limited liability company upon the terms and conditions herein set forth.

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions herein contained and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

### SECTION 1
### DEFINED TERMS

The defined terms used in this Agreement (as indicated by the first letter of each word in the term being capitalized) shall, unless the context clearly requires otherwise, have the meanings specified in the Table of Definitions appearing as Appendix "A" at the end of this Agreement.

D003947

The singular shall include the plural and the masculine gender shall include the feminine and neuter, as the context requires.

### SECTION 2
### THE COMPANY

2.1    FORMATION.  The parties hereby agree to form a limited liability company pursuant to the provisions of the Act and upon the terms and conditions set forth in this Agreement.

2.2    NAME.  The name of the Company shall be **CONTINENTAL SECURITIES, LLC**, a New York limited liability company, and all business of the Company shall be conducted in such name.  The Management Committee may change the name of the Company upon ten (10) days notice to the Members.  The Company shall hold all of its assets and property in the name of the Company and not in the name of any Member.

2.3    PURPOSE.  The purpose of the Company is to own and operate the Business.  The Company may engage in such other businesses, make such additional investments, and engage in such additional activities as the Management Committee may deem advisable.  The Company shall have the power to enter into all transactions which are provided for in this Agreement and as may be necessary or incidental to accomplish or implement the purpose of the Company including such powers as may be authorized by this Agreement or permitted under the Act.

2.4    PRINCIPAL PLACE OF BUSINESS.  The principal place of business of the Company shall be One Mony Plaza, Suite 800, Syracuse, New York 13202.  The Management Committee may change the principal place of business of the Company to any other place within or without the State of New York upon three (3) days notice to the Members.

2

**2.5    TERM.**  The term of the Company shall be perpetual unless the Company is dissolved earlier as set forth in this Agreement; provided, however, in no event will the term of the Company be less than ten (10) years from the date hereof.

**2.6    FILINGS.**

(a)  The Articles of Organization of the Company (the "Certificate") have been filed in the office of the New York State Department of State in accordance with the provisions of the Act. The Management Committee shall take any and all other actions reasonably necessary to perfect and maintain the status of the Company as a limited liability company under the laws of the State of New York.  The Management Committee shall cause amendments to the Certificate to be filed whenever required by the Act.  Such amendments may be executed by any Manager.

(b)  The Management Committee shall execute and cause to be filed original or amended certificates and shall take any and all other actions as may be reasonably necessary to perfect and maintain the status of the Company as a limited liability company or similar type of entity under the laws of any other states or jurisdictions in which the Company engages in business.

**SECTION 3**
**MEMBERS; CAPITAL CONTRIBUTIONS**

**3.1    MEMBERS; CAPITAL CONTRIBUTIONS.**  The name and address of each Member is set forth on Exhibit "A".  The ownership of the Company shall be represented by Membership Units.  The original Capital Contribution and the initial Membership Units and Membership Percentage of each Member is set forth on Exhibit "B" attached hereto.

3

D003949

**3.2**   ADDITIONAL CAPITAL CONTRIBUTIONS.   Additional Capital Contributions shall be made by the Members from time to time whenever the Management Committee determines such additional Capital Contributions are necessary or desirable to accomplish the purposes or satisfy the obligations of the Company.   Such additional Capital Contributions shall be made in proportion to the Membership Percentages then held by each Member.

**3.3**   DEFAULTS.   In the event a Member fails to make any Capital Contribution when due and such failure continues for a period of ten (10) days after notice from the Company to said Member (the "Default") (such Member being referred to as the "Defaulting Member"), the Defaulting Member shall be in default under this Agreement and, while such Default continues, the Management Committee (without prejudice to any other right of the Company) may elect in the sole and absolute discretion of the Management Committee (and for purposes of determining the approval of the Management Committee of any such election the Owner of such Defaulting Member shall be deemed not to be a member of the Management Committee): (i) not to pay the Defaulting Member any distribution pursuant to Section 5 of this Agreement to which the Defaulting Member would otherwise be entitled and in lieu thereof to apply any undistributed amounts theretofore or thereafter distributable to the Defaulting Member pursuant to Section 5 towards the obligation of such Defaulting Member to make such Capital Contribution; and (ii) for purposes of any provision of this Agreement providing for the consent or the action of Members or the Management Committee, to deem the Defaulting Member (A) not to be a Member; and/or (B) the Owner of such Member not to be a member of the Management Committee.   In addition to the foregoing, if the Default continues in existence for a sixty (60) day period, the Management Committee may elect to pursue the following additional remedies: (i) to

4

elect to treat such default as an Adverse Act; (ii) issue to the Members who actually made the required additional Capital Contributions, additional Membership Units in an amount determined by the Management Committee in its sole and absolute discretion thereby diluting the Membership Percentage of the Defaulting Member; or (iii) to sue the Defaulting Member to collect the unpaid amount of any such Capital Contribution (together with interest thereon from the date such contribution was due at the lower of (A) Prime Rate plus three (3) percentage points or (B) the highest lawful rate in the State of New York, plus any collection expenses incurred by the Company, including, but not limited to, the reasonable fees and disbursements of counsel to the Company). It is specifically recognized and understood that the provisions of this Section 3.3 and Section 3.2 may only be enforced by the Management Committee and in no way will the provisions of this Section 3.3 or Section 3.2 be deemed to expand the liability of the Members to creditors of or other third parties dealing with the Company.

3.4    RETURN OF CAPITAL. Except as otherwise provided in this Agreement, no Member shall be entitled to have his Capital Contribution returned to him. Under circumstances requiring a return of any Capital Contributions, no Member shall have the right to receive property other than cash except as may be specifically provided herein.

3.5    INTEREST. No Member shall receive any interest, salary or drawing with respect to his Capital Contribution or his Capital Account or for services rendered on behalf of the Company or otherwise in his capacity as a Member, except as otherwise provided in this Agreement.

3.6    LIMITED LIABILITY. The Members shall not be liable for the debts, liabilities, contracts or any other obligations of the Company. Except as otherwise provided by applicable

5

state law and this Agreement, a Member shall be liable only to make his Capital Contributions and shall not be required to lend any funds to the Company or, after his Capital Contributions have been paid, to make any additional capital contributions to the Company. No Manager shall have any personal liability for the repayment of any Capital Contributions of the Members; provided, however, nothing in this Section 3.6 shall be deemed to relieve the Managers of any liability resulting from their bad faith, intentional misconduct or knowing violation of law.

3.7    **LOANS.** Any Member or any Affiliate of a Member may, with the approval of the Management Committee, lend or advance money to the Company. If any Member or Affiliate thereof shall make any loan or loans to the Company or advance money on its behalf, the amount of any such loan or advance shall not be treated as a contribution to the capital of the Company but shall be a debt due from the Company. The amount of any such loan or advance by a lending Member or Affiliate thereof shall be repayable out of the Company's cash and shall have priority over any distributions made pursuant to Section 5 hereof. All such loans or advances shall bear interest at the Prime Rate unless the Management Committee consents to a higher or lower rate. Except as otherwise set forth in this Agreement, none of the Members shall be obligated to make any loan or advance to the Company.

### SECTION 4
### ALLOCATIONS

4.1    **PROFITS.** After giving effect to the special allocations set forth in Appendix "B" hereto, Profits for any fiscal year shall be allocated to the Members in proportion to their Membership Percentages.

6

D003952

4.2    LOSSES. After giving effect to the special allocations set forth in Appendix "B"

hereto, Losses for any fiscal year shall be allocated to the Members in proportion to their

Membership Percentages.

4.3    TAX ALLOCATIONS. The provisions set forth in Appendix "B" attached hereto are

hereby incorporated by this reference and shall be deemed a part of this Section 4 as if fully set

forth herein.

**SECTION 5**
**DISTRIBUTIONS**

5.1    NET AVAILABLE CASH. Except as otherwise provided in Section 11.2 hereof

relating to the liquidation of the Company, Net Available Cash shall be distributed to the

Members in the following order and priority:

(a)    First, and within seventy five (75) days of the end of each fiscal year of the

Company, the Management Committee shall distribute to each Member, in proportion to their

Membership Percentages, an amount equal to the "Tax Payment". The Tax Payment shall be

equal to an amount needed by the Member to pay all federal and state income taxes on the

income (net of any tax benefits produced for the Member by the Company's losses, deductions

and credits) that passes through from the Company to the Member under the applicable

provisions of the Code. In computing the Tax Payment it shall be assumed that all income that

passes through to the Members will be taxed at a combined federal and state tax rate of forty

percent (40%). The determination of the Management Committee as to the amount of the Tax

Payment for any fiscal year shall be binding and conclusive in absence of fraud or gross error.

7

D003953

(b)    The balance, if any, to the Members in proportion to their Membership Percentages as of the first day of the month during which the distribution is made.

5.2    AMOUNTS WITHHELD.  All amounts withheld pursuant to the Code or any provision of any state or local tax law with respect to any payment or distribution by the Company to the Members shall be treated as amounts distributed to the Members pursuant to this Section 5 for all purposes under this Agreement.  The Management Committee may allocate any such amounts among the Members in any manner that is in accordance with applicable law.

SECTION 6
MANAGEMENT

6.1    MANAGERS; MANAGEMENT COMMITTEE.

(a)    The management of the Company shall be vested in the committee of Managers (the "Management Committee" or "Committee") who shall be designated as set forth in this Section 6.

(b)    The number of Managers on the Management Committee shall be four (4) unless there are less than four (4) Original Owners in which event the number of Managers shall equal the number of Original Owners.  The number of Managers may be increased or decreased (but not below the number of Original Owners then holding Membership Units through their ownership of a Member) by Super Majority Vote of the Members.  The initial Managers of the Company shall be as set forth on Exhibit "E" hereto.

(c)    Each Original Owner shall, solely by reason of that individual's status as an Original Owner, and for only so long as such Original Owner is the owner of a  Member, be automatically deemed a Manager on the Management Committee.  In the event that the number

8

D003954